WILLIAM VERICK (State Bar No. 140972)
Klamath Environmental Law Center
P.O. Box 1128
Arcata, CA 95518
(707) 630-5061
wverick@igc.org

DAVID WILLIAMS (State Bar No. 144479)
Law Offices of David Williams
1839 Ygnacio Valley Road, Suite 351
Walnut Creek, CA 94598
(510) 847-2356
dhwill7@gmail.com

BRIAN ACREE (State Bar No. 202505)
Law Office of Brian Acree
95 3rd Street, Second Floor
San Francisco, CA 94103-3103
(510) 517-5196
brian@brianacree.com

WILLIAM N. CARLON (State Bar No. 305739)
Law Office of William Carlon
437 Post Street
Napa, CA 94559
(530) 514-4115
william@carlonlaw.com

Attorneys for Plaintiff
CALIFORNIANS FOR ALTERNATIVES TO TOXICS

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CALIFORNIANS FOR ALTERNATIVES TO TOXICS,<br><br>Plaintiff,<br>vs.<br><br>TRAVIS MOREDA DAIRY and TRAVIS MOREDA<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES**<br><br>**(Federal Water Pollution Control Act, 33 U.S.C. §§ 1241-1387)** |

Californians for Alternatives to Toxics ("CATs" or "Plaintiff"), by and through its counsel,

hereby alleges:

## I. JURISDICTION AND VENUE

1. This is a civil suit brought under the citizen suit enforcement provisions of the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251–1387 ("Clean Water Act," "CWA," or "Act") against Travis Moreda Dairy and Travis Moreda ("Defendants"). This Court has subject matter jurisdiction over the parties and the subject matter of this action pursuant to Section 505(a)(1) of the Act, 33 U.S.C. § 1365(a), and 28 U.S.C. § 1331 (an action arising under the laws of the United States). Specifically, this action arises under Section 505(a)(1)(A) of the Act, 33 U.S.C. § 1365(a)(1)(A) (citizen suit to enforce effluent standard or limitation). The relief requested is authorized pursuant to 33 U.S.C. § 1365(a) (injunctive relief), 33 U.S.C. §§ 1365(a), 1319(d) (civil penalties), and 28 U.S.C. §§ 2201–2202 (power to issue declaratory relief in case of actual controversy and further necessary relief based on such a declaration).

2. On or about July 11, 2024, Plaintiff provided written notice to Defendants, via certified mail, of Defendants' violations of the Act ("CWA Notice Letter"), and of its intention to file suit against Defendants, as required by the Act. *See* 33 U.S.C. § 1365(b)(1)(A); 40 C.F.R. § 135.2(a)(1) (1991). Plaintiff mailed a copy of the CWA Notice Letter to the Administrator of the United States Environmental Protection Agency ("EPA"); the Administrator of EPA Region IX; the Executive Director of the State Water Resources Control Board ("State Board"), pursuant to 40 C.F.R. § 135.2(a)(1) (1991). A true and correct copy of Plaintiff's CWA Notice Letter is attached hereto as **Exhibit 1**, and is incorporated by reference.

3. More than sixty days have passed since Plaintiff served this CWA Notice Letter on Defendants and the agencies. Plaintiff is informed and believes, and thereupon alleges, that neither the EPA nor the State of California has commenced or is diligently prosecuting a court action to redress the violations alleged in this Complaint. This action's claims for civil penalties are not barred by any prior administrative penalty under Section 309(g) of the Act, 33 U.S.C. § 1319(g).

4. Venue is proper in the Northern District of California pursuant to Section 505(c)(1) of the Act, 33 U.S.C. § 1365(c)(1), because the sources of the violations are located within this District. Intra-district venue is proper in San Francisco or Oakland, California, because the sources

of the violations are located within Sonoma County, California.

## II. INTRODUCTION

5. This Complaint seeks relief for Defendants' violations of the CWA at the concentrated animal feeding operation owned and/or operated by Defendants and located at 3243 Spring Hill Road near Petaluma, California (the "Facility"). Defendants discharge pollutant-contaminated storm water, liquid manure, and waste water from the Facility into downstream surfaces waters including, an unnamed creek which discharges to Laguna Lake, into Laguna Lake itself, which discharges to Chileno Creek, a tributary of Walker Creek, which discharges to Tomales Bay and the Pacific Ocean (collectively the "Impacted Waters").

