# EXHIBIT 1

Law Office of William Carlon
437 Post Street, Napa, CA 94559
william@carlonlaw.com
(530) 514-4115

July 11, 2024

**VIA CERTIFIED MAIL**

Travis Moreda
Travis Moreda Dairy
Donald & Deborah Moreda
Moreda Valley Dairy
3243 Spring Hill Road
Petaluma, CA 94952

Re:   NOTICE OF VIOLATIONS AND INTENT TO FILE SUIT UNDER THE FEDERAL WATER POLLUTION CONTROL ACT ("CLEAN WATER ACT") (33 U.S.C. §§ 1251 *et seq*.)

Dear Travis Moreda, Deborah Moreda, and Donald Moreda:

This firm represents Californians for Alternatives to Toxics ("CATs") in regard to violations of the Clean Water Act ("the Act") occurring at Travis Moreda Dairy's ("TMD") dairy farm located at 3243 Spring Hill Road, near Petaluma, California ("Facility"). This letter is being sent to you as the responsible owners and operators of the enterprise. Unless otherwise noted, Travis Moreda, Deborah Moreda, Donald Moreda, Travis Moreda Dairy, and Moreda Valley Dairy shall hereinafter be collectively referred to as "TMD." The purpose of this letter is to provide TMD with notice of the violations of the Clean Water Act occurring at the Facility, including, but not limited to, unpermitted discharges of liquid manure and wastewater from the Facility into local surface waters.

TMD is in ongoing violation of the substantive and procedural requirements of the Clean Water Act, 33 U.S.C. § 1251 *et seq*.

Pursuant to Section 309(d) of the Act (33 U.S.C. § 1319(d)) and the Adjustment of Civil Monetary Penalties for Inflation, 40 C.F.R. § 19.4, each separate violation of the Act subjects TMD to a penalty for all violations occurring during the period commencing five years prior to the date of the Notice Letter. These provisions of law authorize civil penalties of up to $66,712 per day per violation for all Clean Water Act violations occurring after November 2, 2015.

In addition to civil penalties, CATs will seek injunctive relief preventing further violations of the Act pursuant to Sections 505(a) and (d) (33 U.S.C. §1365(a) and (d)) and such other relief as permitted by law. Lastly, Section 505(d) of the Act (33 U.S.C. § 1365(d)) permits prevailing parties to recover costs and fees, including attorneys' fees.

The Clean Water Act requires that sixty (60) days prior to the initiation of a citizen-enforcement action under Section 505(a) of the Act (33 U.S.C. § 1365(a)), a citizen enforcer must give notice of its intent to file suit. Notice must be given to the alleged violator, the U.S.

Notice of Violation and Intent to File Suit
July 11, 2024
Page 2

Environmental Protection Agency, and the Chief Administrative Officer of the water pollution control agency for the State in which the violations occur.  *See* 40 C.F.R. § 135.2.  As required by the Act, this letter provides statutory notice of the violations that have occurred, and continue to occur, at the Facility.  40 C.F.R. § 135.3(a).  At the expiration of sixty (60) days from the date of this letter, CATs intends to file suit under Section 505(a) of the Act in federal court against TMD for violations of the Clean Water Act.

I.    Background.

   A.    Californians for Alternatives to Toxics

CATs is a non-profit association dedicated to the preservation, protection and defense of the environment, wildlife and natural resources of California waters, including the waters into which TMD discharges polluted storm water.  Members of CATs enjoy the waters into which the Facility discharges, including Laguna Lake, Chileno Creek, Walker Creek, Tomales Bay and the Pacific Ocean ("Impacted Waters").  Members of CATs use and enjoy the Impacted Waters for fishing, estuarine habitat and the rare, threatened and endangered species it supports, the wildlife habitat, marine habitat, and other designated beneficial uses.  The discharge of pollutants from the Facility into the Impacted Waters impairs each of these uses.  Further, discharges of polluted storm water from the Facility are ongoing and continuous.  Thus, the interests of CATs' members have been, are being, and will continue to be adversely affected by TMD's failure to comply with the Clean Water Act and the General Permit.

