PETER HSIAO (Bar No. 119881)
*phsiao@kslaw.com*
ALEXANDER MOORE (Bar No. 340994)
*amoore@kslaw.com*
**KING & SPALDING LLP**
50 California Street, Suite 3300
San Francisco, CA 94111
Telephone:  +1 415 318-1200
Facsimile:   +1 415 318 1300

*Attorneys for Defendants*
TRAVIS MOREDA DAIRY and TRAVIS
MOREDA

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIANS FOR ALTERNATIVES TO TOXICS,<br><br>                    Plaintiff,<br><br>        vs.<br><br>TRAVIS MOREDA DAIRY and TRAVIS MOREDA,<br><br>                    Defendants. | Case No. 3:24-CV-06632-SI<br><br>**JOINT STATEMENT REGARDING DISCOVERY DISPUTE PURSUANT TO COURT'S STANDING ORDER**<br><br>*Assigned for all purposes to the Honorable Susan Illston* |

JOINT STATEMENT

**Defendants' and Moving Party's Position:**  Defendants Travis Moreda and Travis Moreda Dairy (referred to as "Travis") request a discovery conference for a protective order, to extend the time to respond to Plaintiff's newly-issued discovery requests for approximately 45 days, until after the Settlement Conference before Magistrate Judge Peter H. Kang set for June 23, 2025.  Plaintiff's discovery sets Travis' deposition just four days after June 23 and requires written responses just days later.[1]  This expenditure of attorney fees undermines the purpose of the Settlement Conference to avoid those fees and resolve this dispute.  The Court previously granted the parties' request to continue the Initial Case Management Conference for this same reason, to facilitate settlement, and no discovery plan has been submitted or approved.  Therefore there is no prejudice from this short continuance of discovery.  There are three reasons a protective order is appropriate:

1. <u>Plaintiff Repudiates Its Statement to the Court That the Parties Sought A Settlement Conference to Conserve the Expenditure of Attorney Fees and Costs.</u>

On April 8, 2025, the Court approved the parties' stipulation to continue the Initial Case Management Conference and refer this case for a settlement conference. To show good cause, the parties stated they sought to "conserve the expenditure of attorneys' fees and costs in litigation." (ECF No. 23 at 3.)  Plaintiff now contradicts its representation by propounding extensive discovery less than a month before the June 23 Settlement Conference.  There is no good cause to burden the parties with discovery for a case that may be settled on June 23.

Plaintiff, in meeting and conferring for this Statement, stated it would consider extensions *after* the conference, or a short extension to July 23.  That does not mitigate the burden to Travis, who must expend resources now to respond to these discovery requests.  And because the Initial Case Management Conference has been

---

[1] The discovery requests at issue are attached hereto.

JOINT STATEMENT REGARDING DISCOVERY DISPUTE

continued, there are no discovery deadlines or prejudice to Plaintiff to withhold its discovery requests until after the conclusion of the Settlement Conference.

2. <u>Plaintiff Violated the Local Rules By Failing to Meet and Confer Before Setting Deposition Dates and Submitting a Discovery Plan.</u>

Given its prior representations, Plaintiff's discovery requests on May 27, 2025, surprised Travis. Plaintiff provided no advance notice and did not meet and confer regarding these specific requests. Civil Local Rule 30-1 required Plaintiff to meet and confer in advance before setting Travis' deposition for June 27, 2025—the same week as the parties' settlement conference.

Previously on January 22, 2025, the parties held a Rule 26(f) discussion, then subsequently agreed to seek a Settlement Conference. They did not complete their discussions to finalize the discovery plan required by Civil Local Rule 16-10(b), and did not submit that plan to the Court given the continuance of the Initial Case Management Conference. There is no approved discovery plan or instructions from the Court regarding the appropriate limits on discovery. (*Ibid*.) Until the parties submit this plan, discovery is premature.

3. <u>Plaintiff Suffers No Prejudice from a Continuance, But Travis Is Prejudiced if Forced to Prepare Discovery Responses Before the Settlement Conference.</u>

During meet and confer, Plaintiff refused to withdraw its discovery requests until after the settlement conference. Plaintiff also refused a 60-day extension of discovery and a 45-day extension. The Guidelines for Professional Conduct for the U.S. District Court for the Northern District of California, at Guideline 4, states: "Consistent with existing law and court orders, a lawyer should agree to reasonable requests for extensions of time when the legitimate interests of his or her client will not be adversely affected. *For example*: (a) A lawyer should agree to reasonable requests for extensions of time or continuances without requiring motions or other formalities. (b) Unless time is of the essence, a lawyer should agree as a matter of courtesy to first requests for reasonable extensions of time. . . ." "[R]equests for

extensions of time made before the applicable deadline has passed should normally . . . be granted in the absence of bad faith on the part of the party seeking relief or prejudice to the adverse party." *Ahanchian v. Xenon Pictures, Inc*., 624 F.3d 1253, 1259 (9th Cir. 2010) (citation omitted).

Under these Guidelines and the applicable case law, the extension should be granted. Per Guideline 4, Travis has sought a first extension for a reasonable amount of time to allow the parties to first complete their settlement conference. "Where, as here, there is no indication of bad faith, prejudice, or undue delay, attorneys should not oppose reasonable requests for extensions of time brought by their adversaries." *Ahanchian*, 624 F.3d at 1263.[2]

**Plaintiff's and Responding Party's Position:**

On January 22, 2025, the Parties held their Rule 26(f) conference. Under Rule 26(d)(1), discovery could proceed as of that date. Ordinarily, Plaintiff would have served discovery immediately. However, given the Parties' settlement discussions, Plaintiff withheld its requests. Contrary to Defendants' suggestion, Plaintiff never agreed to a stay of discovery during these discussions. Plaintiff continued to withhold discovery until recently, serving its requests such that responses would be due shortly after the June 23rd settlement conference. Plaintiff now seeks discovery in order to proceed diligently with litigation should the conference prove unsuccessful, as the law requires. The discovery is reasonable and proportionate to the needs of the case—Defendants do not contend otherwise.

Defendants initially requested a 60-day extension, which would have pushed their responses to early September. Plaintiff reasonably declined and offered a two-week extension to mid-July. Defendants rejected that offer and, despite professed concerns about litigation costs, brought this dispute to the Court. In seeking Plaintiff's portion of this joint statement, Defendants inaccurately claimed they had

---

[2] *See* ECF No. 11 (Court's prior Order extending case deadlines after Plaintiff refused to stipulate to an extension).

JOINT STATEMENT REGARDING DISCOVERY DISPUTE

1    proposed, and Plaintiff rejected, a 30-day extension. No such offer was made. In

2    response, Plaintiff offered a 30-day extension from the date of the settlement

3    conference rather than from the current due date. This would have effectively given

4    Defendants the full response period contemplated by the Federal Rules should the

5    conference not result in resolution. Defendants refused and instead proposed a 45-

6    day extension from the current due date (53 days from the date of the settlement

7    conference), citing the possibility that the conference might extend beyond one day.

8    Plaintiff responded that if the conference were extended, it would likely indicate

9    progress, and Plaintiff would be open to further extensions as appropriate. Plaintiff

10   also asked Defendants to explain why they needed approximately 60 days to

11   respond. Defendants did not answer, and instead focused on negotiating a briefing

12   schedule for this joint statement.

