1   PETER HSIAO (Bar No. 119881)
    *phsiao@kslaw.com*
2   ALEXANDER MOORE (Bar No. 340994)
    *amoore@kslaw.com*
3   **KING & SPALDING LLP**
    633 West Fifth Street, Suite 1600
4   Los Angeles, CA 90071
    Telephone:    +1 213 443 4355
5   Facsimile:    +1 213 443 4310

6   *Attorneys for Defendants*
    TRAVIS MOREDA DAIRY and TRAVIS MOREDA
7

8                    **UNITED STATES DISTRICT COURT**

9                    **NORTHERN DISTRICT OF CALIFORNIA**

10

11  CALIFORNIANS FOR ALTERNATIVES TO       Case No. 3:24-CV-06632-SI
    TOXICS,
12                                          **NOTICE OF MOTION AND MOTION**
                    Plaintiff,              **TO DISMISS OR, IN THE**
13                                          **ALTERNATIVE, MOTION FOR**
            vs.                             **SUMMARY JUDGMENT;**
14                                          **MEMORANDUM OF POINTS AND**
    TRAVIS MOREDA DAIRY and TRAVIS          **AUTHORITIES IN SUPPORT THEROF**
15  MOREDA,
                                            Date: October 31, 2025
16                  Defendants.             Time:  10:00 a.m.
                                            Courtroom 1, 17th Floor
17
                                            *[Filed concurrently with Declarations of*
18                                          *Travis Moreda, Kyle Lutz, and Alexander*
                                            *Moore, and [Proposed] Order]*
19
                                            Assigned to the Honorable Susan Illston
20
                                            Complaint Filed: September 20, 2024
21                                          Trial Date: None set
22

23

24

25

26

27

28

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

PLEASE TAKE NOTICE that on October 31, 2025, at 10:00 a.m., or soon thereafter as the matter may be heard, in Courtroom 1, 17th Floor, of this Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, before the Honorable Susan Illston, Defendants Travis Moreda Dairy and Travis Moreda ("Travis"), will and hereby do move the Court for an order (i) dismissing the complaint, and each claim contained therein, with prejudice, or in the alternative, (ii) granting summary judgment for Travis and against Plaintiff.

This motion is made pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), 37(c)(1), and 56, and is based on the following grounds:

1.      The complaint must be dismissed because Plaintiff failed to serve Travis with the required notice of violation before filing this lawsuit in violation of the mandatory requirements of the Clean Water Act.

2.      The Regional Water Quality Control Board inspected Travis Moreda Dairy and found no present or ongoing violation of the Clean Water Act.  33 U.S.C. § 1365(a)(1); *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 50–51 (1987).

3.      In response, Plaintiff failed to produce evidence of a violation of the Clean Water Act in its Rule 26 disclosures and is now precluded from offering such evidence under Rule 37(c)(1).  As a result, the case should be dismissed for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted.  In the alternative, there is no genuine dispute of material fact and Travis is entitled to judgment as a matter of law.

4.      Plaintiff fails to provide facts to establish this Court's subject matter jurisdiction under the Clean Water Act, or to state a claim upon which relief can be granted, because Plaintiff did not establish standing.

The motion is supported by this notice, the attached memorandum of points and authorities, the declarations of Travis Moreda, Kyle Lutz, and Alexander Moore, the pleadings and documents on file in this case, and on such other written and oral arguments as may be presented to the Court on this matter.

1

Dated: September 26, 2025

**KING & SPALDING LLP**

By: _____
        Alexander Moore

*Attorneys for Defendants*
TRAVIS MOREDA DAIRY and TRAVIS
MOREDA

2

MOTION TO DISMISS, OR IN THE ALTERNATIVE,
FOR SUMMARY JUDGMENT                                    CASE NO. 3:24-CV-06632-SI

# TABLE OF CONTENTS

**Page**

I.  STATEMENT OF ISSUES TO BE DECIDED ..................................................... 1

II.  STATEMENT OF FACTS ................................................................................. 1

    A.  Background Facts. ....................................................................................... 1

    B.  Travis Implemented a List of Improvements in Compliance with the Water Act. ......... 3

    C.  The Lead Agency for Water Act Enforcement Inspected and Approved Travis' Improvements and Found No Violations. ........................................................ 6

    D.  Plaintiff's Mandatory Rule 26 Disclosures Contain No Percipient Witnesses and No Admissible Evidence of Any Violation of the Water Act at the Dairy. ................................ 7

III.  LEGAL STANDARDS ...................................................................................... 7

    A.  Motion to Dismiss. ...................................................................................... 7

        1.  Rule 12(b)(1). ..................................................................................... 7

        2.  Rule 12(b)(6). ..................................................................................... 8

    B.  Motion for Summary Judgment ................................................................. 9

IV.  ARGUMENT ...................................................................................................... 9

    A.  Plaintiff Failed to Comply with the Mandatory Notice of Violation Requirements of the Water Act Before Filing this Lawsuit. .......................................... 9

