WILLIAM VERICK (State Bar No. 140972)
Klamath Environmental Law Center
P.O. Box 1128
Arcata, CA 95518
(707) 630-5061
wverick@igc.org

DAVID WILLIAMS (State Bar No. 144479)
Law Offices of David Williams
1839 Ygnacio Valley Road, Suite 351
Walnut Creek, CA 94598
(510) 847-2356
dhwill7@gmail.com

BRIAN ACREE (State Bar No. 202505)
Law Office of Brian Acree
95 3rd Street, Second Floor
San Francisco, CA 94103-3103
(510) 517-5196
brian@brianacree.com

WILLIAM N. CARLON (State Bar No. 305739)
Law Office of William Carlon
437 Post Street
Napa, CA 94559
(530) 514-4115
william@carlonlaw.com

Attorneys for Plaintiff
CALIFORNIANS FOR ALTERNATIVES TO TOXICS

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CALIFORNIANS FOR ALTERNATIVES TO TOXICS,<br><br>Plaintiff,<br>vs.<br><br>TRAVIS MOREDA DAIRY AND TRAVIS MOREDA,<br><br>Defendants. | Case No. 3:24-cv-06632-SI<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |

# TABLE OF CONTENTS

**I. INTRODUCTION** .......... **5**

**II. LEGAL BACKGROUND** .......... **5**

*A. The Clean Water Act* .......... 5

**III. FACTUAL AND PROCEDURAL BACKGROUND** .......... **6**

*A. Defendants Discharge Storm Water Containing Pollutants from a Point Source to Waters of the United States* .......... 6

**IV. STANDARD OF REVIEW** .......... **7**

*A. Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)* .......... 7

**V. ARGUMENT** .......... **7**

*A. Plaintiff's Notice Letter Meets the Requirements Set Forth in the Clean Water Act.* .......... 7

*B. This Court Has Subject Matter Jurisdiction to Enforce Defendants' Discharges that Continue to Occur Without NPDES Permit Compliance* .......... 10

*C. Defendants' Interpretation of Rule 26 Is Incorrect* .......... 13

*D. Plaintiff Has Standing to Bring this Action* .......... 15

**VI. CONCLUSION** .......... **17**

# TABLE OF AUTHORITIES

**Cases**

*Am. Diabetes Ass'n v. United States Dep't of the Army*, 938 F.3d 1147 (9th Cir. 2019)................... 17

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)................................................................................. 7, 12

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)................................................................. 7, 12

*Cal. Sportfishing Protection All. v. Shiloh Grp., LLC*, 268 F. Supp. 3d 1029 (N.D. Cal. 2017)........ 12

*Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991)............................................................ 16

*Ecological Rights Found. v. Pacific Lumber Co.*, 230 F.3d 1141 (9th Cir. 2000) .............................. 6

*EPA v. Cal. ex rel. State Water Res. Control Bd.*, 426 U.S. 200 (1976) ............................................. 6

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167 (2000) ................ 15, 16

*Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49 (1987).................... 10, 14

*Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333 (1977).................................... 15

*Lazy Y Ranch LTD v. Behrens*, 546 F.3d 580 (9th Cir. 2008) ............................................................ 7

*Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001) ................................................................ 12

*Los Angeles Waterkeeper v. SSA Terminals, LLC,* 702 F. Supp. 3d 903 (C.D. Cal. 2023)............... 12

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ................................................................ 15, 16

*Natural Res. Def. Council v. Southwest Marine, Inc.*, 236 F.3d 985 (9th Cir. 2000).......................... 9

*Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099 (9th Cir. 2000) .................................. 16

*NRDC v. Cnty. of L.A.*, 725 F.3d 1194 (9th Cir. 2013) ...................................................................... 6

*OEM-Tech v. Video Gaming Techs., Inc.*, No. C 10-04368 RS, 2013 U.S. Dist. LEXIS 201318 (N.D. Cal. Jan. 8, 2013) ................................................................................................................ 13

*Oregon Natural Desert Ass'n v. Dombeck*, 172 F.3d 1092 (9th Cir. 1998)...................................... 16

*Puget Soundkeeper All. v. Port of Tacoma*, Nos. 21-35881, 21-35899, 22-35061, 2024 U.S. App. LEXIS 14030 (9th Cir. June 10, 2024)........................................................................ 9, 10, 13