6. The unnamed creek is a water of the United States.

7. Laguna Lake is a water of the United States.

8. Chileno Creek is a water of the United States.

9. Walker Creek is a water of the United States.

10. Tomales Bay is a water of the United States.

11. Defendants are violating both the substantive and procedural requirements of the CWA.

12. Defendants' discharges of liquid manure, wastewater, and storm water associated with animal confinement activities containing pollutants to the Impacted Waters without a National Pollutant Discharge Elimination System ("NPDES") permit violates section 301(a) of the Act, 33 U.S.C. § 1311(a).

13. Defendants' violations of the Act are ongoing and continuous.

14. The Tomales Bay watershed in western Marin County is one of the major estuaries on the west coast of the United States.

15. It has a diverse ecosystem and several notable tributaries, including Lagunitas Creek, which has one of the few remaining viable coho salmon runs in northern California. *Water Quality Control Plan for the San Francisco Bay Basin* ("Basin Plan") Section 4.1.3.3.

16. The Water Board identified Tomales Bay as an area where commercial shellfishery is threatened and authorized the formation of a technical advisory committee to investigate and

develop a remediation strategy. California Regional Water Quality Control Board San Francisco Bay Region Resolution 94-018.

17. On February 8, 2007, the U.S. EPA approved the Total Maximum Daily Load ("TMDL") for pathogens in the Tomales Bay and the Basin Plan has been amended to incorporate the TMDL along with an implementation plan to achieve the TMDL. Basin Plan Section 7.3.1. "The overall goal of the Tomales Bay Watershed Pathogens Total Maximum Daily Load (TMDL) is to ensure protection of water contact recreational uses and Bay shellfish harvesting, thereby minimizing human exposure to disease-causing pathogens." *Id.*

18. The failure on the part of confined animal feeding operations such as Defendants to comply with the Clean Water Act is a significant cause of the continuing decline in water quality of receiving waters, such as the Impacted Waters.

## III. PARTIES

19. Californians for Alternatives to Toxics is a non-profit public benefit corporation organized under the laws of California.

20. Plaintiff's principal address is 415 I Street, Arcata, California 95521.

21. Plaintiff is dedicated to defending the environment against the effects of toxic chemicals, and to preserving and protecting the wildlife and natural resources of California waters, including the waters into which Defendants discharge polluted storm water, liquid manure, and wastewater. To further its goals, Plaintiff actively seeks federal and state agency implementation of state and federal water quality laws, including the CWA, and as necessary, directly initiates enforcement actions on behalf of itself and its members.

22. Members of CATs, including citizens, taxpayers, property owners, and residents, live, work, travel and recreate on, in, and near the Impacted Waters, into which Defendants cause pollutants to be discharged. These members use and enjoy the Impacted Waters for cultural, recreational, educational, scientific, conservation, aesthetic and spiritual purposes. Defendants' discharges of storm water containing pollutants impairs each of those uses. Thus, the interests of CATs' members have been, are being, and will continue to be adversely affected by Defendants' failure to comply with the Clean Water Act.

23. Members of CATs reside in California and use and enjoy California's numerous rivers for recreation and other activities. Members of CATs use and enjoy the Impacted Waters, into which Defendants have caused, is causing, and will continue to cause, pollutants to be discharged. Members of CATs use these areas for fishing, the estuarine habitat and the rare, threatened and endangered species it supports and which CATs members like to watch, the wildlife habitat, marine habitat, and other designated beneficial uses. Defendants' discharges of pollutants threaten or impair each of those uses or contribute to such threats and impairments.

24. The interests of Plaintiff's members have been, are being, and will continue to be adversely affected by Defendants' ongoing failure to comply with the Clean Water Act.

25. The relief sought herein will redress the harms to Plaintiff caused by Defendants' activities.

26. Defendant Travis Moreda Dairy is a sole proprietorship, located in California, owned and operated by Defendant Travis Moreda, an individual.

27. Plaintiff is informed and believes, and thereupon alleges that Defendants own and/or operate the Facility.

28. Defendants are "persons" pursuant to the Act. 33 U.S.C. § 1362(5).

29. Continuing commission of the acts and omissions alleged above will irreparably harm Plaintiff and the citizens of the State of California, for which harm they have no plain, speedy or adequate remedy at law.

## IV. LEGAL BACKGROUND

### A. Clean Water Act

30. Congress enacted the CWA to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). The CWA establishes an "interim goal of water quality which provides for the protection and propagation of fish, shellfish, and wildlife and provides for recreation in and on the water . . . ." 33 U.S.C. § 1251(a)(2). To these ends, Congress developed both a water quality-based and technology-based approach to regulating discharges of pollutants from point sources into waters of the United States.