   B.    The Clean Water Act.

Congress enacted the CWA in 1972 in order to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters."  33 U.S.C. § 1251.  The Act prohibits the discharge of pollutants into United States waters except as authorized by the statute.  33 U.S.C. § 1311; *San Francisco Bay Keeper, Inc. v. Tosco Corp.*, 309 F.3d 1153, 1156 (9th Cir. 2002).  The Act is administered largely through the NPDES permit program.  33 U.S.C. § 1342.  In 1987, the Act was amended to establish a framework for regulating storm water discharges through the NPDES system.  Water Quality Act of 1987, Pub. L. 100-4, § 405, 101 Stat. 7, 69 (1987) (codified at 33 U.S.C. § 1342(p)); *see also Envtl. Def. Ctr., Inc. v. EPA*, 344 F.3d 832, 840-41 (9th Cir. 2003) (describing the problem of storm water runoff and summarizing the Clean Water Act's permitting scheme).  The discharge of pollutants not specifically allowed by a NPDES permit is illegal.  *Ecological Rights Found. v. Pacific Lumber Co.*, 230 F.3d 1141, 1145 (9th Cir. 2000).

Much of the responsibility for administering the NPDES permitting system has been delegated to the states.  *See* 33 U.S.C. § 1342(b); *see also* Cal. Water Code § 13370 (expressing California's intent to implement its own NPDES permit program).  Concentrated animal feeding operations ("CAFO"), are point sources under the Clean Water Act.  33 U.S.C. § 1362(14).  As such, a CAFO is prohibited from discharging pollutants into waters of the United States under normal operating conditions and may only discharge in the event of a 25-year, 24-hour storm event if that CAFO has coverage under and complies with a general or individual NPDES permit.  33 U.S.C. § 1311(a).  To be considered a CAFO, a facility must first be defined as an

Notice of Violation and Intent to File Suit
July 11, 2024
Page 3

animal feeding operation ("AFO") and meet the criteria established in the CAFO regulation. An AFO is an agricultural operation where animals are kept and raised in confined situations where the following conditions are met: (1) animals have been, are, or will be stabled or confined and fed or maintained for a total of 45 days or more in any 12-month period; and, (2) crops, vegetation, forage growth, or post-harvest residues are not sustained in the normal growing season over any portion of the lot or facility. 40 C.F.R. § 122.23(b)(1). A CAFO is an AFO that is defined as a Large CAFO or as a Medium CAFO by the terms of 40 C.F.R. § 122.23. An operation that confines dairy cows is considered a Large CAFO if the above conditions are met, and it stables or confines at least 1) 700 mature dairy cattle, 2) 1,000 veal calves, or 3) 1,000 cattle other than mature dairy cows or veal calves. 40 C.F.R. § 122.23(b)(4). An operation that confines dairy cows is considered a Medium CAFO if the above conditions are met, and it stables or confines 1) between 200 and 699 mature dairy cattle, 2) between 300 to 999 veal calves, or 3) between 300 to 999 cattle other than mature dairy cows or veal calves. 40 C.F.R. § 122.23(b)(6)(i). In addition, to be defined as a Medium CAFO one of the following conditions must be met, (A) pollutants are discharged to into waters of the United States through a man-made ditch, flushing system, or other similar man-made device; or, (B) pollutants are discharged directly into waters of the United States which originate outside of and pass over, across, or through the facility or otherwise come into direct contact with the animals confined in the operation. 40 C.F.R. § 122.23(b)(6)(ii).

The San Francisco Bay Regional Water Quality Control Board ("Regional Board") administers the waste discharge permit program for confined animal facilities in Region 2, which includes Sonoma County and is the region in which TMD is located. The Regional Board issued the General Waste Discharge Requirements for Confined Animal Facilities Within the San Francisco Bay Region, Order No. R2-2016-0031 ("General Order"). However, the General Order is not a NPDES permit and it does not authorize discharges to surface waters. Any CAFO that discharges or proposes to discharge pollutants to the waters of the United States is required to obtain permit coverage under a NPDES permit.