13       Plaintiff noticed the deposition of Travis Moreda more than thirty days in

14   advance. Although Defendants objected to the lack of prior meet and confer, their

15   subsequent conduct demonstrates a lack of good faith. When the issue was raised,

16   Plaintiff immediately attempted to confer regarding an alternative date. Defendants

17   refused to engage and would not even confirm that Mr. Moreda was unavailable on

18   the original date. Rather than seeking to resolve the matter, Defendants elevated it

19   into a central issue in this dispute—failing themselves to meet and confer in good

20   faith before seeking Court intervention.

21       Defendants have yet to explain their request for an excessive extension. Their

22   stated    rationale—conserving    resources    during    settlement    negotiations—is

23   undermined by their rejection of a reasonable, rules-based extension and their refusal

24   to confer on the deposition, not to mention their insistence on bringing this dispute

25   to Court.

26   //

27   //

28   //

Respectfully submitted,

Dated: June 12, 2025                    KING & SPALDING LLP

By: */s/ Alexander Moore*
Alexander Moore

*Attorneys for Defendants / Moving Parties*

Dated: June 12, 2025                    LAW OFFICE OF WILLIAM CARLON

Signature authority
granted via email
on 6/12/2025

By: */s/ William N. Carlon*
William N. Carlon

*Attorneys for Plaintiff*

---

5

JOINT STATEMENT REGARDING DISCOVERY DISPUTE

1

## **ATTESTATION**

2      Pursuant to Civil L.R. 5-1(i)(3), I hereby attest that all signatories listed, and on

3 whose behalf this filing is submitted, concur in the filing's content and have

4 authorized the filing.

5

6 Dated:  June 12, 2025                          KING & SPALDING LLP

7

8                                                    By: */s/ Alexander Moore*

Alexander Moore

9                                                    *Attorneys for Defendants*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT STATEMENT REGARDING DISCOVERY DISPUTE

# ATTACHMENT

WILLIAM VERICK (State Bar No. 140972)
Klamath Environmental Law Center
P.O. Box 1128
Arcata, CA 95518
(707) 630-5061
wverick@igc.org

DAVID WILLIAMS (State Bar No. 144479)
Law Offices of David Williams
1839 Ygnacio Valley Road, Suite 351
Walnut Creek, CA 94598
(510) 847-2356
dhwill7@gmail.com

BRIAN ACREE (State Bar No. 202505)
Law Office of Brian Acree
95 3rd Street, Second Floor
San Francisco, CA 94103-3103
(510) 517-5196
brian@brianacree.com

WILLIAM N. CARLON (State Bar No. 305739)
Law Office of William Carlon
437 Post Street
Napa, CA 94559
(530) 514-4115
william@carlonlaw.com

Attorneys for Plaintiff
CALIFORNIANS FOR
ALTERNATIVES TO TOXICS

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIANS FOR ALTERNATIVES TO TOXICS, a non-profit corporation,<br><br>Plaintiff,<br><br>vs.<br><br>TRAVIS MOREDA DAIRY and TRAVIS MOREDA,<br><br>Defendants. | Case No. 3:24-cv-06632-SI<br><br>**PLAINTIFF'S REQUEST FOR WET WEATHER INSPECTIONS OF LAND AND PROPERTY PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 34** |

To:  DEFENDANTS AND THEIR ATTORNEYS OF RECORD HEREIN:

Defendants are hereby requested pursuant to Rule 34(a) of the Federal Rules of Civil Procedure to permit Plaintiff Californians for Alternatives to Toxics to enter Defendants' property located at 3243 Spring Hill Road near Petaluma, California ("Facility"), during three rain events starting October 15, 2025 through the close of discovery in this action, to inspect, photograph, test, videotape, or sample the following areas of Defendants' Facility: (1) any areas or equipment at Defendants' facility from which any liquids or runoff may drain or be drained or discharged, whether in the past, present or future, to storm drains or other conveyances located on or adjacent to Defendants' Facility; and (2) the following objects located on such areas: (a) all storm drains, (b) all paved and unpaved surfaces, (c) all loading or unloading areas, (d) all maintenance areas, (e) all storage areas, (f) all fueling areas, (g) all bermed areas, (h) all entrances and exits, (i) all storm water pollution management measures and (j) all areas of potential spills of product, fuel or other potential water pollution sources.  Samples may include samples of soil, materials, product, or runoff that may contribute pollutants to storm drains on or adjacent to Defendants' facility.

It is further requested that the dates for making such entry be determined through the following procedure.  Based on available weather forecasts, counsel for Plaintiff shall provide to Defendants' counsel preliminary notice of Plaintiff's intent to conduct a wet weather site inspection at least 48 hours prior to the time the inspection will begin. Plaintiff shall confirm or cancel the preliminarily noticed inspection by not later than 10:00 p.m. the evening prior to the inspection by leaving a message for counsel at their office telephone or any other pre-arranged telephone number. Plaintiff will make every effort to provide notices earlier than the above deadlines.

The parties, through mutual agreement may adjust the start time of any specific site inspection.

This request for site inspections is in addition to any other site inspections requested by Plaintiff or agreed upon by the parties.  Service of a written response to this request is due from you within 30 days of the date of service of this request.  Your response must state that

production and related activities will be permitted as requested or that the requested production is

objected to, in which event the reasons for your objection must be stated.

Dated: May 27, 2025                              LAW OFFICE OF WILLIAM CARLON

                                                 _____
                                                 William N. Carlon
                                                 Attorney for Plaintiff
                                                 CALIFORNIANS FOR
                                                 ALERNATIVES TO TOXICS

## PROOF OF SERVICE

I, William N. Carlon, declare as follows:

I am a resident of the State of California, and employed in Petaluma, California. I am over the age of 18 years and am not a party to the above-entitled action. My business address is 437 Post Street, Napa, California 94559.

On May 27, 2025 I served the following document(s):

**PLAINTIFF'S REQUEST FOR WET WEATHER INSPECTIONS OF LAND AND PROPERTY PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 34**

by placing a true and correct copy thereof in a sealed envelope, first class postage prepaid, addressed to the party listed below, and depositing it in a United States Postal Service mail box:

Peter Hsiao
Alexander Moore
KING & SPALDING LLP
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071

I certify and declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May 27, 2025, at Napa, California.

William N. Carlon

WILLIAM VERICK (State Bar No. 140972)
Klamath Environmental Law Center
P.O. Box 1128
Arcata, CA 95518
(707) 630-5061
wverick@igc.org

DAVID WILLIAMS (State Bar No. 144479)
Law Offices of David Williams
1839 Ygnacio Valley Road, Suite 351
Walnut Creek, CA 94598
(510) 847-2356
dhwill7@gmail.com

BRIAN ACREE (State Bar No. 202505)
Law Office of Brian Acree
95 3rd Street, Second Floor
San Francisco, CA 94103-3103
(510) 517-5196
brian@brianacree.com

WILLIAM N. CARLON (State Bar No. 305739)
Law Office of William Carlon
437 Post Street
Napa, CA 94559
(530) 514-4115
william@carlonlaw.com

Attorneys for Plaintiff
CALIFORNIANS FOR
ALTERNATIVES TO TOXICS

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIANS FOR ALTERNATIVES TO TOXICS, a non-profit corporation,<br><br>Plaintiff,<br><br>vs.<br><br>TRAVIS MOREDA DAIRY and TRAVIS MOREDA,<br><br>Defendants. | Case No. 3:24-cv-06632-SI<br><br>**NOTICE OF DEPOSITION OF TRAVIS MOREDA**<br><br>Fed. R. Civ. P. 30(b)(6) |

TO EACH PARTY AND ITS ATTORNEY OF RECORD:

PLEASE TAKE NOTICE that at 10:00 on June 27, 2025, pursuant to Federal Rule of Civil Procedure 30 Plaintiff CALIFORNIANS FOR ALTERNATIVES TO TOXICS ("CATs") will take the deposition of Defendant Travis Moreda.  This deposition will be conducted remotely using videoconferencing technology and will continue from day to day, excluding Saturdays, Sundays and holidays thereafter until completed.