    B.  Travis Has Proven There is No Ongoing Violation or Reasonable Likelihood of a Future Violation. ................................................................................... 11

    C.  Plaintiff Failed to Produce Evidence of a Violation Under Rule 26 and Is Now Precluded from Offering Such Evidence Under Rule 37(c)(1), Creating the Record for Dismissal of this Action or Summary Judgment. .......................................... 12

    D.  Plaintiff Has Failed to Establish its Standing to Bring this Action. ............................ 13

V.  CONCLUSION ..................................................................................................... 14

KING & SPALDING LLP
ATTORNEYS AT LAW
LOS ANGELES

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ............................................................................................ 9

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...................................................................................... 8, 11

*Atwell v. KW Plastics Recycling Div.*,
    173 F. Supp. 2d 1213 (M.D. Ala. 2001) .......................................................... 10

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ...................................................................................... 8, 11

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ............................................................................................ 9

*Coastal Env't Rights Found. v. Naples Restaurant Grp., LLC*,
    115 F.4th 1217 (9th Cir. 2024) .......................................................................... 11

*Ctr. For Biological Diversity v. Marina Point Dev. Co.*,
    566 F.3d 794 (9th Cir. 2009) ............................................................................. 10

*De La Torre v. CashCall, Inc.*,
    56 F. Supp. 3d 1073 (N.D. Cal. 2014) ................................................................ 6

*FDA v. Alliance for Hippocratic Medicine*,
    602 U.S. 367 (2024) ........................................................................................... 14

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
    149 F.3d 303 (4th Cir. 1998) ............................................................................. 14

*Friends of the Earth, Inc. v. Laidlaw Env't*
    Servs. *(TOC), Inc.*, 528 U.S. 167 (2000) ......................................................... 14

*In re Gilead Scis. Sec. Litig.*,
    536 F.3d 1049 (9th Cir. 2008) ............................................................................. 9

*Goodman v. Staples The Office Superstore, LLC*,
    644 F.3d 817 (9th Cir. 2011) ............................................................................. 12

*Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*,
    484 U.S. 49 (1987) .....................................................................................*passim*

ii

*Hallstrom v. Tillamook County*,
    493 U.S. 20 (1989) ..................................................................................................... 10

*Kokkonen v. Guardian Life Ins. Co. of America*,
    511 U.S. 375 (1994) ..................................................................................................... 7

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ............................................................................................... 13, 14

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ..................................................................................................... 9

*Mortensen v. First Fed. Savings & Loan Ass'n*,
    549 F.2d 884 (3d Cir. 1977) ....................................................................................... 8

*NL Indus. v. Kaplan*,
    792 F.2d 896 (9th Cir. 1986) ...................................................................................... 8

*OEM-Tech v. Video Gaming Techs., Inc.*,
    2013 WL 12173892 (N.D. Cal. Jan. 8, 2013) ..................................................... 12, 13

*Silvia v. EA Tech. Servs.*,
    2018 WL 1366622 (N.D. Cal. Mar. 16, 2018) ......................................................... 13

*T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*,
    809 F.2d 626 (9th Cir. 1987) ...................................................................................... 9

*Thornhill Pub'g Co., Inc. v. Gen. Tel. & Elecs. Corp.*,
    594 F.2d 730 (9th Cir. 1979) ...................................................................................... 7

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) ................................................................................................... 14

*Usher v. City of Los Angeles*,
    828 F.2d 556 (9th Cir. 1987) ...................................................................................... 8

**Statutes & Regulations**

33 U.S.C. § 1365 ........................................................................................................ 1, 9, 11

Cal. Civ. Code §1708.8 ....................................................................................................... 7

40 C.F.R. § 135 ............................................................................................................... 1, 9

40 C.F.R. § 135.3 .............................................................................................................. 10

KING & SPALDING LLP
ATTORNEYS AT LAW
LOS ANGELES

iii

**Rules**

Fed. R. Civ. Proc. 8(a)(2) ................................................................................................ 8

Fed. R. Civ. Proc. 12(b)(1) ..................................................................................... 1, 7, 8

Fed. R. Civ. Proc. 12(b)(6) ................................................................................... 1, 8, 13

Fed. R. Civ. Proc. 12(d) .............................................................................................. 13

Fed. R. Civ. Proc. 26 ............................................................................................ *passim*

Fed. R. Civ. Proc. 37(c)(1) ................................................................................ 1, 12, 13

Fed. R. Civ. Proc. 56 ................................................................................................ 1, 9

Fed. R. Civ. Proc. 201(b)(2) ......................................................................................... 6

King & Spalding LLP
Attorneys at Law
Los Angeles

iv

1    **I.**      **STATEMENT OF ISSUES TO BE DECIDED**

2      A.    Whether Plaintiff failed to comply with the mandatory requirements of the Clean Water

3            Act ("Water Act") by sending a 60-day notice of violation identifying no specific

4            discharge, at no specific location, on no specific date, with no test results showing any

5            concentration of any contaminant in any discharge.  *See* 33 U.S.C. § 1365(b)(1); 40

6            C.F.R. § 135; *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49,

7            59–60 (1987).