*San Francisco Baykeeper v. Tosco Corp.*, 309 F.3d 1153 (9th Cir. 2002)................................. 7, 8, 9

*Sierra Club v. Morton*, 405 U.S. 727 (1972) ...................................................................................... 16

*Silvia v. EA Tech. Servs.*, No. 15-CV-04677-JSC, 2018 WL 1366622 (N.D. Cal. Mar. 16, 2018) ... 14

*United Auto Workers v. Brock*, 477 U.S. 274 (1986) ........................................................................ 15

*WaterKeepers N. Cal. v. AG Indus. Mfg.*, 375 F.3d 913 (9th Cir. 2004)............................................ 6

*Williston Basin Interstate Pipeline Co. v. An Exclusive Gas Storage Leasehold and Easement in the Cloverly Subterranean Geological Formation*, 524 F.3d 1090 (9th Cir. 2008) ........................ 7, 12

**Statutes**

33 U.S.C. § 1251(a) .................................................................................................. 5

33 U.S.C. § 1311(a) .................................................................................................. 5

33 U.S.C. § 1342 ....................................................................................................... 5

33 U.S.C. § 1362(12) ................................................................................................ 6

33 U.S.C. § 1362(14) ................................................................................................ 9

33 U.S.C. § 1362(6) .................................................................................................. 6

33 U.S.C. § 1365 ..................................................................................................... 10

California Civil Code § 1708.8 ............................................................................... 14

**Rules**

Fed. R. Civ. P. 12(b)(1) .......................................................................................... 17

Fed. R. Civ. P. 12(b)(6) ............................................................................................ 7

Fed. R. Civ. P. 26(a) ............................................................................................... 14

Fed. R. Civ. P. 26(e) ............................................................................................... 14

Fed. R. Civ. P. 8(a)(2) ............................................................................................... 7

Fed. R. Civ. P.37(c)(1) ............................................................................................ 14

**Regulations**

40 C.F.R. § 135.3(a) ........................................................................................ 7, 8, 9

## I. INTRODUCTION

This case arises from Defendants' ongoing and unlawful discharges of polluted storm water and animal waste from a concentrated animal feeding operation into waters of the United States, in direct violation of the Clean Water Act ("CWA" or "Act"). Despite the clear statutory mandate prohibiting such discharges without a valid permit, Defendants operate their facility without National Pollutant Discharge Elimination System permit coverage and continue to pollute downstream surface waters with manure, pathogens, nutrients, and other pollutants.

Defendants now seek to avoid judicial scrutiny by moving to dismiss Plaintiff's well-pleaded claims. Their motion ignores binding Ninth Circuit precedent, the applicable pleading standards, and the factual allegations in the Complaint. Most notably, Defendants assert that Plaintiff has failed to allege specific violations with sufficient detail. But the Complaint and its incorporated exhibits - including the 60-day notice letter - set forth ample facts concerning the nature, location, and dates of the violations, all of which are ongoing and actionable under governing law. Defendants also attempt to convert a Rule 12(b)(6) motion into an improper evidentiary challenge, relying on disputed extrinsic materials and post hoc claims of compliance that do not negate the plausibility of Plaintiff's allegations.

The Court should reject Defendants' invitation to circumvent the normal course of discovery and factual development. Plaintiff has stated a plausible claim for relief, satisfied the jurisdictional prerequisites of the CWA, and demonstrated that Defendants' violations are continuing. Defendants' motion fails as a matter of law and should be denied in its entirety.

## II. LEGAL BACKGROUND

### *A. The Clean Water Act*

Congress enacted the Clean Water Act in 1972 to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." *33 U.S.C. § 1251(a)*. To that end, section 301(a) of the Act, 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant from a point source into waters of the United States, unless such discharge is in compliance with the terms of an NPDES permit issued pursuant to Section 402 of the Clean Water Act, 33 U.S.C. § 1342. The term "discharge of pollutants" means "any addition of any pollutant to navigable waters from any point