31. Section 301(a) of the Act, 33 U.S.C. § 1311(a), prohibits the discharge of any

pollutant from a point source into waters of the United States, unless such discharge is in compliance with various enumerated sections of the Act. Among other things, Section 301(a) prohibits discharges not authorized by, or in violation of, the terms of an NPDES permit issued pursuant to Section 402 of the Act, 33 U.S.C. § 1342.

32. The term "discharge of pollutants" means "any addition of any pollutant to navigable waters from any point source." 33 U.S.C. § 1362(12). Pollutants are defined to include, among other examples, industrial waste, chemical wastes, biological materials, heat, rock, dirt, and sand discharged into water. 33 U.S.C. § 1362(6).

33. A "point source" is defined as "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation ["CAFO"], landfill leachate collection system . . . from which pollutants are or may be discharged." 33 U.S.C. § 1362(14); 40 C.F.R. § 122.2.

34. "Navigable waters" means "the waters of the United States." 33 U.S.C. § 1362(7). Waters of the United States includes, among other things, waters that were, and/or are susceptible to use in interstate commerce, and tributaries to such waters. 40 C.F.R. § 120.2 (Sept. 8, 2023).

35. Section 402(p) of the Act establishes a framework for regulating municipal and industrial storm water discharges under the NPDES program, 33 U.S.C. § 1342(p), and, specifically, requires an NPDES permit for storm water discharges associated with industrial activity. 33 U.S.C. § 1342(p)(2)(B).

36. Section 505(a)(1) provides for citizen enforcement actions against any "person," including individuals, corporations, or partnerships, 33 U.S.C. § 1362(5), for violations of NPDES permit requirements and for unpermitted discharges of pollutants. 33 U.S.C. § 1365(a)(1) (authorizing actions against any person alleged to be in violation of an effluent standard or limitation); 33 U.S.C. § 1365(f) (defining "effluent limitation" broadly to include "a permit or condition thereof issued under [section 402] of this title," and "any unlawful act under subsection (a) of [section 301] of this title").

37. An action for injunctive relief under the Act is authorized by 33 U.S.C. § 1365(a). Violators of the Act are also subject to an assessment of civil penalties of up to $66,712 per day for

violations occurring after November 2, 2015, pursuant to Sections 309(d) and 505 of the Act, 33 U.S.C. §§ 1319(d), 1365, and 40 C.F.R. §§ 19.1–19.4.

**B. State Regulations**

38. The Tomales Bay watershed in western Marin County is one of the major estuaries on the west coast of the United States. It has a diverse ecosystem and several notable tributaries, including Lagunitas Creek, which has one of the few remaining viable coho salmon runs in northern California. *Water Quality Control Plan for the San Francisco Bay Basin* ("Basin Plan") Section 4.1.3.3. The Water Board identified Tomales Bay as an area where commercial shellfishery is threatened and authorized the formation of a technical advisory committee to investigate and develop a remediation strategy. California Regional Water Quality Control Board San Francisco Bay Region Resolution 94-018. On February 8, 2007, the U.S. EPA approved the Total Maximum Daily Load ("TMDL") for pathogens in the Tomales Bay and the Basin Plan has been amended to incorporate the TMDL along with an implementation plan to achieve the TMDL. Basin Plan Section 7.3.1. "The overall goal of the Tomales Bay Watershed Pathogens Total Maximum Daily Load (TMDL) is to ensure protection of water contact recreational uses and Bay shellfish harvesting, thereby minimizing human exposure to disease-causing pathogens." *Id.*

39. The Basin Plan recognizes that wastes from animal confinement operations such as Defendants' Facility contain significant amounts of pathogens, oxygen-depleting organic matter, nutrients such as nitrogen and phosphorous compounds, and other suspended and dissolved solids.

40. Polluted discharges from sites such as the Facility contribute to degrade these already impaired surface waters, and harm and threaten to harm the aquatic wildlife that depends on the Tomales Bay estuarian environment.

**C. California's General Industrial Storm Water Permit**

41. Section 402 authorizes states with approved NPDES permit programs to regulate industrial storm water discharges through individual permits issued to dischargers and/or through the issuance of a single, statewide general permit applicable to all industrial storm water dischargers. 33 U.S.C. § 1342(b).