In addition to a permit authorizing discharges of pollutants from a CAFO to waters of the United States, CAFOs are required to obtain coverage under the NPDES General Permit No. CAS000001, State Water Resources Control Board Water Quality Order 2014-0057-DWQ amended by Order 2015-0122-DWQ & Order 2018-0028-DWQ ("General Permit") for their discharges of storm water associated with the operation of the CAFO. General Permit at Attachment A.

Once regulated by a NPDES permit, permittees must strictly comply with all terms and conditions of that permit. Permittees who violate the terms of any applicable permit violate the Clean Water Act, and are subject to citizen enforcement actions, and citizens may bring suit against a party discharging pollutants into waters of the United States without a permit. *See, e.g., Headwaters, Inc. v. Talent Irrigation Dist.*, 243 F.3d 526 (9th Cir. 2001). The Clean Water act authorizes citizens to file suit against any person alleged to be in violation of an effluent standard or limitation. 33 U.S.C. § 1365(a)(l). An "effluent standard or limitation" includes a "permit or condition thereof issued under section 1342." 33 U.S.C. § 1365(f)(6).

Notice of Violation and Intent to File Suit
July 11, 2024
Page 4

According to publicly-available records, TMD lacks coverage under a general or individual CAFO NPDES permit. TMD also lacks coverage under the General Industrial Permit.

### C. TMD's Facility

Information available to CATs indicates that TMD's industrial activities at the Facility include, but are not limited to, operations associated with a concentrated animal feeding operation related to the raising and milking of dairy cows. Based on TMD's 2022-2023 Annual Report submitted to the San Francisco Regional Water Quality Control Board, TMD has approximately 550 dairy Holsteins at the Facility. TMD also has an undisclosed number of additional Holsteins and calves at the Facility.

The Facility includes several barns, corrals, pastures, and at least eight retention basins. A network of roads provides connectivity between the various industrial areas.

TMD flushes the barns that hold dairy cows into at least some of the retention basins described above. TMD stacks and piles manure and litter in areas exposed to precipitation. An unnamed creek runs through TMD's Facility. The unnamed creek is a tributary to Laguna Lake, which discharges to Chileno Creek, which is a tributary to Walker Creek, which ultimately discharges to Tomales Bay and the Pacific Ocean ("Impacted Waters"). The Impacted Waters are waters of the United States within the meaning of the Clean Water Act.

The Tomales Bay watershed in western Marin County is one of the major estuaries on the west coast of the United States. It has a diverse ecosystem and several notable tributaries, including Lagunitas Creek, which has one of the few remaining viable coho salmon runs in northern California. *Water Quality Control Plan for the San Francisco Bay Basin* ("Basin Plan") Section 4.1.3.3. The Water Board identified Tomales Bay as an area where commercial shellfishery is threatened and authorized the formation of a technical advisory committee to investigate and develop a remediation strategy. California Regional Water Quality Control Board San Francisco Bay Region Resolution 94-018. On February 8, 2007, the U.S. EPA approved the Total Maximum Daily Load ("TMDL") for pathogens in the Tomales Bay and the Basin Plan has been amended to incorporate the TMDL along with an implementation plan to achieve the TMDL. Basin Plan Section 7.3.1. "The overall goal of the Tomales Bay Watershed Pathogens Total Maximum Daily Load (TMDL) is to ensure protection of water contact recreational uses and Bay shellfish harvesting, thereby minimizing human exposure to disease-causing pathogens." *Id.*

According to the 2020-2022 303(d) List of Impaired Water Bodies, Tomales Bay and its tributaries, including Walker Creek, downstream of the Facility are impaired for: Mercury, Nutrients, Sedimentation/Siltation, and Pathogens.[1] Polluted discharges from industrial sites and

---

[1] 2020-2022 Integrated Report – All Assessed Waters, *available at* https://gispublic.waterboards.ca.gov/portal/apps/webappviewer/index.html?id=e2def63ccef54eedbee4ad726ab1552c (last accessed March 16, 2023).