The deposition will be taken before a certified court reporter or other person authorized by law to administer oaths, and shall be recorded stenographically.

The court reporter will be located at a remote location and will report the proceedings remotely. The deponent, counsel for the parties, and any other attendees may participate remotely. Instructions for joining the deposition will be provided to counsel prior to the deposition date.

This deposition is being taken for the purpose of discovery, for use at trial, or for such other purposes as are permitted under the Federal Rules of Civil Procedure.

Dated: May 27, 2025

LAW OFFICE OF WILLIAM CARLON

_____
William N. Carlon
Attorney for Plaintiff
CALIFORNIANS FOR
ALERNATIVES TO TOXICS

## PROOF OF SERVICE

I, William N. Carlon, declare as follows:

I am a resident of the State of California, and employed in Petaluma, California.  I am over the age of 18 years and am not a party to the above-entitled action.  My business address is 437 Post Street, Napa, California 94559.

On May 27, 2025 I served the following document(s):

**PLAINTIFF'S NOTICE OF DEPOSITION OF TRAVIS MOREDA**

by placing a true and correct copy thereof in a sealed envelope, first class postage prepaid, addressed to the party listed below, and depositing it in a United States Postal Service mail box:

Peter Hsiao
Alexander Moore
KING & SPALDING LLP
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071

I certify and declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May 27, 2025, at Napa, California.

William N. Carlon

WILLIAM VERICK (State Bar No. 140972)
Klamath Environmental Law Center
P.O. Box 1128
Arcata, CA 95518
(707) 630-5061
wverick@igc.org

DAVID WILLIAMS (State Bar No. 144479)
Law Offices of David Williams
1839 Ygnacio Valley Road, Suite 351
Walnut Creek, CA 94598
(510) 847-2356
dhwill7@gmail.com

BRIAN ACREE (State Bar No. 202505)
Law Office of Brian Acree
95 3rd Street, Second Floor
San Francisco, CA 94103-3103
(510) 517-5196
brian@brianacree.com

WILLIAM N. CARLON (State Bar No. 305739)
Law Office of William Carlon
437 Post Street
Napa, CA 94559
(530) 514-4115
william@carlonlaw.com

Attorneys for Plaintiff
CALIFORNIANS FOR
ALTERNATIVES TO TOXICS

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIANS for ALTERNATIVES to TOXICS, a non-profit corporation, | Case No. 3:24-cv-06632-SI |
| Plaintiff, | |
| vs. | **PLAINTIFF'S REQUESTS FOR ADMISSION, SET ONE** |
| TRAVIS MOREDA DAIRY and TRAVIS MOREDA, | |
| Defendants. | |

PROPOUNDING PARTY:    Plaintiff CALIFORNIANS for ALTERNATIVES to TOXICS

RESPONDING PARTIES:    Defendants TRAVIS MOREDA DAIRY and TRAVIS MOREDA

SET NUMBER:                ONE

Pursuant to Rule 36 of the Federal Rules of Civil Procedure, Plaintiff CALIFORNIANS for ALTERNATIVES to TOXICS propounds this First Set of Requests for Admission on Defendants TRAVIS MOREDA DAIRY and TRAVIS MOREDA.

## INSTRUCTIONS

A.    The subject matter of these Requests for Admission shall be deemed admitted unless, within 30 days after service of these Requests, Defendants serve upon Plaintiff a written answer or objection addressed to the matter, signed by the Defendants or by the Defendants' attorney(s).

B.    If an objection is made, the reasons therefore shall be stated.  If the answer is a denial it shall specifically deny the matter set forth in detail, and the reasons why you cannot truthfully admit or deny the matter.  A denial shall fairly meet the substance of the requested admission and, when good faith requires that you qualify an answer or deny only a part of the matter of which an admission is requested, you shall specify so much of it as is true and qualify or deny the remainder.  You may not give lack of knowledge as a reason for failure to admit or deny unless you state that you have made a reasonable inquiry, including a review of documents cited in these Requests for Admission and that the information known or readily obtainable by you is insufficient to enable you to admit or to deny.  If you consider that a matter upon which an admission has been requested presents a genuine issue for trial, you may not, on that ground alone, object to the request.  You may, subject to the provisions of Rule 37(c), deny the matter or set forth reasons why you cannot admit or deny it.

## DEFINITIONS

1.    "YOU" and "YOUR" as used herein refers to Defendants, their agents, employees, consultants, insurance companies, attorneys, accountants, investigators, and anyone else acting on Defendants' behalf.

2.    "PERSON" includes a natural person, firm, association, organization, partnership,

business, trust, corporation, or public entity.

3. "CLEAN WATER ACT" or "CWA" means the Federal Water Pollution Control Act, 33 U.S.C. § 1251, *et seq*.

4. "FACILITY" as used herein refers to the FACILITY located at 3243 Spring Hill Road near Petaluma, California.

5. "FLOWING" as used herein shall mean "moving from."

6. "HAZARDOUS MATERIALS" or "HAZARDOUS SUBSTANCES" as used herein shall mean all substances designated under Section 101(14) of Comprehensive Environmental Response, Compensation and Liability Act.

7. "DISCHARGE" or "DISCHARGED" as used herein shall mean any spilling, leaking, pumping, pouring, emitting, emptying or dumping off the property.

8. "REGIONAL BOARD" as used herein refers to the California Regional Water Quality Control Board, San Francisco Bay Region, and its agents, employees, staff, Board members and anyone else acting on its behalf.

9. "EPA" as used herein refers to the United States Environmental Protection Agency.

10. "GENERAL PERMIT" refers to National Pollutant Discharge Elimination System Permit No. CAS000001, State Water Resources Control Board Water Quality Order No. 91-13-DWQ, as amended by Water Quality Order 92-12-DWQ, Water Quality Order 97-03-DWQ and Water Quality Order 14-57-DWQ.

11. "STORM WATER" means storm water runoff, snow melt runoff, and storm water surface runoff and drainage.

12. "POLLUTANT" or "POLLUTANTS" shall mean the same as it does under Section 502 of the Clean Water Act ("dredged spoil, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt and industrial, municipal, and agricultural waste discharged into water").

13. "WATER QUALITY CRITERIA" or "WATER QUALITY CRITERION" is

used herein as including both "criteria" and "Section 304(a) Criteria" as those terms are defined by EPA in Title 40, Section 131.3 of the Code of Federal Regulations (40 C.F.R. § 131.3).

14.    "EPA PARAMETER BENCHMARK VALUES" refers to the list of benchmark values prepared and published by EPA on Monday, October 30, 2000 at Volume 65, Page 64767 of the Federal Register.

15.    "STORM DRAIN" or "STORM DRAINS" refers to any drop inlets that collect or convey STORM WATER at the FACILITY.