8      B.    Can Plaintiff present facts to establish subject matter jurisdiction, or to state a claim

9            under the citizen suit provisions to enforce the Water Act, where:

10           1.    The San Francisco Bay Regional Water Quality Control Board ("Water Board"),

11                the lead agency to administer the Act, inspected Travis Moreda Dairy ("Dairy")

12                and determined there were no present or ongoing violations of the Water Act;

13           2.    In response to the Water Board's finding, Plaintiff's mandatory disclosures under

14                Federal Rule of Civil Procedure ("Rule") 26 contain no percipient witness to any

15                specific discharge, at a specific location, on a specific date, and further disclose

16                no testing or test results identifying the presence or concentration of any

17                contaminants in a discharge at the Dairy, that Plaintiff "may use to support its

18                claims"; and

19      C.    Whether the application of Rule 26 and Rule 37 result in a record before this Court void

20            of admissible evidence to controvert the Water Board's finding, or to create a genuine

21            issue of disputed fact to oppose a motion to dismiss, or in the alternative, for summary

22            judgment.

23    **II.**    **STATEMENT OF FACTS**

24      A.    **Background Facts.**[1]

25         Family dairies are built with faith, shovels, and sweat.  For more than 100 years, five

26  generations of Travis' family have grown crops and raised livestock in Sonoma County.

27

28          

---

[1] Travis provides these facts as background information and does not rely upon them to establish the required record for this motion to dismiss or for summary judgment.

(Declaration of Travis Moreda ("Travis Decl.") ¶ 2.)  Travis is committed to sustainable agriculture and the protection of the environment.  (*Id.*, ¶ 3.)  No agency has ever found his operation in violation of the Water Act.  (*Ibid.*)

Travis' Dairy provides milk and dairy products to the local community while providing a livelihood for his family.  (*Id.*, ¶ 4.)  However, the Dairy is still recovering from the impact of a 40-year low of the dairy industry as a whole, and is under financial strain and on "the brink of collapse" due to a difficult economy.  (*Ibid.*)  Unexpected expenses, including extended litigation, might result in Travis' bankruptcy.  (*Id.*, ¶ 5.)

In recent years, Plaintiff and other organizations have attempted to forcibly close family dairies in Sonoma & Marin Counties both legislatively and through the courts.  In 2024, Plaintiff was a key sponsor of Measure J, a County ballot initiative to eliminate large-scale animal production facilities, requiring certain dairies to close within three years or face daily financial penalties for violations.  (*Id.*, ¶ 6, Exh. A.)  Measure J was overwhelmingly rejected by approximately 85% of Sonoma County voters.  In exit survey polling, residents stated they sought to preserve Sonoma County's agricultural history and protect the multi-generational family farmers targeted by the measure, while identifying Measure J as an initiative originating from and backed by groups located outside of Sonoma County.  (*Id.*, Exh. B.)

Plaintiff and other purported citizen groups have also turned to litigation attacks on dairies.  CAT's lawyer, for another group, used the Water Act to sue another dairy, owned for over 100 years by the Mulas family.  The cost of litigation forced the dairy out of business in 2024.  (*See* Travis Decl. Exh. C at 6).  Counsel's former partner explained their strategy of "stick and move, stick and move," to target and pick off individual family dairies, filing multiple lawsuits in quick succession.  (*Id.*)  Combined with recent drought years, and high prices for feed, utilities, and gasoline, dairies in Sonoma County struggle to survive, much less turn a profit.  (*Id.* at 5.)  Litigation expenses—simply put—threaten a death blow to these family dairies.

//

//

KING & SPALDING LLP
ATTORNEYS AT LAW
LOS ANGELES

MOTION TO DISMISS, OR IN THE ALTERNATIVE,
FOR SUMMARY JUDGMENT                                    CASE NO. 3:24-CV-06632-SI

**B.**    **Travis Implemented a List of Improvements in Compliance with the Water Act.**

In July 2024, Plaintiff sent a purported Notice of Violations to Travis, vaguely alleging—without providing the required facts—that manure from TMD was entering waters of the United States in violation of the Water Act.  (Compl. Exh. 1.)  The notice identified no specific discharge, at no specific location, on no specific date, and contained no test results showing any concentration of any contaminant in any discharge.

Before receiving the notice letter, Travis was already implementing continuous improvements at his Dairy in compliance with the Water Act, as is necessary in any agricultural business.  (Declaration of Kyle Lutz ("Lutz Decl.") ¶ 3.)  Travis worked together with his experts, Paul Sousa and Kyle Lutz of Western United Dairies ("WUD"), to investigate, design, and fully implement a list of improvements (*id.*, ¶ 4; Exh. D):

**1.**    **Free Stall Barn Manure Containment:** Travis installed a concrete-lined reception pit below the Free Stall Barn, designed to allow Travis to scrape manure produced within the Free Stall Barn and on the walkway at the front of the Free Stall Barn into the reception pit. Manure and related wastewater that enters the reception pit is pumped into the existing lagoon system.  Travis has backup pumps available onsite to ensure the successful transfer of manure from the reception pit to the lagoon system.