source." 33 U.S.C. § 1362(12). Pollutants include but are not limited to industrial waste, chemical waste, biological materials, heat, rock, and sand discharged into water. 33 U.S.C. § 1362(6). A "point source" is "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, *concentrated animal feeding operation*, or vessel or other floating craft, from which pollutants are or may be discharged." 33 U.S.C. § 1362(14) (emphasis added). Thus, "[u]nder the NPDES, it is unlawful for any person to discharge a pollutant without obtaining a permit and complying with its terms." *EPA v. Cal. ex rel. State Water Res. Control Bd.*, 426 U.S. 200, 205 (1976). "The discharge of pollutants without an NPDES permit, or in violation of a permit, is illegal." *WaterKeepers N. Cal. v. AG Indus. Mfg.*, 375 F.3d 913, 916 (9th Cir. 2004) (citing *Ecological Rights Found. v. Pacific Lumber Co.*, 230 F.3d 1141, 1145 (9th Cir. 2000)); *see also NRDC v. Cnty. of L.A.*, 725 F.3d 1194, 1198 (9th Cir. 2013) ("In nearly all cases, an NPDES permit is required before anyone may lawfully discharge a pollutant from a point source into the navigable waters of the United States.").

## III. FACTUAL AND PROCEDURAL BACKGROUND

### *A. Defendants Discharge Storm Water Containing Pollutants from a Point Source to Waters of the United States*

Defendants own and/or operate a dairy farm located at 3243 Spring Hill Road just outside Petaluma, California. (ECF No. 1 at ¶ 50.) As of at least September 20, 2024, the dairy confined at least 550 dairy cows, in addition to an unknown number of calves, for more than 45 days each year. (*Id.* at ¶ 51.) Cows are confined at the dairy in areas that do not sustain any crops, vegetation, forage growth, or post-harvest residues in the normal growing season. (*Id.* at ¶ 52.) Manure from animal confinement areas is flushed into retention basins located throughout the dairy. (*Id.* at ¶ 53.) Defendants stack and pile manure and litter in areas that are exposed to precipitation. (*Id.* at ¶ 54.) Animal waste containing pollutants discharges into downstream surface waters from the dairy via man-made ditches, a flushing system, and via other man-made devices such as pumps and hoses. (*Id.* at ¶ 55.) Surface water comes into contact with dairy cows at the dairy in the areas where they are confined and discharges to downstream surface waters. (*Id.* at ¶ 56.) These discharges contain numerous pollutants, including but not limited to liquid and solid animal wastes, fecal coliform and *E. coli* bacteria, numerous other pathogens, nitrogen, phosphorus, ammonia, pharmaceuticals,

pesticides, and suspended solids. (*Id.* at ¶¶ 56, 64)

Defendants do not have a permit that authorizes discharges of water contaminated with animal waste, and the pollutants associated with animal waste, to surface waters. (*Id.* at ¶¶ 57-58.)

## IV. STANDARD OF REVIEW

### *A. Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)*

In ruling on a motion to dismiss for a failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, this Court's "inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." *Lazy Y Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). To defeat a 12(b)(6) motion, Plaintiff's complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint is sufficient if it "contain[s] sufficient factual matter . . . to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In making its determination, the Court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Williston Basin Interstate Pipeline Co. v. An Exclusive Gas Storage Leasehold and Easement in the Cloverly Subterranean Geological Formation*, 524 F.3d 1090, 1096 (9th Cir. 2008) (internal citation omitted).

## V. ARGUMENT

### *A. Plaintiff's Notice Letter Meets the Requirements Set Forth in the Clean Water Act.*

Pursuant to EPA Regulations, the Clean Water Act requires that a notice

> shall include sufficient information to permit the recipient to identify the specific standard, limitation, or order alleged to have been violated, the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, the location of the alleged violation, the date or dates of such violation, and the full name, address, and telephone number of the person giving notice.

40 C.F.R. § 135.3(a). The Ninth Circuit has explained that,

> as long as a notice letter is reasonably specific as to the nature and time of the alleged violations, the plaintiff has fulfilled the notice requirement. The letter does not need to describe every detail of every violation; it need only provide enough information that the defendant can identify and correct the problem.