42. Pursuant to Section 402 of the Act, 33 U.S.C. § 1342, the Administrator of EPA has

authorized California's State Board to issue NPDES permits including general NPDES permits in California.

43. The State Board elected to issue a statewide general permit for industrial discharges. The State Board issued the General Permit on or about November 19, 1991, modified the General Permit on or about September 17, 1992, and reissued the General Permit on April 17, 1997, and again on April 1, 2014 (effective July 1, 2015), pursuant to Section 402(p) of the Clean Water Act, 33 U.S.C. § 1342(p). The General Permit was amended on August 4, 2015, and again on November 6, 2018, and the current General Permit, Order WQ 2018-0028-DWQ, became effective July 1, 2020.

44. Facilities discharging, or having the potential to discharge, storm water associated with industrial activity that have not obtained an individual NPDES permit must apply for coverage under the State's General Permit by filing a Notice of Intent ("NOI"). The General Permit requires facilities to file their NOIs before the initiation of industrial operations.

45. Facilities covered by the General Permit include concentrated animal feeding operations ("CAFO"). General Permit, Attachment A.

46. To be considered a CAFO, a facility must first be defined as an animal feeding operation ("AFO") and meet the criteria established in the CAFO regulation. An AFO is an agricultural operation where animals are kept and raised in confined situations where the following conditions are met: (1) animals have been, are, or will be stabled or confined and fed or maintained for a total of 45 days or more in any 12-month period; and, (2) crops, vegetation, forage growth, or post-harvest residues are not sustained in the normal growing season over any portion of the lot or facility. 40 C.F.R. § 122.23(b)(1).

47. A CAFO is an AFO that is defined as a Large CAFO or as a Medium CAFO by the terms of 40 C.F.R. § 122.23. An operation that confines dairy cows is considered a Large CAFO if the above conditions are met, and it stables or confines at least 1) 700 mature dairy cattle, 2) 1,000 veal calves, or 3) 1,000 cattle other than mature dairy cows or veal calves. 40 C.F.R. § 122.23(b)(4). An operation that confines dairy cows is considered a Medium CAFO if the above conditions are met, and it stables or confines 1) between 200 and 699 mature dairy cattle, 2) between 300 to 999

veal calves, or 3) between 300 to 999 cattle other than mature dairy cows or veal calves. 40 C.F.R. § 122.23(b)(6)(i). In addition, to be defined as a Medium CAFO one of the following conditions must be met, (A) pollutants are discharged to into waters of the United States through a man-made ditch, flushing system, or other similar man-made device; or, (B) pollutants are discharged directly into waters of the United States which originate outside of and pass over, across, or through the facility or otherwise come into direct contact with the animals confined in the operation. 40 C.F.R. § 122.23(b)(6)(ii).

48. Once regulated by an NPDES permit, facilities must strictly comply with all of the terms and conditions of that permit. A violation of the General Permit is a violation of the Act. *See* General Permit, Section XXI.A.

49. In order to discharge storm water lawfully in California, industrial dischargers must comply with the terms of the General Permit or have obtained and complied with an individual NPDES permit.

## V. <u>STATEMENT OF FACTS</u>

### A. The Facility

50. Defendants own and/or operate the Facility, a dairy farm located at 3243 Spring Hill Road just outside Petaluma, California.

51. The Facility confines at least 550 dairy cows, in addition to an unknown number of calves, for more than 45 days each year.

52. Cows are confined at the Facility in areas that do not sustain any crops, vegetation, forage growth, or post-harvest residues in the normal growing season.

53. Manure from animal confinement areas is flushed into retention basins located throughout the Facility.

54. The Facility stacks and piles manure and litter in areas exposed to precipitation.

55. Animal waste containing pollutants discharges into the Impacted Waters from the Facility via man-made ditches, a flushing system, and via other man-made devices such as pumps and hoses.

56. Surface water also comes into contact with the dairy cows in the areas where they are

confined and discharges to the Impacted Waters. These discharges contain animal waste containing pollutants. The Facility's discharges occur via discharges into the unnamed creek, as well as through several discrete conveyances directly to Laguna Lake, including by ditches and channels.

57. Defendants have not obtained General Permit coverage for the Facility.

58. Defendants have not obtained NPDES permit coverage for the Facility.

59. The unnamed creek ("Unnamed Creek") is a relatively permanent surface water body, flowing for several months of the year directly into Laguna Lake.