Notice of Violation and Intent to File Suit
July 11, 2024
Page 5

CAFOs, such as the Facility, contribute to the degradation of these already impaired surface waters and aquatic-dependent wildlife.

## II.     TMD's Violations of the Act.

CATs is informed and believes that TMD, through its operation of the Facility, is in ongoing violation of both the substantive and procedural requirements of the Clean Water Act. These violations are ongoing and continuous.  Consistent with the five-year statute of limitations applicable to citizen enforcement actions brought pursuant to the federal Clean Water Act, TMD is subject to penalties for violations of the Act since July 11, 2019.

### A.     TMD Discharges Pollutants from Its CAFO to Surface Waters Without a Permit.

TMD's dairy farm qualifies as a Medium CAFO because the operation confines between 200-699 mature dairy cows for more than 45 days each year, and the areas within which the animals are confined do not sustain any crops, vegetation, forage growth, or post-harvest residues in the normal growing season.  Animal waste containing pollutants discharges into waters of the United States from the Facility via man-made ditches, a flushing system, and via other man-made devices includes pumps and hoses.  Surface water also comes into contact with the dairy cows in the areas where they are confined and discharges to waters of the United States.  These discharges contain animal waste containing pollutants.  Depending on the number of additional Holsteins confined at the Facility, TMD may qualify as a Large CAFO.

As a Medium CAFO, TMD is required to obtain General Permit coverage for its discharge of storm water from the Facility.  Each day that TMD operates with coverage under the General Permit is a separate and distinct violation of the Clean Water Act.

In addition, TMD's improper manure management and storage practices are causing unpermitted discharges of liquid and solid animal waste.  TMD sprays liquid manure on its fields immediately preceding, during, and immediately after precipitation events.  Applications are also made in quantities that exceed any notion of an "agronomic rate."  TMD applies liquid manure to its fields in such quantities and under such conditions that cause the liquid manure to run off the fields via swales, drainages, ditches, and/or other discrete conveyances into surface waters adjacent to the fields.  TMD sprays liquid manure on fields that are saturated and located on hillsides that drain to in-field watercourses that drain to local surface waters.

TMD's manure storage ponds are undersized, and the Facility is unable to retain the 25-year, 24-hour storm event.  Thus, TMD disposes of liquid manure from its lagoons in anticipation of storm events in order to maintain freeboard, and not for agricultural purposes.

The pollutants that have been, are being, and will continue to be discharged include facility wastewater, process water, wash water, liquid and solid animal wastes, debris, sediment, chemicals, and deceased cows or parts thereof.  Animal waste contains, among other pathogens

Notice of Violation and Intent to File Suit
July 11, 2024
Page 6

and pollutants, fecal coliform and *E. coli* bacteria, nitrogen, phosphorus, suspended solids, pesticides, and pharmaceuticals.

Discharges of liquid and solid animal waste, wastewater, process water, wash water, debris, sediment, deceased cows or parts thereof, fuel and chemicals resulting from TMD's improper manure application and storage practices, and improper operational practices, as described above, have occurred and continue to occur regularly, each time TMD sprays liquid manure on its fields before, during, and after Significant Rain Events.[2] In addition to the recurring discharges described above, upon information and belief, unpermitted discharges resulting from the improper manure management and storage practices described above have occurred on at least February 1, 2024 and February 10, 2024.

### III.     Persons Responsible for the Violations.

CATs puts TMD on notice that they are the persons and entities responsible for the violations described above. If additional persons are subsequently identified as also being responsible for the violations set forth above, CATs puts TMD on formal notice that it intends to include those persons in this action.

### IV.     Name and Address of Noticing Parties.

The name, address and telephone number of each of the noticing parties is as follows:

Patricia Clary, Executive Director
Californians for Alternatives to Toxics
600 F Street, Suite 3 #911
Eureka, CA 95521
(707) 834-4833

### V.     Counsel.

CATs has retained legal counsel to represent it in this matter. Please direct all communications to:

---

[2] Significant Rain Events are identified in Attachment 1 to this letter.