16.    "STORM WATER CONVEYANCE" or "STORM WATER CONVEYANCES" refers to any conveyance within the FACILITY which is used for collecting and conveying STORM WATER.

17.    "DOCUMENT" means any kind of writing or document, including but not limited to the original or a copy of handwritten or typewritten letters, memoranda or forms, any printed items, photographs, videotapes, and every other means of recording upon any tangible thing, any form of communication or representation, including letters, words, pictures, sounds, or symbols, or combinations of them, and as defined in Rule 34(a) of the Federal Rules of Civil Procedure.

18.    "TOXIC POLLUTANT" shall mean the same thing as it does in 40 C.F.R. § 401.5.

## REQUESTS FOR ADMISSION

Plaintiff requests that Defendants admit or deny the following within 30 days after service of these Requests for Admission:

### REQUEST FOR ADMISSION NO. 1:

Admit that, during the RELEVANT TIME PERIOD, the FACILITY confined more than 200 mature dairy cows for more than 45 days in any twelve-month period.

### REQUEST FOR ADMISSION NO. 2:

Admit that, during the RELEVANT TIME PERIOD, in at least one location where animals are confined at the FACILITY, crops, vegetation, forage growth, or post-harvest residues were not sustained in the normal growing season.

### REQUEST FOR ADMISSION NO. 3:

Admit that, during the RELEVANT TIME PERIOD, the FACILITY met the definition of an "ANIMAL FEEDING OPERATION" under 40 C.F.R. § 122.23(b)(1).

**REQUEST FOR ADMISSION NO. 4:**

Admit that, during the RELEVANT TIME PERIOD, the FACILITY met the definition of a "MEDIUM CAFO" as defined in 40 C.F.R. § 122.23(b)(6).

**REQUEST FOR ADMISSION NO. 5:**

Admit that, during the RELEVANT TIME PERIOD, YOU did not possess coverage under any individual NPDES permit for the FACILITY.

**REQUEST FOR ADMISSION NO. 6:**

Admit that, during the RELEVANT TIME PERIOD, YOU did not possess coverage under any general NPDES permit for the FACILITY.

**REQUEST FOR ADMISSION NO. 7:**

Admit that, during the RELEVANT TIME PERIOD, YOU did not submit a Notice of Intent for the FACILITY to obtain coverage under the GENERAL PERMIT issued by the STATE BOARD.

**REQUEST FOR ADMISSION NO. 8:**

Admit that, during the RELEVANT TIME PERIOD, YOU stored liquid manure in lagoons or retention basins at the FACILITY.

**REQUEST FOR ADMISSION NO. 9:**

Admit that, on one or more occasions during the RELEVANT TIME PERIOD, YOU applied liquid manure to land at the FACILITY immediately before, during, or immediately after a precipitation event.

**REQUEST FOR ADMISSION NO. 10:**

Admit that, on one or more occasions during the RELEVANT TIME PERIOD, STORM WATER discharged from the FACILITY contained POLLUTANTS, including fecal coliform or E. coli bacteria.

**REQUEST FOR ADMISSION NO. 11:**

Admit that, on one or more occasions during the RELEVANT TIME PERIOD, liquid

manure, process water, or wastewater from the FACILITY was discharged into the unnamed creek adjacent to the FACILITY.

**REQUEST FOR ADMISSION NO. 12:**

Admit that, on one or more occasions during the RELEVANT TIME PERIOD, liquid manure, process water, or wastewater from the FACILITY was discharged into Laguna Lake.

**REQUEST FOR ADMISSION NO. 13:**

Admit that the unnamed creek adjacent to the FACILITY is a tributary to Laguna Lake.

**REQUEST FOR ADMISSION NO. 14:**

Admit that the unnamed creek adjacent to the FACILITY is a water of the United States.

**REQUEST FOR ADMISSION NO. 15:**

Admit that Laguna Lake is a tributary to Chileno Creek.

**REQUEST FOR ADMISSION NO. 16:**

Admit that Laguna Lake is a water of the United States.

**REQUEST FOR ADMISSION NO. 17:**

Admit that Chileno Creek is a tributary of Walker Creek.

**REQUEST FOR ADMISSION NO. 18:**

Admit that Chileno Creek is a water of the United States.

**REQUEST FOR ADMISSION NO. 19:**

Admit that Walker Creek is a tributary to Tomales Bay.

**REQUEST FOR ADMISSION NO. 20:**

Admit that Walker Creek is a water of the United States.

**REQUEST FOR ADMISSION NO. 21:**

Admit that Tomales Bay is a water of the United States.

**REQUEST FOR ADMISSION NO. 22:**

Admit that, at any point during the RELEVANT TIME PERIOD, the FACILITY's liquid waste storage system—including its lagoons or retention basins—lacked sufficient capacity to retain all liquid waste generated at the FACILITY during a 25-year, 24-hour storm event.

**REQUEST FOR ADMISSION NO. 23:**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Admit that, on one or more occasions during the RELEVANT TIME PERIOD, YOU discharged pollutants to WATERS OF THE UNITED STATES from the FACILITY without coverage under an NPDES permit.

Dated: May 27, 2025

LAW OFFICE OF WILLIAM CARLON

_____

William N. Carlon
Attorney for Plaintiff
Californians for Alternatives to Toxics

**PROOF OF SERVICE**

I, William N. Carlon, declare as follows:

I am a resident of the State of California, and employed in Napa, California.  I am over

the age of 18 years and am not a party to the above-entitled action.  My business address is 437

Post Street, Napa, California 94559.

On May 27, 2025, I served the following document(s):

**PLAINTIFF'S REQUESTS FOR ADMISSION, SET ONE**

by placing a true and correct copy thereof in a sealed envelope, first class postage prepaid,

addressed to the party listed below, and depositing it in a United States Postal Service mail box:

Peter Hsiao
Alexander Moore
KING & SPALDING LLP
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071

I certify and declare under penalty of perjury under the laws of the United States of

America that the foregoing is true and correct.

Executed on May 27, 2025 at Napa, California.

_____
William N. Carlon

1   WILLIAM VERICK (State Bar No. 140972)
    Klamath Environmental Law Center
2   P.O. Box 1128
    Arcata, CA 95518
3   (707) 630-5061
4   wverick@igc.org

5   DAVID WILLIAMS (State Bar No. 144479)
    Law Offices of David Williams
6   1839 Ygnacio Valley Road, Suite 351
7   Walnut Creek, CA 94598
    (510) 847-2356
8   dhwill7@gmail.com

9   BRIAN ACREE (State Bar No. 202505)
    Law Office of Brian Acree
10  95 3rd Street, Second Floor
    San Francisco, CA 94103-3103
11  (510) 517-5196
12  brian@brianacree.com

13  WILLIAM N. CARLON (State Bar No. 305739)
    Law Office of William Carlon
14  437 Post Street
    Napa, CA 94559
15  (530) 514-4115
16  william@carlonlaw.com

17

18  Attorneys for Plaintiff
    CALIFORNIANS FOR
19  ALTERNATIVES TO TOXICS

20              **UNITED STATES DISTRICT COURT**

21             **NORTHERN DISTRICT OF CALIFORNIA**

22  CALIFORNIANS FOR ALTERNATIVES          Case No. 3:24-cv-06632-SI
    TO TOXICS,
23
                Plaintiff,                 **PLAINTIFF'S FIRST SET OF REQUESTS**
24                                         **FOR PRODUCTION OF DOCUMENTS**
          vs.
25
    TRAVIS MOREDA DAIRY and TRAVIS
26  MOREDA,
27
                Defendants.
28

PROPOUNDING PARTY:    Plaintiff CALIFORNIANS FOR ALTERNATIVES TO TOXICS

RESPONDING PARTIES:    Defendants TRAVIS MOREDA DAIRY and TRAVIS MOREDA

SET NUMBER:                ONE

Pursuant to Federal Rule of Civil Procedure 34, Plaintiff CALIFORNIANS FOR ALTERNATIVES TO TOXICS  ("PLAINTIFF") hereby requests that Defendants TRAVIS MOREDA DAIRY and TRAVIS MOREDA ("DEFENDANTS") respond to the following document requests within 30 days from the date of service.