**2.**    **Conveyance System/Lagoon Connection to Storage System:** Travis installed five additional pumps, allowing all five wastewater lagoons to be managed as one unit.  This allows for the sufficient combined capacity referenced in Travis' Waste Management Plan.

**3.**    **Removal of Gray Water & Potential Runoff:** Travis installed a berm to prevent the drainage area between the Free Stall Barn and the adjacent manure lagoon from holding gray water.  Wastewater from this area is collected before the berm and pumped into the existing lagoon system.

KING & SPALDING LLP
ATTORNEYS AT LAW
LOS ANGELES

MOTION TO DISMISS, OR IN THE ALTERNATIVE,
FOR SUMMARY JUDGMENT                                        CASE NO. 3:24-CV-06632-SI

**4.      Contain Potential Runoff from Hill Utilized by Livestock:** Travis installed a berm which captures potential runoff from the hillside where livestock have access and conveys the drainage to the existing lagoon system.

**5.      Increase Capacity of the Existing Lagoon System:** Travis increased the capacity of its existing lagoon system to provide sufficient capacity as referenced in its Waste Management Plan.

**6.      Milk Barn Gutter Cleaning & Plugging, Pipe Improvements:** Travis cleaned its milk barn gutter, plugged unnecessary drainage systems, and repaired a damaged pipe.

**7.      Corral by the Loading Chute:** Travis scraped clean and pressure-washed the corral by the loading chute.  This area will not be utilized during the rainy season and will be limited to seasonal use to prevent any water quality issues.

**8.      Dry Cow Barn Containment & Vegetative Buffer:** Travis prevents dry cows from using the dry cow barn during the rainy season.  When it is used, manure produced within this barn shall be scraped, piled, and removed prior to the rainy season, and vegetation shall be allowed to grow in this area to provide a buffer for future use during appropriate weather conditions.

**9.      Agronomic Application of Manure:** When applying manure to land, Travis shall use manure application mechanisms that allow for the reasonable calculation of the rate and total volume of manure applied during any given application.

**10.      Composting Area Containment/Tarping:** Travis shall tarp the dried manure pile prior to the rainy season such that the pile shall not be exposed to rainfall, and Travis installed a berm below the composting area that captures any seepage from the pile and conveys any such seepage to the existing manure lagoon system.

**11.      Feeders on Hilltops Containment/Seasonal Use:** Travis ceased using the feeders on the hilltop area during the rainy season.  Prior to the beginning of the rainy season, Travis shall scrape clean this area.

**12.    Dried Manure Pile:** Travis shall pile manure in accordance with Travis' current Regional Board permit, as required by San Francisco Bay Regional Water Quality Control Board's Waste Discharge Requirements for Confined Animal Facilities Order No. R2-2016-0031.

**13.    Silage Pile & Outdoor Commodity Piling Seasonal Use:** Travis shall not store commodities in the silage pile during the winter months where the presence of rainfall may present a threat to water quality.  Instead, Travis will store commodities in the existing roofed commodity barn.

**14.    Hot Wire Addition:** Travis installed electric fencing technologies to manage livestock's access to waterways as required by the San Francisco Bay Regional Water Quality Control Board's Waste Discharge Requirements for Confined Animal Facilities Order No. R2-2016-0031.

**15.    Recordkeeping:** Travis updated his Facility map to include these new improvements.  Travis updated its wastewater generation calculations, wastewater storage calculations, and agronomic rates calculations, and has applied for an updated Nutrient Management Plan with the National Resource Conservation Service.

Travis and Mr. Lutz communicated all these improvements to Plaintiff and shared his agency-approved Nutrient Management Plan and Waste Management Plan.[2]  (*Id.*, ¶ 6.)  Travis and Mr. Lutz also provided Plaintiff photographs of the improvements.  (*Id.*, Exh. E.)  Plaintiff did not comment, criticize, or object to the site improvements, or suggest any additional improvements.  (*Id.*, ¶ 10.)  Plaintiff did not dispute the improvements are effective to contain manure from release to surface waters and groundwater.  (*Ibid.*)  Pointedly, Plaintiff has not asserted there are any present or ongoing violations of the Water Act after the implementation of these improvements and provided no admissible evidence to support any such allegation.

---

[2] A waste management plan describes how pollutant sources are controlled at a facility.  *See*, *e.g.*, San Francisco Bay Regional Water Quality Control Board Renewal of Conditional Waiver of Waste Discharge Requirements For Existing Dairies, Attachment B at 1, https://www.waterboards.ca.gov/sanfranciscobay/board_decisions/adopted_orders/2015/R2-2015-0031.pdf (last visited September 24, 2025).  A nutrient management plan describes the management practices used at the facility to minimize adverse impacts to surface water and groundwater from runoff and leaching from manure and process water application to land.  *Id.*, Attachment C at 1.