*San Francisco Baykeeper v. Tosco Corp.*, 309 F.3d 1153, 1155 (9th Cir. 2002). Defendants

complain that Plaintiff's Notice Letter lacks specificity because it "identifies no specific discharge, at no specific location, on no specific date, with no test results showing any concentration of any contaminant in the discharge." (ECF No. 38 at 10:17-18.) Defendants would also require Plaintiff's Notice Letter to include the "amount of water discharged and nature and quantity of chemicals, if any, in the discharge." (*Id.* at 10:15-16.) However, Defendants demand more than is required by the EPA and the Ninth Circuit, and Defendants provide no authority for their more demanding threshold.

According to EPA Regulations, a notice letter needs to include sufficient information to permit the recipient to identify (1) the specific standard alleged to have been violated; (2) the activity alleged to constitute a violation; (3) the person or persons responsible for the alleged violation; (4) the location of the alleged violation; (5) the date or dates of such violation; and, (6) the full name, address, and telephone number of the person giving notice. 40 C.F.R. § 135.3(a). Defendants take issue with Plaintiff's Notice with respect to elements (2) the activity, (4) the location, and (5) the dates of violation, but do not object to Plaintiff's Notice regarding the remaining elements. (ECF No. 38 at 17:14-16.)

As *Tosco* instructs, the Notice Letter need not contain the specificity demanded by Defendants. "The letter does not need to describe every detail of every violation; it need only provide enough information that the defendant can identify and correct the problem." *Tosco*, 309 F.3d at 1155. The Notice Letter does just that.

Section II.A of the Notice Letter addresses the second element identified above and details the activities alleged to constitute a violation – specifically, the discharges of animal waste containing pollutants from Defendants' dairy farm into downstream waters of the United States. (ECF No. 1-1 at 5.) Plaintiff's Notice Letter specifies the pollutants it alleges are being discharged by Defendants as "facility wastewater, process water, wash water, liquid and solid animal wastes, debris, sediment, chemicals, and deceased cows or parts thereof." (ECF No. 1-1 at 5-6.) It goes on to explain that "[a]nimal waste contains, among other pathogens and pollutants, fecal coliform and *E. coli* bacteria, nitrogen, phosphorus, suspended solids, pesticides, and pharmaceuticals." (*Id.*)

With respect to the location, the fourth element identified above, the Notice Letter explains

that the dairy qualifies as a Medium CAFO. (*Id.*) A CAFO is, by definition, a point source under the Clean Water Act. 33 U.S.C. § 1362(14). As a CAFO, the dairy itself is a point source, and the Notice Letter alleges multiple times that the discharges occur from the dairy. (ECF No. 1-1 at 5-6.) The Notice Letter provides greater detail, and explains that these discharges occur via man-made ditches, a flushing system, and via other man-made devices including pumps and hoses at the dairy. (*Id.*) The Notice Letter also describes how surface water comes into contact with the dairy cows in the areas where they are confined and then discharges to waters of the United States. (*Id.*) The Notice Letter alleges that the Dairy's manure storage ponds are undersized, and as a result, the dairy is unable to retain the required storm water runoff and thus discharges storm water polluted with animal waste to waters of the United States. (*Id.*) In short, the Notice Letter provides ample information for Defendants to "identify and correct the problem." *Tosco*, 309 F.3d at 1155.

With respect to the fifth element, the dates of the alleged violations, Defendants concede that the Notice Letter alleges specific dates on which the unlawful discharges occurred but then curiously argue that no dates were provided. (ECF No. 38 at 17:14-15, 17-22.) "But a notice letter need not allege the specific date of a violation when violations are ongoing." *Puget Soundkeeper All. v. Port of Tacoma*, Nos. 21-35881, 21-35899, 22-35061, 2024 U.S. App. LEXIS 14030, at *6 (9th Cir. June 10, 2024) citing *Natural Res. Def. Council v. Southwest Marine, Inc.*, 236 F.3d 985, 996 (9th Cir. 2000) (upholding a Clean Water Act notice letter even though the notice did not identify a specific date, or a specific location within the facility). Here, Plaintiff does allege specific dates of violation and also alleges that the violations are ongoing. (ECF No. 1 at ¶¶ 68, 74.)