60. Laguna Lake is a relatively permanent surface water body, containing water within in it year round, and discharging to downstream surface waters for many months out of the year.

61. Laguna Lake discharges to Chileno Creek, which is a relatively permanent surface water body, and is designated as a perennial creek.

**B. Defendants' Unpermitted Discharges**

62. Plaintiff is informed and believes, and on that basis alleges, that Defendants repeatedly discharged, and continue to discharge, pollutants into the Impacted Waters.

63. Plaintiff is informed and believes, and on that basis alleges, that Defendants have discharged and continue to discharge pollutants to the Impacted Waters from animal confinement areas and wastewater lagoons into the Unnamed Creek and Lake Laguna.

64. The pollutants in these discharges include, but are not limited to, liquid and solid animal wastes. The animal wastes contain, among other pollutants, fecal coliform, and *E. coli* bacteria, numerous other pathogens, nitrogen, phosphorus, ammonia, pharmaceuticals, pesticides, and suspended solids, and can alter water quality indicator parameters such as biochemical oxygen demand and pH. Such pollution, especially the pathogens associated with CAFO operations, presents threats to public health and the environment.

65. Plaintiff is informed and believes, and on that basis alleges, that Defendants' manure storage ponds are undersized such that the Facility is unable to retain a 25-year, 24-hour storm event.

66. Plaintiff is informed and believes, and on that basis alleges, that Defendants dispose of liquid manure from their lagoons in anticipation of, and in response to, storm events in order to maintain freeboard.

67. Plaintiff is informed and believes, and on that basis alleges, that Defendants' lagoons have exceeded their storage volume in the past, and will do so again in the future, causing liquid manure to discharge from the lagoons into the ditches, channels, and swales that lead to the Unnamed Creek and Laguna Lake.

68. Plaintiff is informed and believes, and on that basis alleges, that the discharges discussed above occur on a recurring basis and have occurred since at least July 11, 2019 as described in **Exhibit 1**.

69. Plaintiff is informed and believes, and on that basis alleges, that the discharges Plaintiff alleges herein were not authorized by, and could not be authorized by, an applicable NPDES permit and were not due to or a direct result of a 25-year, 24-hour rainfall event.

## VI. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**Defendants' Discharges of Pollutants Without a NPDES Permit**
**(Violations of 33 U.S.C. §§ 1311(a), 1342)**

70. Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

71. Section 301 of the Act, 33 U.S.C. § 1311(a), prohibits the discharge of pollutants unless pursuant to the terms of a valid NPDES permit issued pursuant to section 402 of the Act, 33 U.S.C. § 1342.

72. The Impacted Waters are all "waters of the United States" subject to the Act or are "point sources" from which pollutants are discharged to "waters of the United States."

73. Defendants did not and do not have a NPDES permit authorizing discharges of pollutants into the Impacted Waters from its CAFO operation.

74. Since at least July 11, 2019, Defendants have discharged, and continue to discharge, pollutants associated with its CAFO operation in at least those ways identified above.

75. Each such discharge that Defendants have committed since commencing operations constitutes a separate and distinct violation of the Act. Defendants are subject to civil penalties for each and every violation of the Act since July 11, 2019. See 33 U.S.C. §§ 1319(d), 1365; 40 C.F.R.

§ 19.4 (2008).

## VII. <u>RELIEF REQUESTED</u>

Wherefore, Plaintiff respectfully requests that this Court grant the following relief:

a. Declare Defendants to have violated and to be in violation of the Clean Water Act as alleged herein;

b. Enjoin Defendants from discharging pollutants without a NPDES permit;

c. Order Defendants to pay civil penalties of $66,712 per day per violation for all violations occurring after November 2, 2015, pursuant to Sections 309(d) and 505(a) of the Act, 33 U.S.C. §§ 1319(d) and 1365(a) and 40 C.F.R. §§ 19.1–19.4;

d. Order Defendants to take appropriate actions to restore the quality of navigable waters impaired or adversely affected by their activities;

e. Award Plaintiff's costs and fees (including reasonable investigative, attorney, witness, compliance oversight and consultant fees) as authorized by the Act, 33 U.S.C. § 1365(d); and,

f. Award any such other and further relief as this Court may deem appropriate.

Dated: September 20, 2024

Respectfully Submitted,

LAW OFFICE OF WILLIAM CARLON

By: /s/ William N. Carlon

William N. Carlon
Attorneys for Plaintiff
CALIFORNIANS FOR
ALTERNATIVES TO TOXICS