Notice of Violation and Intent to File Suit
July 11, 2024
Page 7

| | |
|---|---|
| William Carlon<br>Law Office of William Carlon<br>437 Post Street<br>Napa, CA 94559<br>(530) 514-4115<br>william@carlonlaw.com | William Verick<br>Klamath Environmental Law Center<br>P.O. Box 1128<br>Arcata, CA 95518<br>(707) 630-5061<br>wverick@igc.org |
| Brian Acree<br>Law Office of Brian Acree<br>95 3rd Street, Second Floor<br>San Francisco, CA 94103<br>(510) 517-5196<br>brian@brianacree.com | David Williams<br>Law Offices of David Williams<br>1839 Ygnacio Valley Road, Suite 351<br>Walnut Creek, CA 94598<br>(510) 847-2356<br>davidhwilliams@earthlink.net |

**VI.     Conclusion**

CATs believes this Notice of Violations and Intent to File Suit sufficiently states grounds for filing suit.  We intend to file a citizen suit under Section 505(a) of the CWA against TMD and their agents for the above-referenced violations upon the expiration of the 60-day notice period.  If you wish to pursue remedies in the absence of litigation, we suggest that you initiate those discussions within the next 20 days so that they may be completed before the end of the 60-day notice period.  We do not intend to delay the filing of a complaint in federal court if discussions are continuing when that period ends.

Sincerely,

*[signature]*

William N. Carlon
Law Office of William Carlon
Counsel for CALIFORNIANS FOR
ALTERNATIVES TO TOXICS

Notice of Violation and Intent to File Suit
July 11, 2024
Page 8

## SERVICE LIST

**VIA CERTIFIED MAIL**

    Michael Regan, Administrator
    U.S. Environmental Protection Agency
    1200 Pennsylvania Ave., N.W.
    Washington, D.C. 20460

    Martha Guzman, Regional Administrator
    U.S. Environmental Protection Agency, Region IX
    75 Hawthorne Street
    San Francisco, CA 94105

    Merrick B. Garland, U.S. Attorney General
    U.S. Department of Justice
    950 Pennsylvania Avenue, N.W.
    Washington, DC 20530-0001

    Eric Oppenheimer, Executive Director
    State Water Resources Control Board
    P.O. Box 100
    Sacramento, CA 95812

    Eileen White, Executive Officer
    San Francisco Regional Water Quality Control Board
    1515 Clay Street, Suite 1400
    Oakland, CA 94612

ATTACHMENT 1
Notice of Intent to File Suit, Travis Moreda Dairy
Significant Rain Events,* July 11, 2019 – July 11, 2024