**INSTRUCTIONS**

A.      DEFENDANTS shall serve a written response within 30 days after the service of this First Set of Requests for Production of Documents.

B.      All documents produced shall be sent to the Law Office of William Carlon at the address appearing above within 30 days after service of this First Set of Requests for Production of Documents.

C.      All responses shall state, with respect to each item or category, that inspection and related activities will be permitted as requested, unless the request is objected to, in which event the reasons for the objection shall be stated.

D.      If objection is made to part of an item or category, the part shall be specified and inspection permitted of the remaining parts.

E.      DEFENDANTS shall produce documents for inspection as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the request.  Each request shall be answered separately and fully in writing under oath, unless it is objected to, in which case DEFENDANTS shall state their reasons for objection and shall answer to the extent the request is not objectionable.

**DEFINITIONS**

1.      "YOU" and "YOUR" as used herein refers to DEFENDANTS, their agents, employees, consultants, insurance companies, attorneys, accountants, investigators, and anyone else acting on DEFENDANTS' behalf.

2.      "PERSON" includes a natural person, firm, association, organization, partnership,

1    business, trust, corporation, or public entity.

2         3.    "CLEAN WATER ACT" or "CWA" means the Federal Water Pollution Control Act,

3    33 U.S.C. § 1251, *et seq*.

4         4.    "FACILITY" as used herein refers to the FACILITY located at 3243 Spring Hill

5    Road near Petaluma, California.

6         5.    "FLOWING" as used herein shall mean "moving from."

7         6.    "HAZARDOUS MATERIALS" or "HAZARDOUS SUBSTANCES" as used herein

8    shall mean all substances designated under Section 101(14) of Comprehensive Environmental

9    Response, Compensation and Liability Act.

10         7.    "DISCHARGE" or "DISCHARGED" as used herein shall mean any spilling, leaking,

11    pumping, pouring, emitting, emptying or dumping off the property.

12         8.    "REGIONAL BOARD" as used herein refers to the Regional Water Quality Control

13    Board, San Francisco Bay Region, and its agents, employees, staff, Board members and anyone else

14    acting on its behalf.

15         9.    "EPA" as used herein refers to the United States Environmental Protection Agency.

16         10.    "NAVIGABLE WATERS" is used herein as defined in the Federal Water Pollution

17    Control Act and its implementing regulations.

18         11.    "STORM WATER" means storm water runoff, snow melt runoff, and storm water

19    surface runoff and drainage, as defined in the GENERAL PERMIT.

20         12.    "POLLUTANT" or "POLLUTANTS" shall mean the same as it does under Section

21    502 of the Clean Water Act ("dredged spoil, solid waste, incinerator residue, sewage, garbage,

22    sewage sludge, munitions, chemical wastes, biological materials, radioactive materials, heat,

23    wrecked or discarded equipment, rock, sand, cellar dirt and industrial, municipal, and agricultural

24    waste discharged into water").

25         13.    "WATER QUALITY CRITERIA" or "WATER QUALITY CRITERION" is used

26    herein as including both "criteria" and "Section 304(a) Criteria" as those terms are defined by EPA

27    in Title 40, Section 131.3 of the Code of Federal Regulations (40 C.F.R. § 131.3).

28         14.    "STORM DRAIN" or "STORM DRAINS" refers to any drop inlets that collect or

1    convey STORM WATER at the FACILITY.

2    15.    "STORM WATER CONVEYANCE" or "STORM WATER CONVEYANCES"

3    refers to any conveyance within the FACILITY which is used for collecting and conveying STORM

4    WATER.

5    16.    "DOCUMENT" means any kind of writing or document, including but not limited to

6    the original or a copy of handwritten or typewritten letters, memoranda or forms, any printed items,

7    photographs, videotapes, and every other means of recording upon any tangible thing, any form of

8    communication or representation, including letters, words, pictures, sounds, or symbols, or

9    combinations of them, and as defined in Rule 34(a) of the Federal Rules of Civil Procedure.

10    17.    "ADDRESS" means the street address, including the city, state, and zip code.

11    18.    "IDENTIFY" or "IDENTITY" when used with reference to a PERSON, means to

12    state his or her full name, present or last known ADDRESS, telephone number, present or last

13    known position and business affiliation, employer, title, and position, and his or her relationship to

14    YOU.

15    19.    "IDENTIFY" or "IDENTITY" when used with reference to a writing or

16    DOCUMENT, means to state with respect thereto sufficient information to support a *subpoena*

17    *duces tecum* or to support a request to produce under the applicable section of the Federal Rules of

18    Civil Procedure, including, but not limited to:

19    a.    the title of the DOCUMENT;

20    b.    the name of the PERSON who prepared it;

21    c.    the name of the PERSON by or under whom it was issued;

22    d.    the name of each PERSON to whom it was addressed or distributed;

23    e.    a description of the nature, content, and substance of the DOCUMENT;

24    f.    its date, and if it bears no date, the date it was prepared;

25    g.    any other particulars as may reasonably be necessary to enable the

26    propounding party to understand the nature and general substance of the

27    DOCUMENT, and also to identify that DOCUMENT in a manner sufficient to

28    distinguish it from all other writings;

h.     the physical location of the DOCUMENT and the name of its custodian or custodians;

i.     a statement whether the DOCUMENT will be voluntarily produced and made available to the plaintiffs for inspection and photocopying; and

j.     if any such DOCUMENT is no longer in YOUR possession or subject to YOUR control, state what disposition was made of it.

20.     "IDENTIFY" or "IDENTITY" when used with reference to an oral communication, conference, or meeting means to state the date of the communication, conference or meeting, the identity of all parties to the communication, conference or meeting, the subject matter of the communication, conference or meeting, and the general substance of what was said and/or transpired.

21.     "IDENTIFY" or "IDENTITY" when used with reference to anything other than a PERSON, a writing or DOCUMENT, an oral communication, conference or meeting, means to state the relevant dates, the identity of all parties involved, and all other information relating to the subject matter of the interrogatory.

22.     "DESCRIBE" or "STATE ALL FACTS" means to provide all information relating to the subject matter of the interrogatory including, but not limited to, the dates of all related events, substance of relevant communications, the IDENTITIES of all PERSONS with knowledge of the subject matter, and the IDENTITIES of DOCUMENTS.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

**REQUEST FOR PRODUCTION NO. 1:**

Any and all DOCUMENTS identified in your responses to PLAINTIFF's First Set of Interrogatories, served herewith.

**REQUEST FOR PRODUCTION NO. 2:**

All DOCUMENTS that refer or relate to the number and type of animals (including mature dairy cows, heifers, calves, or other livestock) confined at the FACILITY at any time from July 11, 2019, to the present.