5

Plaintiff's factual allegations in the complaint omit all these facts showing Travis' compliance with the Water Act.  Indeed, Plaintiff's complaint contains little detail other than allegations that manure is discharged into waters of the United States.  Compl. ¶¶ 62, 74.  The complaint again identifies no specific discharge, at no specific location, on no specific date, and contained no test results showing any concentration of any contaminant in any discharge.  And because the complaint does not address the site improvements, Plaintiff has not alleged facts showing the current site conditions and how there are any present or ongoing violations of the Water Act after the implementation of these improvements.

## C.     The Lead Agency for Water Act Enforcement Inspected and Approved Travis' Improvements and Found No Violations.

Under the Water Act, the U.S. EPA can delegate lead agency authority to the state.  Here, the delegation of authority is to the San Francisco Bay Regional Water Quality Control Board ("Water Board").  The Water Board conducted a comprehensive inspection of the Dairy on November 1, 2024—after the implementation of Travis' improvements.  (Lutz Decl. ¶ 7.)  The Water Board identified no violations, including none under the Water Act.  (*Id.*, ¶ 8; Exh. F.)[3] Among the inspection notes, the Water Board concluded, "[o]verall, the production area was observed to be well maintained and had an effective design for capturing waste material in the waste pond system" (*id.,* Exh. F at 0131) and "[b]ased on inspection observations, the facility meets the General [Waste Discharge Requirements] minimum requirements" (*id.,* Exh. F at 0132).  The inspection report identified no action items for Travis.  (*Id.,* Exh. F at 0133.)  Travis and Mr. Lutz provided the Water Board report to Plaintiff on March 6, 2025.  (*Id.*, ¶ 9.)

//

//

//

---

[3] Travis requests the Court take judicial notice of the contents of the Water Board report.  The facts therein can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned, making judicial notice appropriate.  Fed. R. Civ. Proc. 201(b)(2); *see, e.g.*, *De La Torre v. CashCall, Inc.*, 56 F. Supp. 3d 1073, 1092 (N.D. Cal. 2014) *vacated and remanded on other grounds*, 904 F.3d 866 (9th Cir. 2018) (taking judicial notice of agency reports).

KING & SPALDING LLP
ATTORNEYS AT LAW
LOS ANGELES

MOTION TO DISMISS, OR IN THE ALTERNATIVE,
FOR SUMMARY JUDGMENT

CASE NO. 3:24-CV-06632-SI

1   **D.      Plaintiff's Mandatory Rule 26 Disclosures Contain No Percipient Witnesses**

2   **and No Admissible Evidence of Any Violation of the Water Act at the Dairy.**

3       The parties exchanged their Rule 26 initial disclosures on April 4, 2025.  Plaintiff produced

4   no percipient evidence, identified no percipient witness with firsthand knowledge of a violation,

5   shared no test results, and provided no other documentation to show injury in fact or a violation.

6   Pointedly, Plaintiff provided no evidence to contest the Water Board's finding that there are no

7   violations at the Dairy.  Plaintiff's only evidence was public agency documents that show no

8   violation and its illegal drone footage.[4]  (Declaration of Alexander Moore ("Moore Decl.") Exh. G;

9   Lutz Decl. ¶ 11.)  Plaintiff's only percipient witnesses regarding the Dairy are its drone operator

10  and the custodians of records for the agencies.  (Moore Decl. Exh. G.)  Plaintiff also discloses its

11  Executive Director as a witness likely to have discoverable information but failed to disclose the

12  subjects of that information that Plaintiff may use to support its claims as required by Rule 26.  (*Id.*)

13  Travis disclosed an extensive set of evidence, including photographs of the improvements and

14  witnesses, including Mr. Lutz, to testify regarding the high quality of the control measures in

15  compliance with the Water Act, and the Water Board report.  (*Id.*, Exh H.)

16  **III.    LEGAL STANDARDS**

17      **A.      Motion to Dismiss.**

18          **1.      Rule 12(b)(1).**

19      Federal Rule of Civil Procedure 12(b)(1) allows a party to challenge a federal court's

20  jurisdiction over the subject matter of the complaint.  *See* Fed. R. Civ. Proc. 12(b)(1).  The party

21  invoking the jurisdiction of the federal court bears the burden of establishing that the court has the

22  requisite subject matter jurisdiction to grant the relief requested.  *See Kokkonen v. Guardian Life*

23  *Ins. Co. of America*, 511 U.S. 375, 377 (1994) (citation omitted).  A complaint will be dismissed

24  if, looking at the complaint as a whole, it appears to lack federal jurisdiction either "facially" or

25  "factually."  *Thornhill Pub'g Co., Inc. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir.

26  
27  ---
[4] Travis objects to this drone footage as illegally obtained by Plaintiff in violation of California Civil Code section 1708.8 and California's trespass law.  The footage is inadmissible as evidence in this action.  (*See* Travis Decl. ¶ 9.)