Defendants' main concern regarding dates of violation appears to be that the Notice Letter did not include the more detailed information that Defendants would require, but that is not otherwise necessary under the relevant EPA regulations and case law interpreting them. (*Id.* at 17:21-23 ["The notice letter specifically identifies that violations occurred on February 1 and 10, 2024, without any identification of the specific location, quantity, chemical makeup, or concentration of the discharged water"].) The level of detail demanded by Defendants is simply not required by the Act, and Plaintiff met the notice requirements set forth in 40 C.F.R. § 135.3(a).

Defendants arguments about the inadequacy of the complaint are unavailing for the same

reasons. In particular, Defendants argue that the complaint fails to identify "any specific discharge on any specific day that allegedly constitutes a violation." (ECF No. 38 at 18: 1-2.) The complaint alleges adequate facts to establish that the dairy is a point source by meeting the definition of a Medium CAFO. (ECF No. 1 at ¶¶ 51-56.) As discussed above, as a point source, the dairy itself is the location of the discharge, and Plaintiff's complaint alleges just that. (*Id.* at ¶¶ 55, 56, 63, 67, and 74.) With respect to the dates of the alleged violations, the complaint incorporates by reference the Notice Letter, (*id.* at ¶ 68), and describes the conditions under which a discharge will occur (*id.* at ¶¶ 54-56, 65-69). *See also*, *Puget Soundkeeper All. v. Port of Tacoma,* Nos. 21-35881, 21-35899, 22-35061, 2024 U.S. App. LEXIS 14030, at *6 (9th Cir. June 10, 2024).

### B. *This Court Has Subject Matter Jurisdiction to Enforce Defendants' Discharges that Continue to Occur Without NPDES Permit Compliance*

The Clean Water Act grants federal courts subject matter jurisdiction over citizen suits. *See* 33 U.S.C. § 1365 ("The district courts shall have jurisdiction . . . to enforce an effluent standard or limitation . . . ."). The Court has jurisdiction where a plaintiff makes "a good faith allegation of continuous or intermittent violation." *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 64 (1987). In other words, the complaint must allege "a reasonable likelihood that a past polluter will continue to pollute in the future." *Id.* at 57. An ongoing violation is therefore one that is reasonably likely to recur on or after the date the complaint is filed. *Id.* Defendants argue that there are no ongoing violations of the Clean Water Act because they have allegedly implemented certain improvements to the Dairy both before and after the Notice Letter. (ECF No. 38 at 18: 26-19:1.) Defendants contend that the Regional Board's inspection is evidence of their compliance with the Act. (*Id.* at 19:2-3.)

In *Gwaltney*, the violations had stopped *before* the complaint was filed. *Gwaltney of Smithfield v. Chesapeake Bay Found.*, 484 U.S. 49, 53-54 (1987). Here, the evidence shows that the violations alleged in Plaintiff's complaint have not stopped at all, let alone before the complaint was filed. Defendants merely contend that improvements were made "before and after the notice letter." (ECF No. 38 at 18:27.) Notably, no dates are provided by Defendants for any of the improvements that they made, but the evidence they submit indicates that at least some of the improvements were

made *after* the complaint was filed. The inspection report attached to Mr. Lutz's declaration as Exhibit F indicates that the inspection occurred on November 1, 2024. Photographs from that inspection show that one of the main improvements Defendants say addressed the violations – the manure collection sump – was under construction at the time of the inspection. (ECF No. 38-2 at 47.) Plaintiff's complaint was filed approximately two months earlier, on September 20, 2024.

In addition to the lack of evidence showing that the improvements were made before the complaint was filed, Plaintiff's evidence, provided to Defendants in its initial disclosures, shows how these improvements have failed to prevent discharges at the facility. This evidence shows that not only are the violations ongoing, but that they are likely to recur because *they have in fact already recurred.* In a drone video, taken November 24, 2024, Plaintiff documented a breach in at least one of the berms that Defendants have claimed addressed the violations at issue. A still frame taken from that video and magnified to highlight the breached berm is provided below:



(Declaration of Matthew Lang at ¶ 4.)