| | | | |
|---|---|---|---|
| November 27, 2019 | December 31, 2020 | January 4, 2022 | January 12, 2023 |
| December 1, 2019 | January 2, 2021 | January 7, 2022 | January 13, 2023 |
| December 2, 2019 | January 4, 2021 | March 4, 2022 | January 14, 2023 |
| December 3, 2019 | January 5, 2021 | March 15, 2022 | January 15, 2023 |
| December 4, 2019 | January 7, 2021 | March 28, 2022 | January 16, 2023 |
| December 5, 2019 | January 8, 2021 | April 11, 2022 | January 19, 2023 |
| December 7, 2019 | January 23, 2021 | April 15, 2022 | February 3, 2023 |
| December 8, 2019 | January 27, 2021 | April 16, 2022 | February 5, 2023 |
| December 11, 2019 | January 28, 2021 | April 19, 2022 | February 24, 2023 |
| December 12, 2019 | January 29, 2021 | April 21, 2022 | February 25, 2023 |
| December 18, 2019 | February 2, 2021 | April 22, 2022 | February 27, 2023 |
| December 19, 2019 | February 12, 2021 | June 5, 2022 | February 28, 2023 |
| December 22, 2019 | February 15, 2021 | September 18, 2022 | March 1, 2023 |
| December 25, 2019 | February 19, 2021 | September 19, 2022 | March 5, 2023 |
| December 30, 2019 | March 6, 2021 | November 2, 2022 | March 6, 2023 |
| January 9, 2020 | March 9, 2021 | November 7, 2022 | March 8, 2023 |
| January 14, 2020 | March 10, 2021 | November 8, 2022 | March 10, 2023 |
| January 16, 2020 | March 15, 2021 | November 9, 2022 | March 12, 2023 |
| January 17, 2020 | March 19, 2021 | December 1, 2022 | March 13, 2023 |
| January 22, 2020 | April 26, 2021 | December 4, 2022 | March 14, 2023 |
| January 26, 2020 | September 19, 2021 | December 5, 2022 | March 15, 2023 |
| March 7, 2020 | October 18, 2021 | December 6, 2022 | March 19, 2023 |
| March 14, 2020 | October 20, 2021 | December 9, 2022 | March 20, 2023 |
| March 15, 2020 | October 21, 2021 | December 10, 2022 | March 21, 2023 |
| March 25, 2020 | October 22, 2021 | December 11, 2022 | March 22, 2023 |
| March 29, 2020 | October 24, 2021 | December 12, 2022 | March 28, 2023 |
| March 30, 2020 | October 25, 2021 | December 27, 2022 | March 29, 2023 |
| April 5, 2020 | November 2, 2021 | December 28, 2022 | March 30, 2023 |
| April 6, 2020 | November 4, 2021 | December 29, 2022 | April 7, 2023 |
| April 7, 2020 | November 9, 2021 | December 30, 2022 | April 18, 2023 |
| May 12, 2020 | December 12, 2021 | December 31, 2022 | May 3, 2023 |
| May 14, 2020 | December 13, 2021 | January 1, 2023 | May 6, 2023 |
| May 17, 2020 | December 14, 2021 | January 3, 2023 | October 22, 2023 |
| May 18, 2020 | December 16, 2021 | January 4, 2023 | October 23, 2023 |
| November 14, 2020 | December 22, 2021 | January 5, 2023 | November 6, 2023 |
| November 18, 2020 | December 23, 2021 | January 6, 2023 | November 18, 2023 |
| December 12, 2020 | December 24, 2021 | January 7, 2023 | November 29, 2023 |
| December 13, 2020 | December 25, 2021 | January 8, 2023 | December 2, 2023 |
| December 14, 2020 | December 26, 2021 | January 9, 2023 | December 7, 2023 |
| December 17, 2020 | December 27, 2021 | January 10, 2023 | December 18, 2023 |
| December 26, 2020 | December 29, 2021 | January 11, 2023 | December 19, 2023 |

* Dates gathered from publicly available rain and weather data collected at stations located near the Facility.

**ATTACHMENT 1**
**Notice of Intent to File Suit, Travis Moreda Dairy**
**Significant Rain Events,* July 11, 2019 – July 11, 2024**

| | |
|---|---|
| December 20, 2023 | May 5, 2024 |
| December 21, 2023 | |
| December 28, 2023 | |
| December 29, 2023 | |
| December 30, 2023 | |
| January 3, 2024 | |
| January 7, 2024 | |
| January 9, 2024 | |
| January 13, 2024 | |
| January 14, 2024 | |
| January 17, 2024 | |
| January 20, 2024 | |
| January 21, 2024 | |
| January 22, 2024 | |
| January 24, 2024 | |
| January 25, 2024 | |
| February 1, 2024 | |
| February 2, 2024 | |
| February 3, 2024 | |
| February 4, 2024 | |
| February 5, 2024 | |
| February 8, 2024 | |
| February 18, 2024 | |
| February 19, 2024 | |
| February 20, 2024 | |
| February 21, 2024 | |
| February 22, 2024 | |
| March 1, 2024 | |
| March 2, 2024 | |
| March 3, 2024 | |
| March 5, 2024 | |
| March 11, 2024 | |
| March 12, 2024 | |
| March 23, 2024 | |
| March 24, 2024 | |
| March 28, 2024 | |
| March 30, 2024 | |
| April 5, 2024 | |
| April 13, 2024 | |
| April 14, 2024 | |
| May 4, 2024 | |

* Dates gathered from publicly available rain and weather data collected at stations located near the Facility.