**REQUEST FOR PRODUCTION NO. 3:**

1    All maps, schematics, diagrams, or aerial images of the FACILITY that IDENTIFY the

2    locations of barns, corrals, retention basins, STORM WATER CONVEYANCES, surface waters,

3    and STORM DRAINS.

4    **REQUEST FOR PRODUCTION NO. 4:**

5    All DOCUMENTS that IDENTIFY the design capacity, operational capacity, and

6    freeboard calculations for each retention basin or lagoon at the FACILITY from July 11, 2019, to

7    the present.

8    **REQUEST FOR PRODUCTION NO. 5:**

9    All DOCUMENTS, including but not limited to application logs or field records, that

10    IDENTIFY each instance of land application of manure, wastewater, or other POLLUTANTS at or

11    near the FACILITY from July 11, 2019, to the present, including the volume, method of application,

12    location, and date.

13    **REQUEST FOR PRODUCTION NO. 6:**

14    All DOCUMENTS that IDENTIFY any actual or potential DISCHARGE of manure,

15    wastewater, STORM WATER, or other POLLUTANTS from the FACILITY, including those

16    occurring on or around February 1, 2024, February 10, 2024, or any SIGNIFICANT RAIN EVENT

17    as listed in Exhibit 1 to the Complaint.

18    **REQUEST FOR PRODUCTION NO. 7:**

19    All communications, inspection reports, enforcement correspondence, or other

20    DOCUMENTS exchanged between YOU and the REGIONAL BOARD, STATE BOARD, or EPA

21    concerning compliance with the CLEAN WATER ACT, or NPDES permitting from July 11, 2019,

22    to the present.

23    **REQUEST FOR PRODUCTION NO. 8:**

24    All DOCUMENTS reflecting any inspections, evaluations, or site visits by governmental

25    agencies or private consultants regarding DISCHARGES, STORM WATER, manure or waste

26    management, or environmental compliance at the FACILITY from July 11, 2019, to the present.

27    **REQUEST FOR PRODUCTION NO. 9:**

28    All standard operating procedures, management plans, training manuals, or protocols in

effect since July 11, 2019, that DESCRIBE manure handling, STORM WATER management, lagoon operation, and DISCHARGE prevention at the FACILITY.

**REQUEST FOR PRODUCTION NO. 10:**

All DOCUMENTS relating to any application for or consideration of coverage under a NPDES permit, including any draft or submitted Notices of Intent, requests for termination, or correspondence concerning the applicability of such permits.

**REQUEST FOR PRODUCTION NO. 11:**

All weather tracking logs, precipitation forecasts, or other DOCUMENTS used to anticipate storm events or determine application timing for manure or wastewater at the FACILITY.

**REQUEST FOR PRODUCTION NO. 12:**

All photographs or videos taken at or of the FACILITY from July 11, 2019, to the present that depict retention basins, land application areas, STORM WATER CONVEYANCES, or any water body including the unnamed creek and Laguna Lake.

**REQUEST FOR PRODUCTION NO. 13:**

All DOCUMENTS reviewed, referred to, or relied upon in drafting YOUR Answer to the Complaint, including YOUR denials of Paragraphs 51–69, and 73–74.

**REQUEST FOR PRODUCTION NO. 14:** K

All liability insurance policies, pollution insurance policies, or other agreements in effect at any time from July 11, 2019, to the present, that may provide coverage for legal defense costs, penalties, or injunctive relief related to this action.

**REQUEST FOR PRODUCTION NO. 15:**

Any and all DOCUMENTS setting forth each DEFENDANT's assets, liabilities and net worth at all times between July 11, 2019 to the present, including but not limited to all real property held by all DEFENDANTS.

**REQUEST FOR PRODUCTION NO. 16:**

Any and all DOCUMENTS that refer, relate or pertain to each DEFENDANT's income from July 11, 2019 to the present, including but not limited to all statements of annual gross income and annual net income, whether audited or unaudited.

**REQUEST FOR PRODUCTION NO. 17:**

All DOCUMENTS comprising each DEFENDANTS's federal income tax returns for all years from 2019 to the present.

**REQUEST FOR PRODUCTION NO. 18:**

All DOCUMENTS that comprise each DEFENDANT's IRS form 1099s submitted to the IRS for all years from 2019 to the present.

**REQUEST FOR PRODUCTION NO. 19:**

All DOCUMENTS that comprise each DEFENDANT's personal or business bank account statements, including all brokerage accounts containing stocks, bonds or retirement fund accounts for all years from 2019 to the present.

**REQUEST FOR PRODUCTION NO. 20:**

Any and all DOCUMENTS evidencing any DEFENDANT's ownership, in whole or in part, of real property for all years from 2019 to the present.

**REQUEST FOR PRODUCTION NO. 21:**

Any and all DOCUMENTS evidencing any DEFENDANT's leasehold interest in, in whole or in part, real property for all years from 2019 to the present.

**REQUEST FOR PRODUCTION NO. 22:**

All DOCUMENTS reflecting or relating to communications between YOU and KYLE LUTZ of WESTERN UNITED DAIRIES that refer or relate to the CLEAN WATER ACT, NPDES permitting, manure management, lagoon capacity, STORM WATER management, DISCHARGES, or the FACILITY.

**REQUEST FOR PRODUCTION NO. 23:**

All DOCUMENTS provided to, received from, or shared with KYLE LUTZ or WESTERN UNITED DAIRIES concerning the FACILITY's regulatory compliance, including but not limited to compliance with the CLEAN WATER ACT, the GENERAL PERMIT, or any state-issued waste discharge requirements.

**REQUEST FOR PRODUCTION NO. 24:**

All DOCUMENTS reflecting any site visits, evaluations, or technical assistance provided by

KYLE LUTZ or WESTERN UNITED DAIRIES at or concerning the FACILITY since January 1, 2019.

**REQUEST FOR PRODUCTION NO. 25:**

All DOCUMENTS reflecting any advice, opinions, recommendations, or assessments offered by KYLE LUTZ or WESTERN UNITED DAIRIES concerning whether YOU are required to obtain a NPDES permit, comply with the GENERAL PERMIT, or take any action to prevent DISCHARGES from the FACILITY.

**REQUEST FOR PRODUCTION NO. 26:**

All DOCUMENTS reviewed, referred to, or relied upon by YOU in communications with KYLE LUTZ or WESTERN UNITED DAIRIES relating to the subject matter of this action, including YOUR asserted compliance with the CLEAN WATER ACT and YOUR denial of the allegations in the Complaint.

**REQUEST FOR PRODUCTION NO. 27:**

Produce all DOCUMENTS relating to any modifications made during the RELEVANT TIME PERIOD to the FACILITY's liquid waste storage or conveyance system, including but not limited to modifications to lagoons, retention basins, pumps, piping, or other infrastructure used to store or transport liquid manure, process wastewater, or storm water. This request includes, but is not limited to:

a. Engineering plans, diagrams, or specifications;

b. Construction records or as-built drawings;

c. Communications with consultants, contractors, or regulatory agencies;

d. Permits, permit applications, or notices submitted to any governmental agency;

e. Internal memoranda, meeting notes, or reports regarding the need for or effect of the modifications;

f. Any DOCUMENTS referencing or analyzing the FACILITY's ability to retain or manage waste or runoff from a 25-year, 24-hour storm event before or after such modifications.