28

1    1979).  When the complaint is challenged for lack of subject matter jurisdiction on its face, all

2    material allegations in the complaint will be taken as true and construed in the light most favorable

3    to the plaintiff.  *NL Indus. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).  In deciding a Rule 12(b)(1)

4    motion which mounts a factual attack on jurisdiction, "no presumption of truthfulness attaches to

5    plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court

6    from evaluating for itself the merits of jurisdictional claims.  Moreover, the plaintiff will have the

7    burden of proof that jurisdiction does in fact exist."  *Mortensen v. First Fed. Savings & Loan Ass'n*,

8    549 F.2d 884, 891 (3d Cir. 1977).

9    **2.    Rule 12(b)(6).**

10   A complaint must contain "a short and plain statement of the claim showing that the pleader

11   is entitled to relief," and a complaint that fails to do so is subject to dismissal pursuant to Rule

12   12(b)(6).  Fed. R. Civ. Proc. 8(a)(2).  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff

13   must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v.*

14   *Twombly*, 550 U.S. 544, 570 (2007).  This "facial plausibility" standard requires the plaintiff to

15   allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully."

16   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While courts do not require "heightened fact pleading

17   of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative

18   level."  *Twombly*, 550 U.S. at 555, 570.  "A pleading that offers 'labels and conclusions' or 'a

19   formulaic recitation of the elements of a cause of action will not do.'"  *Iqbal*, 556 U.S. at 678

20   (quoting *Twombly*, 550 U.S. at 555).  "Nor does a complaint suffice if it tenders 'naked assertion[s]'

21   devoid of 'further factual enhancement.'"  *Id*. (quoting *Twombly*, 550 U.S. at 557).  "While legal

22   conclusions can provide the framework of a complaint, they must be supported by factual

23   allegations."  *Id*. at 679.

24   In reviewing a Rule 12(b)(6) motion, courts must accept as true all facts alleged in the

25   complaint and draw all reasonable inferences in favor of the non-moving party.  *See Usher v. City*

26   *of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  However, courts are not required to accept as

27

28

1    true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable

2    inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).

3        **B.    Motion for Summary Judgment.**

4        Summary judgment is proper "if the movant shows that there is no genuine dispute as to

5    any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc.

6    56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue

7    of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however,

8    has no burden to disprove matters on which the non-moving party will have the burden of proof at

9    trial. The moving party need only demonstrate to the Court there is an absence of evidence to

10   support the non-moving party's case. *Id*. at 325.

11       Once the moving party has met its burden, the burden shifts to the nonmoving party to "set

12   forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine

13   issue for trial.'" *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.

14   1987) (citing *Celotex*, 477 U.S. at 324). To carry this burden, the nonmoving party must "do more

15   than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec.*

16   *Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla

17   of evidence ... will be insufficient; there must be evidence on which the jury could reasonably find

18   for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

19   **IV.    ARGUMENT**

20       **A.    Plaintiff Failed to Comply with the Mandatory Notice of Violation**

21             **Requirements of the Water Act Before Filing this Lawsuit.**

22       The Water Act requires a private plaintiff to provide a 60-day notice of its intention to file

23   a citizen suit. 33 U.S.C. § 1365(b)(1); 40 C.F.R. § 135. The purpose is to allow the regulated party

24   to implement improvements to address the alleged violations and thereby avoid the lawsuit, and it

25   is a necessary prerequisite to filing a lawsuit. *See Gwaltney of Smithfield, Ltd. v. Chesapeake Bay*

26   *Found., Inc.*, 484 U.S. 49, 59–60 (1987). A notice letter must include, among other things,

27   "sufficient information to permit the recipient to identify the specific standard, limitation, or order

28

alleged to have been violated, the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, the location of the alleged violation, the date or dates of such violation, and the full name, address, and telephone number of the person giving notice." 40 C.F.R. § 135.3(a).   Lawsuits based upon notice letters that fail to sufficiently provide the requisite information are subject to dismissal.  *See Hallstrom v. Tillamook County*, 493 U.S. 20, 31 (1989) (failure to comply with 60-day notice requires dismissal of RCRA citizen suit because such requirement is a "mandatory condition[] precedent to commencing suit"); *Ctr. For Biological Diversity v. Marina Point Dev. Co.*, 566 F.3d 794, 801 (9th Cir. 2009) (". . . we have never abandoned the requirement that there be a true notice that tells the target precisely what it allegedly did wrong, and when"); *Atwell v. KW Plastics Recycling Div.*, 173 F. Supp. 2d 1213, 1222 (M.D. Ala. 2001) (plaintiffs must "provide enough information to enable both the alleged violator and the appropriate agencies to identify the pertinent aspects of the alleged violations without undertaking an extensive investigation of their own").