The Regional Board inspection does not provide the blanket approval advertised by Defendants. As an initial matter, Defendants improperly ask the Court to take judicial notice of the contents of the inspection report. While the existence of the report can be judicially noticed, the contents contain facts and opinions that cannot be accurately and readily determined, as evidenced by the allegations set forth in Plaintiff's complaint, which must be construed liberally and in Plaintiff's favor. *Cal. Sportfishing Protection All. v. Shiloh Grp., LLC*, 268 F. Supp. 3d 1029, 1038-1039 (N.D. Cal. 2017) ("[W]hen courts take judicial notice of administrative records, only the existence of the documents themselves including the findings therein are judicially noticeable, and not the contents of the documents for the truth of the matters asserted"); *Los Angeles Waterkeeper v. SSA Terminals, LLC,* 702 F. Supp. 3d 903, 915 (C.D. Cal. 2023); *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001).

Notably, the Regional Board's inspection occurred on November 1, 2024, after the complaint was filed in September, and before the breach above was observed. The Regional Board's observations were of the dairy as it existed (during dry weather) after the complaint was filed, and cannot be used to prove compliance with the Clean Water Act *before* the complaint was filed in the absence of any evidence about when the improvements were installed. As discussed above, no such evidence is before the Court, and in fact, the Regional Board's photographs show that the improvements were still under construction as late as November 1, 2024.

At any rate, Plaintiff has not yet been afforded an opportunity to depose the inspector, or otherwise conduct any discovery to evaluate the credibility or investigate the findings set forth in the report. On this motion to dismiss, the standard is whether Plaintiff's complaint "contain[s] sufficient factual matter . . . to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In making its determination, the Court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Williston Basin Interstate Pipeline Co. v. An Exclusive Gas Storage Leasehold and Easement in the Cloverly Subterranean Geological Formation*, 524 F.3d 1090, 1096 (9th Cir. 2008) (internal citation

omitted).

Here, Plaintiff's complaint makes it clear that the violations it alleges are ongoing and continuous. (ECF No. 1 at ¶¶ 13, 24, 67, 68, 74.) Plaintiff has therefore adequately pleaded that Defendants are engaged in an ongoing violation. *See Puget Soundkeeper All. v. Port of Tacoma,* Nos. 21-35881, 21-35899, 22-35061, 2024 U.S. App. LEXIS 14030, at *6 (9th Cir. June 10, 2024).

*C. Defendants' Interpretation of Rule 26 Is Incorrect*

Defendants argue that Plaintiff's Rule 26 disclosures did not provide "any evidence establishing the existence of a Water Act violation." (ECF No. 38 at 19:23-24.) They contend that Plaintiff must prove the violations in order for subject matter jurisdiction to attach. (*Id.* at 19:23-20:4.) Defendants mainly rely on two cases to support their argument, *Goodman v. Staples* and *OEM-Tech v. Video Gaming Techs, Inc.* Neither case says what Defendants say it does.

*Goodman* dealt with the disclosure of expert witnesses, and was decided before the 2010 amendments to Rule 26 which required the expert reports. Thus, the Ninth Circuit affirmed the district court's ruling precluding the testimony of experts who were disclosed after the deadline for expert disclosures, and whose reports were not provided until four and a half months after that same deadline, except as to matters on rebuttal. In short, *Goodman* had nothing to do with initial disclosures.

*OEM-Tech* serves Defendants no better. In that case, plaintiff, appearing *pro se*, was found to have abused the discovery process for, among other things, demanding $50,000 in exchange for disclosing documents that were in his possession, and that defendants had sought in requests for production. *OEM-Tech v. Video Gaming Techs., Inc.*, No. C 10-04368 RS, 2013 U.S. Dist. LEXIS 201318, at *17 (N.D. Cal. Jan. 8, 2013). Again, *OEM-Tech* has nothing to do with initial disclosures, as the issue there was plaintiff's failure to supplement disclosures made pursuant to a Rule 34 request for production of documents. The defendants requested the documents, the plaintiff refused to provide them and then attempted to use them in opposition to a motion for summary judgment. The court recognized this obvious abuse of the discovery process and barred the plaintiff from being able to use those documents.

Defendants also cite to *Silvia v. EA Tech. Servs.*, No. 15-CV-04677-JSC, 2018 WL 1366622,

at *7 (N.D. Cal. Mar. 16, 2018) to support their argument. Again, this case does not help Defendants' arguments. In *Silvia*, plaintiff responded to a motion for summary judgment with a legal theory that was "not found in her complaint, initial disclosures, or interrogatory responses." *Id.* at *11. The court barred plaintiff from changing her legal theory to oppose the motion for summary judgment because it raised "an entirely different theory from the theory under which she has been prosecuting her prevailing wage claims." *Id.* at *12. That is not the case here.