1    Dated: May 27, 2025                    LAW OFFICE OF WILLIAM CARLON

2

3                                           _____
                                            William N. Carlon
4                                           Attorney for Plaintiff
                                            Californians for Alternatives to Toxics
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE**

I, William N. Carlon, declare as follows:

I am a resident of the State of California, and employed in Napa, California.  I am over the age of 18 years and am not a party to the above-entitled action.  My business address is 437 Post Street, Napa, California 94559.

On May 27, 2025 I served the following document(s):

**PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS**

by placing a true and correct copy thereof in a sealed envelope, first class postage prepaid, addressed to the party listed below, and depositing it in a United States Postal Service mail box:

Peter Hsiao
Alexander Moore
KING & SPALDING LLP
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071

I certify and declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May 27, 2025, at Napa, California.

_____
William N. Carlon

WILLIAM VERICK (State Bar No. 140972)
Klamath Environmental Law Center
P.O. Box 1128
Arcata, CA 95518
(707) 630-5061
wverick@igc.org

DAVID WILLIAMS (State Bar No. 144479)
Law Offices of David Williams
1839 Ygnacio Valley Road, Suite 351
Walnut Creek, CA 94598
(510) 847-2356
dhwill7@gmail.com

BRIAN ACREE (State Bar No. 202505)
Law Office of Brian Acree
95 3rd Street, Second Floor
San Francisco, CA 94103-3103
(510) 517-5196
brian@brianacree.com

WILLIAM N. CARLON (State Bar No. 305739)
Law Office of William Carlon
437 Post Street
Napa, CA 94559
(530) 514-4115
william@carlonlaw.com

Attorneys for Plaintiff
CALIFORNIANS FOR
ALTERNATIVES TO TOXICS

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIANS for ALTERNATIVES to TOXICS, a non-profit corporation,<br><br>              Plaintiff,<br><br>       vs.<br><br>TRAVIS MOREDA DAIRY and TRAVIS MOREDA,<br><br>              Defendants. | Case No. 3:24-cv-06632-SI<br><br>**PLAINTIFF CALIFORNIANS FOR ALTERNATIVES TO TOXICS' INTERROGATORIES, SET ONE** |

PROPOUNDING PARTY:    Plaintiff CALIFORNIANS for ALTERNATIVES to TOXICS

RESPONDING PARTIES:    Defendants TRAVIS MOREDA DAIRY and TRAVIS MOREDA

SET NUMBER:                ONE

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiff CALIFORNIANS for ALTERNATIVES to TOXICS ("PLAINTIFF") hereby requests that Defendants TRAVIS MOREDA DAIRY and TRAVIS MOREDA ("DEFENDANTS") respond to the following interrogatories under oath within 30 days from the date of service.

**INSTRUCTIONS**

A.    Each interrogatory shall be answered separately and fully in writing under oath, unless it is objected to, in which event the objecting party shall state its reasons for objection and shall answer to the extent the interrogatory is not objectionable.

B.    The answers are to be signed by the person making them, and the objections signed by the attorney making them.

C.    The party upon whom the interrogatories have been served shall serve a copy of the answers, and objections if any, upon the propounding party within 30 days after the service of the interrogatories.

D.    All grounds for an objection to an interrogatory shall be stated with specificity.  Any ground not stated in a timely objection is waived unless the party's failure to object is excused by the court for good cause shown.

E.    Each answer must be as complete and as straightforward as the information reasonably available to the responding party permits.  If an interrogatory cannot be answered completely, the responding party must answer it to the extent possible.

F.    If the responding party does not have enough personal knowledge to fully answer an interrogatory, it must so state and make a reasonable and good faith effort to get the information by asking other persons or organizations, unless the information is equally available to the asking party.

G.    Whenever an interrogatory may be answered by referring to a document, the document may be attached as an exhibit to the response and referred to in the response.  If the

document has more than one page, refer to the page and section where the answer to the interrogatory can be found.

H.    Whenever an address and telephone number for the same person are requested in more than one interrogatory, you are required to furnish them in answering only the first interrogatory asking for that information.

## DEFINITIONS

1.    "YOU" and "YOUR" as used herein refers to DEFENDANTs, their agents, employees, consultants, insurance companies, attorneys, accountants, investigators, and anyone else acting on DEFENDANTS' behalf.

2.    "PERSON" includes a natural person, firm, association, organization, partnership, business, trust, corporation, or public entity.

3.    "CLEAN WATER ACT" or "CWA" means the Federal Water Pollution Control Act, 33 U.S.C. § 1251, *et seq*.

4.    "FACILITY" as used herein refers to the FACILITY located at 3243 Spring Hill Road near Petaluma, California.

5.    "FLOWING" as used herein shall mean "moving from."

6.    "HAZARDOUS MATERIALS" or "HAZARDOUS SUBSTANCES" as used herein shall mean all substances designated under Section 101(14) of Comprehensive Environmental Response, Compensation and Liability Act.

7.    "DISCHARGE" or "DISCHARGED" as used herein shall mean any spilling, leaking, pumping, pouring, emitting, emptying or dumping off the property.

8.    "REGIONAL BOARD" as used herein refers to the California Regional Water Quality Control Board, San Francisco Bay Region, and its agents, employees, staff, Board members and anyone else acting on its behalf.

9.    "STATE BOARD" as used herein refers to the California State Water Resources Control Board and its agents, employees, staff, Board members and anyone else acting on its behalf.

10.    "EPA" as used herein refers to the United States Environmental Protection Agency.

11.    "NAVIGABLE WATERS" is used herein as defined in the Federal Water Pollution

Control Act and its implementing regulations.

12. "STORM WATER" means storm water runoff, snow melt runoff, and storm water surface runoff and drainage.

13. "POLLUTANT" or "POLLUTANTS" shall mean the same as it does under Section 502 of the Clean Water Act ("dredged spoil, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt and industrial, municipal, and agricultural waste discharged into water").

14. "WATER QUALITY CRITERIA" or "WATER QUALITY CRITERION" is used herein as including both "criteria" and "Section 304(a) Criteria" as those terms are defined by EPA in Title 40, Section 131.3 of the Code of Federal Regulations (40 C.F.R. § 131.3).

15. "STORM DRAIN" or "STORM DRAINS" refers to any drop inlets that collect or convey STORM WATER at the FACILITY.

16. "STORM WATER SAMPLING LOCATION" or "STORM WATER SAMPLING LOCATIONS" is used herein as used in the GENERAL PERMIT.

17. "STORM WATER CONVEYANCE" or "STORM WATER CONVEYANCES" refers to any conveyance within the FACILITY which is used for collecting and conveying STORM WATER.

18. "DOCUMENT" means any kind of writing or document, including but not limited to the original or a copy of handwritten or typewritten letters, memoranda or forms, any printed items, photographs, videotapes, and every other means of recording upon any tangible thing, any form of communication or representation, including letters, words, pictures, sounds, or symbols, or combinations of them, and as defined in Rule 34(a) of the Federal Rules of Civil Procedure.

19. "ADDRESS" means the street address, including the city, state, and zip code.

20. "IDENTIFY" or "IDENTITY" when used with reference to a PERSON, means to state his or her full name, present or last known ADDRESS, telephone number, present or last known position and business affiliation, employer, title, and position, and his or her relationship to YOU.