Both Plaintiff's notice letter and complaint are insufficient as a matter of law regarding the location, date, and specific activity (e.g. amount of water discharged and nature and quantity of chemicals, if any, in the discharge) alleged to constitute a violation.  (40 C.F.R. § 135.3(a); *see* Compl. Exh. 1.)  The notice identifies no specific discharge, at no specific location, on no specific date, with no test results showing any concentration of any contaminant in the discharge.  The notice only generally states that Travis discharged a variety of pollutants into "local surface waters" somewhere on his Dairy during "Significant Rain Events," for which Plaintiff provided a list of over 200 dates between July 2019 and July 2024.  (*Id.*)  The notice letter specifically identifies that violations occurred on February 1 and 10, 2024, without any identification of the specific location, quantity, chemical makeup, or concentration of the discharged water.  (And as shown below, Plaintiff has no such evidence and none was provided in its Rule 26 disclosures.)  There is not one molecule of evidence in the notice letter that any discharged water contained any specific level of any contaminant.

MOTION TO DISMISS, OR IN THE ALTERNATIVE,
FOR SUMMARY JUDGMENT                                                          CASE NO. 3:24-CV-06632-SI

The complaint is equally void of allegations of any specific discharge on any specific day that allegedly constitutes a violation. *See Ashcroft*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555 (while legal conclusions can provide the framework of a complaint, they must be supported by factual allegations, and the court should determine whether they plausibly give rise to an entitlement to relief). Whether a dairy occupies one acre or 100,000 acres, a notice must state the location of the alleged violation with sufficient detail to allow the receiving party to assess and address the alleged illegal discharge. None of that meaningful information is contained in Plaintiff's notice letter. Its vague and diffuse allegations deprive Travis of the requisite information to address the alleged violations without an extensive investigation of his own.

Plaintiff's failure to comply with the Water Act's notice requirements can be determined as a matter of law on the face of the notice letter. It is a threshold reason to dismiss this action.

## B. Travis Has Proven There is No Ongoing Violation or Reasonable Likelihood of a Future Violation.

It is well-settled that a citizen's suit to enforce the Water Act may only be brought to address ongoing or future violations, not past violations. The Water Act allows citizen suits solely where a defendant is "alleged to be in violation" of the Act. 33 U.S.C. § 1365(a)(1). The Supreme Court held a citizens' suit must be dismissed as moot "after the plaintiff's allegations of ongoing violations become false because the defendant had begun to comply with the Act." *Gwaltney*, 484 U.S. at 50–51. Thus a defendant may cure the alleged violation and end the citizen's suit for lack of injury to plaintiff, causation, and redressability. In that situation, a court can assess whether any alleged Water Act violations could "reasonably be expected to recur." *Coastal Env't Rights Found. v. Naples Restaurant Grp., LLC*, 115 F.4th 1217, 1220 (9th Cir. 2024) (quoting *Gwaltney*, 484 U.S. at 66). A court should not permit a lawsuit to continue where any potential future violation is "too speculative." *Id.* at 1223–24.

Travis has shown with admissible evidence, and thereby carried his burden on this motion, that there is no ongoing violation of the Water Act or reasonable likelihood of any future violation. Travis proactively implemented improvements to his Dairy both before and after the notice letter

KING & SPALDING LLP
ATTORNEYS AT LAW
LOS ANGELES

to ensure his compliance with the Water Act. (*See* Lutz Decl. ¶¶ 3–4.) These improvements were designed by experts at WUD. (*Id.*, ¶ 4.) They were inspected by the Water Board, which concluded that Travis was in compliance with all requirements. (*Id.*, Exh. F.) Plaintiff raised no concerns about these improvements and has identified no further improvements it might deem necessary. (*See id.*, ¶ 10.) Nor has Plaintiff questioned the analysis and findings of the Water Board. (*Ibid.*)

Facing the Water Board's determination, Plaintiff responds with no admissible evidence to show an ongoing or future violation. None is disclosed in its required notice letter. None is pleaded in its complaint. And none is provided in its mandatory Rule 26 disclosures. Any allegation that a violation could "reasonably be expected to recur" would be entirely speculative. The Supreme Court's holding in *Gwaltney* is directly on-point and dispositive. This case should be dismissed.

### C.    Plaintiff Failed to Produce Evidence of a Violation Under Rule 26 and Is Now Precluded from Offering Such Evidence Under Rule 37(c)(1), Creating the Record for Dismissal of this Action or Summary Judgment.

Rule 26 requires a plaintiff to disclose each individual and all documents in its possession, custody, or control that it may use to support its claims. If a plaintiff fails to provide information or identify a witness under Rule 26, Rule 37(c)(1) provides the plaintiff is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. Rule 37(c)(1) is a "self-executing" and "automatic" sanction designed to provide a strong inducement for disclosure. *Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817, 827 (9th Cir. 2011); *see also OEM-Tech v. Video Gaming Techs., Inc.*, No. C 10-04368 RS, 2013 WL 12173892, *7 (N.D. Cal. Jan. 8, 2013) ("a court may, *sua sponte*, exclude evidence that a party failed to disclose under Rule[] 26(a)").