In order for the Court to award the significant sanction that Defendants request, the Court must conclude that the failure to disclose is not substantially justified or is not harmless. Rule 37(c)(1). Here, unlike in any of the cases cited by Defendants, the discovery process is just beginning. (Declaration of William Carlon at ¶¶ 3-10.) Plaintiff has propounded its first set of written discovery, and a notice of deposition. (*Id.* at ¶ 6.) Defendants have sought and obtained numerous extensions to their responses and have yet to respond to *any* of Plaintiff's discovery. (*Id.* at ¶¶ 7-10.) Plaintiff has provided Defendants with documents, including videos and photographs, that support its allegations in the complaint, as required by Rule 26(a). (*Id.* at ¶ 11.) And Plaintiff will further supplement those disclosures as required by Rule 26(e), if it obtains new information not yet provided. (*Id.* at ¶ 12.) Defendants' radical reading of Rule 26 would completely undermine the discovery process.

Further, the Supreme Court in *Gwaltney* rejected the very same theory that Defendants put forth - that Plaintiff must prove its allegations before jurisdiction attaches under the Act. The Supreme Court held that "[t]he statute does not require that defendant 'be in violation' of the Act at the commencement of suit; rather, the statute requires that a defendant be '*alleged* to be in violation.'" *Gwaltney*, 484 U.S. at 64. As discussed above, here Plaintiff has made sufficient factual allegations that Defendants have violated the Act, and were violating the Act at the time the complaint was filed.

Defendants' argument also depends on the Court throwing out Plaintiff's evidence in the form of videos and photographs collected by drone. Defendants complain that the collection of this evidence violates California Civil Code § 1708.8 and California's trespass law, but do not provide any legal argument supporting this objection. Defendant Travis Moreda makes a vague allegation in

his declaration that his privacy and that of his family, his employees, and their families was invaded. Defendant does not explain how his, or anybody else's, privacy, was invaded, or provide any facts that support Defendants' allegation of Plaintiff violating section 1708.8 of the California Civil Code. Section 1708.8 prohibits the knowing entry into the airspace above the land of another person without permission *in order to* capture any type of visual image of the person engaging in a private, personal, or familial activity and the invasion occurs in a manner that is offensive to a reasonable person. Defendants do not allege that the drone footage was collected for the purpose of capturing Defendants' private activities. And in fact, it was *not* collected for that purpose - the drone video and photographs speak for themselves, and Mr. Lang states that he had no intention of capturing the private activities of anybody at the property. (Lang Declaration at ¶ 3.) The focus is clearly on the dairy and its operations, not the adjacent houses. (*Id.* at ¶ 2.) The drone was well above ground level and was not flown unreasonably close to Defendants' property or above any person or vehicle. Defendants objections should be overruled.

*D. Plaintiff Has Standing to Bring this Action*

An organization has standing to bring suit on behalf of its members when: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purposes; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977); *see also United Auto Workers v. Brock*, 477 U.S. 274, 290 (1986). Individual members would have standing in their own right under Article III if "they have suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual and imminent, not conjectural or hypothetical, . . . the injury is fairly traceable to the challenged action of the defendant; and . . . it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

The "injury in fact" requirement in environmental cases is satisfied if an individual adequately shows that she has an aesthetic or recreational interest in a particular place, or animal, or plant species and that that interest is impaired by a defendant's conduct. *See, e.g., Friends of the*

*Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 182 (2000); *Defenders of Wildlife*, 504 U.S. at 562-63; *Sierra Club v. Morton*, 405 U.S. 727, 734-35 (1972); *Oregon Natural Desert Ass'n v. Dombeck*, 172 F.3d 1092, 1094 (9th Cir. 1998).