21.    "IDENTIFY" or "IDENTITY" when used with reference to a writing or DOCUMENT, means to state with respect thereto sufficient information to support a *subpoena duces tecum* or to support a request to produce under the applicable section of the Federal Rules of Civil Procedure, including, but not limited to:

a.    the title of the DOCUMENT;

b.    the name of the PERSON who prepared it;

c.    the name of the PERSON by or under whom it was issued;

d.    the name of each PERSON to whom it was addressed or distributed;

e.    a description of the nature, content, and substance of the DOCUMENT;

f.    its date, and if it bears no date, the date it was prepared;

g.    any other particulars as may reasonably be necessary to enable the propounding party to understand the nature and general substance of the DOCUMENT, and also to identify that DOCUMENT in a manner sufficient to distinguish it from all other writings;

h.    the physical location of the DOCUMENT and the name of its custodian or custodians;

i.    a statement whether the DOCUMENT will be voluntarily produced and made available to the plaintiffs for inspection and photocopying; and

j.    if any such DOCUMENT is no longer in YOUR possession or subject to YOUR control, state what disposition was made of it.

22.    "IDENTIFY" or "IDENTITY" when used with reference to an oral communication, conference, or meeting means to state the date of the communication, conference or meeting, the identity of all parties to the communication, conference or meeting, the subject matter of the communication, conference or meeting, and the general substance of what was said and/or transpired.

23.    "IDENTIFY" or "IDENTITY" when used with reference to anything other than a PERSON, a writing or DOCUMENT, an oral communication, conference or meeting, means to state the relevant dates, the identity of all parties involved, and all other information relating to the subject

matter of the interrogatory.

24.    "DESCRIBE" or "STATE ALL FACTS" means to provide all information relating to the subject matter of the interrogatory including, but not limited to, the dates of all related events, substance of relevant communications, the IDENTITIES of all PERSONS with knowledge of the subject matter, and the IDENTITIES of DOCUMENTS.

## **INTERROGATORIES**

**INTERROGATORY NO. 1:**

IDENTIFY each National Pollutant Discharge Elimination System ("NPDES") permit, including general or individual coverage, held by YOU at any time since July 11, 2019, for the FACILITY, and describe the scope of coverage, effective dates, and permit numbers.

**INTERROGATORY NO. 2:**

State the total number of mature dairy cows, calves, and any other livestock confined at the FACILITY at any time from July 11, 2019, to the present, including the duration of confinement and whether any crops, vegetation, or forage were sustained in the areas of confinement during that time.

**INTERROGATORY NO. 3:**

DESCRIBE all DISCHARGES of POLLUTANTS, including but not limited to STORMWATER containing POLLUTANTS, manure, process wastewater, and washwater, from the FACILITY from July 11, 2019, to the present, including the date, nature, volume, duration, and receiving waterbody of each DISCHARGE.

**INTERROGATORY NO. 4:**

IDENTIFY and DESCRIBE all structures and systems at the FACILITY used to manage or store manure, process wastewater, and STORMWATER runoff, including the size, design capacity, and operational procedures for each system, and the date each system was installed.

**INTERROGATORY NO. 5:**

IDENTIFY all incidents since July 11, 2019, where any retention basin, lagoon, or other manure or wastewater storage structure at the FACILITY exceeded its storage capacity or DISCHARGED material to surface waters, including the date, duration, and estimated volume of any such overflow or DISCHARGE.

**INTERROGATORY NO. 6:**

DESCRIBE the methods and timing used to apply liquid or solid manure to land at or near the FACILITY since July 11, 2019, including the fields involved, the quantities applied, application rates, and whether any applications occurred within 48 hours before, during, or after a precipitation event.

**INTERROGATORY NO. 7:**

DESCRIBE the FACILITY'S practices, procedures, or infrastructure for preventing surface water from coming into direct contact with confined animals, manure stockpiles, or other POLLUTANT sources.

**INTERROGATORY NO. 8:**

State whether YOU have ever applied for coverage under the Industrial General Permit (Order No. 2014-0057-DWQ as amended), and if not, explain why.

**INTERROGATORY NO. 9:**

DESCRIBE all STORMWATER or wastewater sampling, monitoring, or testing conducted at or in connection with the FACILITY from July 11, 2019, to the present, including the dates, parameters tested, sampling locations, and test results.

**INTERROGATORY NO. 10:**

IDENTIFY all documents, that constitute, summarize, DESCRIBE, relate to or refer to reports of laboratory analysis of STORMWATER or wastewater samples collected at or in connection with the FACILITY from July 11, 2019 to the present.

**INTERROGATORY NO. 11:**

IDENTIFY each person with knowledge of the FACILITY'S manure management, STORMWATER management, or wastewater handling practices from July 11, 2019, to the present, and state the nature of their knowledge.

**INTERROGATORY NO. 12:**

IDENTIFY each water body located on or downstream of the FACILITY that DEFENDANTS contend is not a "water of the United States" within the meaning of the CLEAN WATER ACT, including the basis for that contention and any evidence supporting it.

**INTERROGATORY NO. 13:**

DESCRIBE all efforts undertaken by DEFENDANTS since July 11, 2019, to determine whether the FACILITY is required to obtain NPDES permit coverage, including any communications with the STATE BOARD, REGIONAL BOARD, or EPA.

**INTERROGATORY NO. 14:**

IDENTIFY and DESCRIBE with specificity all modifications made to the FACILITY's liquid waste storage or conveyance system during the RELEVANT TIME PERIOD, including but not limited to any modifications to increase the capacity of lagoons, retention basins, or other liquid waste containment structures, or to alter the means by which liquid waste is transported between areas where it is generated and where it is stored. For each such modification, state:

    a.  The date construction commenced and the date it was completed;

    b.  The nature and purpose of the modification;

    c.  The identity of the PERSON(S) or ENTITY(IES) who designed, constructed, or oversaw the modification;

    d.  The engineering basis or design standard for the modification (e.g., 25-year, 24-hour storm event capacity); and

    e.  Whether any such modification was submitted to, reviewed, or approved by any governmental agency, and if so, identify the agency and the date and nature of such submission, review, or approval.

**INTERROGATORY NO. 15:**

IDENTIFY the person most knowledgeable about any modifications made to the FACILITY's liquid waste storage or conveyance system during the RELEVANT TIME PERIOD, including but not limited to any modifications to increase the capacity of lagoons, retention basins, or other liquid waste containment structures, or to alter the means by which liquid waste is transported between areas where it is generated and where it is stored.

//

//

//

Dated: May 27, 2025                                LAW OFFICE OF WILLIAM CARLON

William N. Carlon
Attorney for Plaintiff
Californians for Alternatives to Toxics

## PROOF OF SERVICE

I, William N. Carlon, declare as follows:

I am a resident of the State of California, and employed in Napa, California.  I am over the age of 18 years and am not a party to the above-entitled action.  My business address is 437 Post Street, Napa, California 94559.

On May 27, 2025 I served the following document(s):

**PLAINTIFF CALIFORNIANS for ALTERNATIVES to TOXICS' INTERROGATORIES, SET ONE**

by placing a true and correct copy thereof in a sealed envelope, first class postage prepaid, addressed to the party listed below, and depositing it in a United States Postal Service mail box:

Peter Hsiao
Alexander Moore
KING & SPALDING LLP
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071

I certify and declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May 27, 2025, at Napa, California.

William N. Carlon