Here, Plaintiff failed to produce any evidence establishing the existence of a Water Act violation. Plaintiff's mandatory notice letter, its complaint, and its Rule 26 disclosures are consistent and aligned in their failures: none identify a single specific discharge, at a specific location, on a specific date. None show any testing was performed by Plaintiff, and accordingly, there are no test results showing any concentration of any contaminant in any discharge. Plaintiff

also failed to disclose any witness with percipient knowledge of a violation or of the improvements at the Dairy.

Therefore, the Court may dismiss this action for lack of subject matter jurisdiction and failure to state a claim on which relief can be granted. Alternatively, without admissible evidence to controvert the facts established by Travis, summary judgment is proper.[5]  *OEM-Tech* is instructive.  There, defendant moved for summary judgment on a breach of non-disclosure agreement claim on the grounds that the plaintiff had failed to designate any information as confidential under the agreement.  2013 WL 12173892, at *5.  For the first time, in opposition to the motion, plaintiff produced documentation suggesting the parties had agreed certain information was to be treated as confidential.  *Id*.  The court found that plaintiff had a duty to supplement its initial disclosures as soon as it was aware of the existence of the highly relevant documents.  *Id*. at *7.  As a result of the plaintiff's failure to disclose, the Court ordered the evidence stricken under Rule 37(c)(1)—though this sanction was significant, it was appropriate "even where, as here, it precludes a litigant's entire cause of action."  *Id*.; *see also Silvia v. EA Tech. Servs.*, No. 15-CV-04677-JSC, 2018 WL 1366622, at *7 (N.D. Cal. Mar. 16, 2018).

Just as in *OEM-Tech*, if Plaintiff had any evidence of a violation of the Water Act, it was required to produce such evidence in its Rule 26 disclosures.  Plaintiff is now properly precluded under Rule 37(c)(1) from submitting evidence supporting its allegations of a Water Act violation, and Travis is entitled to summary judgment even where such a ruling will preclude Plaintiff's entire cause of action.

**D.     Plaintiff Has Failed to Establish its Standing to Bring this Action.**

As a prerequisite to filing this lawsuit, Plaintiff bears the burden of establishing standing. First, Plaintiff must prove injury in fact—"an invasion of a legally protected interest which is concrete and particularized, and actual or imminent, not conjectural or hypothetical."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  Second, Plaintiff must show causation: the injury

---

[5] A motion to dismiss under Rule 12(b)(6) is properly converted to a motion for summary judgment when matters outside the pleadings are presented to and not excluded by the court.  Fed. R. Civ. Proc. 12(d).

must be "fairly trace[able] to the challenged action of the defendant." *Id*.  Third, it must be likely that the injury will be "redressed by a favorable decision." *Id*. at 561.  These elements are not a mere pleading requirement, but rather "an indispensable part of the plaintiff's case." *Id.* at 561.  The elements of standing—injury, causation, and redressability—must exist at every stage of review or else the action becomes moot. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC)*, *Inc.*, 149 F.3d 303, 306 (4th Cir. 1998), *rev'd on other grounds*, *Friends of the Earth, Inc. v. Laidlaw Env't* Servs. *(TOC), Inc.*, 528 U.S. 167, 179 (2000).

To oppose a motion for summary judgment, a plaintiff cannot rest on "mere allegations," but most set forth specific facts establishing its standing. *Lujan*, 504 U.S. at 561.  This requirement is meant to prevent the federal courts from becoming a "vehicle for the vindication of value interests of concerned bystanders." *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 382 (2024).  A generalized grievance is insufficient—a plaintiff must have a "personal stake" in the dispute. *Id.* at 379, 381.  This remains true even when a plaintiff alleges a statutory violation. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021).  For a citizen suits, a plaintiff must prove their own injury, lest any citizen be permitted to seek monetary gain by filing suit against any other person or business. *Id.* at 428; *see also Laidlaw*, 528 U.S. at 181 (injury in fact must be to the plaintiff, not the environment).

Plaintiff has failed to establish its injury, causation, or redressability, and therefore lacks standing to proceed with this case.  It produced no evidence of a violation that caused its injury, or shown the causal link between the Dairy's actions and that injury, or demonstrated how the Court could provide a remedy when Plaintiff does not challenge the improvements at the Dairy.  This is a separate and independent ground to dismiss this case or grant summary judgment against Plaintiff.

## V.  <u>CONCLUSION</u>

In sum, this is a lawsuit looking for a problem.  For the foregoing reasons, Travis respectfully requests the Court dismiss Plaintiff's complaint with prejudice or, in the alternative, grant summary judgment in his favor.

1    Dated:  September 26, 2025          **KING & SPALDING LLP**

2

3                                        By: _____
                                              Alexander Moore
4

5                                        *Attorneys for Defendants*
                                         TRAVIS MOREDA DAIRY and TRAVIS
6                                        MOREDA

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KING & SPALDING LLP
ATTORNEYS AT LAW
LOS ANGELES

MOTION TO DISMISS, OR IN THE ALTERNATIVE,
FOR SUMMARY JUDGMENT                          CASE NO. 3:24-CV-06632-SI