Defendants challenge Plaintiff's standing to bring this action, though they devote only five lines of their motion to supporting this argument. Defendants challenge is a blatant circumvention of the normal discovery process, because Defendants simply allege, without having conducted any discovery of their own, that Plaintiff has not, and cannot, meet its burden at trial to show that it has standing to bring this case. As the Ninth Circuit has observed, a party cannot use a motion for summary judgment as a substitute for discovery. *See*, *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1105 (9th Cir. 2000). "A moving party may not require the nonmoving party to produce evidence supporting its claim or defense simply by saying that the nonmoving party has no such evidence." *Id.* citing *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). The Ninth Circuit goes on to say that "[i]n a typical case, in order to carry its initial burden of production by pointing to the absence of evidence to support the nonmoving party's claim or defense, the moving party will have made reasonable efforts, using the normal tools of discovery, to discover whether the nonmoving party has enough evidence to carry its burden of persuasion at trial." *Nissan Fire*, 210 F.3d at 1105.

Though Defendants have moved for summary judgment on the issue of standing, they have presented no evidence of their own to substantiate their argument. They cite to no facts whatsoever, and instead baldly assert that it is Plaintiff that has not met its burden, when in fact it is Defendants who have failed to carry their burden. The runs directly afoul of the holding in *Nissan Fire* because Defendants are using this premature motion for summary judgment to elicit evidence from Plaintiff in lieu of using the normal tools of discovery to do so. This improper approach should be rejected.

Since this is a motion to dismiss, the Court must accept as true the facts alleged in the complaint and Plaintiff has adequately pled facts sufficient to establish that it has standing at this early stage of the litigation. To wit, Plaintiff alleges that it is a non-profit organization with a mission to defending the environment against the effects of toxic chemicals, and to preserving and protecting the wildlife and natural resources of California waters, including the waters into which

Defendants discharge polluted storm water, liquid manure, and wastewater. (ECF No. 1 at ¶ 21.) The complaint alleges that Plaintiff's members use and enjoy the downstream waters into which Defendants discharge pollutants. (*Id.* at ¶ 22.) The Complaint alleges that Plaintiff's use and enjoyment of these waters is impaired by Defendants' violations of the Clean Water Act. (*Id.* at ¶¶ 22-24.) The complaint alleges that by enjoining Defendants from continuing to violate the Clean Water Act, their injuries will be redressed. (*Id.* at ¶ 25.)

Plaintiff submits the Declaration of Patricia Clary in support of this Opposition to Defendants' Motion to Dismiss ("Clary Declaration"). *See Am. Diabetes Ass'n v. United States Dep't of the Army*, 938 F.3d 1147, 1156 n.3 (9th Cir. 2019) ("Defendants contend the Association was required to identify in its complaint the members on which it relies [to establish standing] and failed to do so. However, the Association asserted representational standing in the FAC and provided declarations from [individual members] in response to defendants' Rule 12(b)(1) motion to dismiss. That is sufficient.").

Ms. Clary is a long-time member of Plaintiff. (Clary Declaration at ¶ 1.) The landscape at issue in this case – the Tomales Bay watershed – is very near and dear to Ms. Clary's heart. (*Id.* at ¶ 2.) Ms. Clary grew up in the area, and still has many ties – familial and otherwise – that bring her back on a regular basis. (*Id.* at ¶¶ 2-3.) Ms. Clary used to enjoy visiting Tomales Bay and she used to enjoy eating seafood sourced from there. (*Id.* at ¶¶ 4-9.) That is, until she learned of the pollution caused by discharges from concentrated animal feeding operations ("CAFO") such as Defendants. (*Id.*) Ms. Clary no longer enjoys seafood from Tomales Bay because of her concern for the pollution caused by CAFOs, including from Defendants' CAFO. (*Id.* at ¶ 8.) Ms. Clary no longer sails or has any recreational water contact with Tomales Bay for similar reasons. (*Id.*) This damage to Ms. Clary's recreational and aesthetic interests is exactly the type of "injury in fact" that has been recognized by courts to satisfy Article III standing requirements. Had Defendants done any discovery into this issue, they would have found this out in short order.

## VI. CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss should be denied. If however, the Court is inclined to grant any aspect of the Motion, Plaintiff requests that it be provided with an

opportunity to amend the Complaint to correct defects, if any, that are identified by the Court.

Dated: October 10, 2025											Respectfully Submitted,

LAW OFFICE OF WILLIAM CARLON

By:	/s/ William N. Carlon

William N. Carlon
Attorneys for Plaintiff
CALIFORNIANS FOR
ALTERNATIVES TO TOXICS