PETER HSIAO (Bar No. 119881)
phsiao@kslaw.com
ALEXANDER MOORE (Bar No. 340994)
amoore@kslaw.com
**KING & SPALDING LLP**
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071
Telephone:   +1 213 443 4355
Facsimile:   +1 213 443 4310

*Attorneys for Defendants*
TRAVIS MOREDA DAIRY and TRAVIS MOREDA

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIANS FOR ALTERNATIVES TO TOXICS,<br><br>Plaintiff,<br><br>vs.<br><br>TRAVIS MOREDA DAIRY and TRAVIS MOREDA,<br><br>Defendants. | Case No. 3:24-CV-06632-SI<br><br>**NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEROF**<br><br>Date:      January 9, 2026<br>Time:      10:00 a.m.<br>Courtroom 1, 17th Floor<br><br>*[Filed concurrently with Declaration of Alexander Moore and [Proposed] Order]*<br><br>Assigned to the Honorable Susan Illston<br><br>Complaint Filed: September 20, 2024<br>Trial Date: None set |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

PLEASE TAKE NOTICE that on January 9, 2026, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 1, 17th Floor, of this Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, before the Honorable Susan Illston, Defendants Travis Moreda Dairy and Travis Moreda ("Travis"), will and hereby do move the Court for an order granting judgment on the pleadings in favor of Travis.

This motion is made pursuant to Federal Rule of Civil Procedure 12(c) and is based on the grounds that Plaintiff failed to serve Travis with a meaningful notice of violation before filing this lawsuit under the mandatory requirements of the Clean Water Act at 33 U.S.C. § 1365(b)(1) and 40 C.F.R. § 135.

The motion is supported by this notice, the attached memorandum of points and authorities, the pleadings and documents on file in this case, the matters upon which judicial notice may be taken, and on such other written and oral arguments as may be presented to the Court on this matter.

Dated: December 3, 2025

KING & SPALDING LLP

By: _____
    Alexander Moore

*Attorneys for Defendants*
TRAVIS MOREDA DAIRY and TRAVIS MOREDA

# **TABLE OF CONTENTS**

**Page(s)**

I. INTRODUCTION ........................................................................................................... 1

II. STATEMENT OF FACTS ............................................................................................. 1

    A. Plaintiff's Notice of Violation Failed to Provide Meaningful Notice as Required by the Clean Water Act. ........................................................................ 1

    B. Plaintiff Files This Lawsuit Based Upon The Same Vague Allegations in its Notice of Violation. ............................................................................................ 3

    C. Plaintiff's Mandatory Rule 26 Disclosures Contain No Percipient Witnesses and No Admissible Evidence of Any Violation of the Clean Water Act that Might Support Plaintiff's Purported Notice. ................................. 3

III. LEGAL STANDARD ..................................................................................................... 4

IV. ARGUMENT ................................................................................................................... 5

    A. Plaintiff Failed to Comply with the Mandatory Notice of Violation Requirements of the Clean Water Act Before Filing this Lawsuit. ........................ 5

    B. Plaintiff's Complaint Likewise Establishes Plaintiff Lacks Evidence where It States No Plausible Claims. ............................................................................... 10

    C. Plaintiff's Failure to Produce Evidence of a Violation Under Rule 26 Establishes Plaintiff Had No Evidence of a Violation at the Time it Sent its Purported Notice of Violation. ............................................................................. 10

V. CONCLUSION .............................................................................................................. 11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................................. 5, 10

*Atwell v. KW Plastics Recycling Div.*,
  173 F. Supp. 2d 1213 (M.D. Ala. 2001) ....................................................................................... 7

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................................. 5, 10

*Cactus Corner, LLC v. U.S. Dep't of Ag.*,
  346 F. Supp. 2d 1075 (E.D. Cal. 2004) ....................................................................................... 4

*Cal. Sportfishing Protection Alliance v. City of West Sacramento*,
  905 F. Supp. 792 (E.D. Cal. 1995) ........................................................................................... 7, 8

*Ctr. For Biological Diversity v. Marina Point Dev. Co.*,
  566 F.3d 794 (9th Cir. 2009) ................................................................................................... 6, 9

*De La Torre v. CashCall, Inc.*,
  56 F. Supp. 3d 1073 (N.D. Cal. 2014) ......................................................................................... 3

*Diaz v. Rescare Inc.*,
  No. 4:20-CV-01333, 2020 WL 6270934 (N.D. Cal. Oct. 26, 2020) ........................................... 5

*Dworkin v. Hustler Magazine, Inc.*,
  867 F.2d 1188 (9th Cir.1989) ..................................................................................................... 4

*Goodman v. Staples The Office Superstore, LLC*,
  644 F.3d 817 (9th Cir. 2011) ..................................................................................................... 10

*Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*,
  484 U.S. 49 (1987) ....................................................................................................................... 6

*Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*,
  896 F.2d 1542 (9th Cir.1990) ..................................................................................................... 5

*Hallstrom v. Tillamook County*,
  493 U.S. 20 (1989) ....................................................................................................................... 6

*Karr v. Hefner*,
  475 F.3d 1192 (10th Cir. 2007) ........................................................................................... 6, 7, 9

*Long v. KZF Dev.*,
  935 F. Supp. 2d 889 (N.D. Ill. 2013) .......................................................................................... 9

*Nat'l Parks Conservation Ass'n v. Tenn. Valley Auth.*,
175 F. Supp. 2d 1071 ....................8

*OEM-Tech v. Video Gaming Techs., Inc.*,
No. C 10-04368 RS, 2013 WL 12173892 (N.D. Cal. Jan. 8, 2013) ....................10

*Sackett v. EPA*,
598 U.S. 651 (2023) ....................2, 8

*San Francisco Baykeeper v. Tosco Corp.*,
309 F.3d 1153 (9th Cir. 2002) ....................9

*Scheuer v. Rhodes*,
416 U.S. 232 (1974) ....................5

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001) ....................5

**Statutes**

33 U.S.C. § 1365(b)(1) ....................1, 5

**Rules**

Fed. R. Civ. P. 12(b)(6) ....................4, 5

Fed. R. Civ. P. 12(c) ....................1, 4

Fed. R. Civ. P. 12(d) ....................5

Fed. R. Civ. P. 201 ....................3, 4

**Other Authorities**

40 C.F.R. § 135.3 .................... *passim*

## I. INTRODUCTION

As discussed and permitted by the Court at its Initial Case Management Conference on November 14, 2025, Defendants (jointly referred to as "Travis") present the following issue for decision under Federal Rule of Civil Procedure 12(c):

Whether Plaintiff's Notice of Violation complied with the Clean Water Act requirements under 33 U.S.C. § 1365(b)(1) and 40 C.F.R. § 135.3(a), to provide factual contentions that have evidentiary support, with sufficient and meaningful information to permit Travis to identify the specific standard, limitation, or order alleged to have been violated, the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, the location of the alleged violation, and the date or dates of such violation, to provide Travis with a fair opportunity to address and correct the alleged violations to avoid this lawsuit.

## II. STATEMENT OF FACTS

### A. Plaintiff's Notice of Violation Failed to Provide Meaningful Notice as Required by the Clean Water Act.

The Clean Water Act requires a citizen plaintiff to provide a meaningful notice of violation at least 60 days prior to filing a lawsuit for violations of the Clean Water Act. 33 U.S.C. § 1365(b)(1). A notice letter must include, among other things, "sufficient information to permit the recipient to identify the specific standard, limitation, or order alleged to have been violated, the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, the location of the alleged violation, the date or dates of such violation, and the full name, address, and telephone number of the person giving notice." 40 C.F.R. § 135.3(a).

In July 2024, Plaintiff sent a purported Notice of Violations to Travis, vaguely alleging—without providing sufficient information as required by 40 C.F.R. § 135.3—that manure from TMD was entering waters of the United States in violation of the Clean Water Act. (Declaration of Alexander Moore ("Moore Decl.") Exh. A.)[1] The notice is so overbroad and overinclusive that it could have been copied *verbatim* from any unrelated case. It identified no observations, no specific

---

[1] Plaintiff's purported Notice of Violations is attached to the Complaint as Exhibit 1. A true and correct copy is reproduced here for the Court's ease of reference.

discharge at no specific location, and on no specific date, and contained no test results showing any concentration of any contaminant in any discharge. (*See id.*)

Rather than providing specificity, the notice letter alleges that discharges occur when the rain is significant—supported by not a single visual observation. The purported notice over-inclusively states:

1) Discharges allegedly occurred somewhere on Travis' dairy during "Significant Rain Events," for which Plaintiff provided a list of over 200 dates between July 2019 and July 2024 (*id.* at 6; Attachment 1);[2]

2) These alleged discharges may have occurred "via man-made ditches, a flushing system, and via other man-made devices" or "via swales, drainages, ditches, and/or other discrete conveyances" (*id.* at 5);

3) The possible pollutants allegedly involved may include "facility wastewater, process water, wash water, liquid and solid animal wastes, debris, sediment, chemicals, and deceased cows or parts thereof," as well as "fuel" (*id.* at 5–6);

4) The discharges allegedly include "fecal coliform and *E. coli* bacteria, nitrogen, phosphorus, suspended solids, pesticides, and pharmaceuticals", though no test results support this allegation (*id.* at 6); and

5) The discharges allegedly enter an "unnamed creek"[3] running through Travis' dairy, then a lagoon, which discharges water to Chileno Creek, then Walker Creek, and ultimately into Tomales Bay and the Pacific Ocean, each identified as "Impacted Waters" (*id.* at 4). Plaintiff's purported notice does not allege (through visual inspection or otherwise) that these "waters" are "relatively permanent, standing or continuously flowing" as required by the Clean Water Act as interpreted by *Sackett v. EPA*, 598 U.S. 651, 653 (2023).

---

[2] The notice letter specifically identifies that violations occurred on February 1 and 10, 2024, without any identification of what discharges occurred. (*Id.* at 6.) This portion of the letter may have been inadvertently copied and pasted from another notice letter against another dairy.

[3] Travis disputes a creek runs through his dairy and understands Plaintiff to refer to a manmade ditch.

2

### B. Plaintiff Files This Lawsuit Based Upon The Same Vague Allegations in its Notice of Violation.

Before receiving the purported notice letter, Travis had implemented continuous improvements at his dairy in compliance with the Clean Water Act. (*See* ECF No. 38 at 3.) Travis worked together with his experts to design and fully implement a list of improvements—based not on Plaintiff's purported notice letter, but on their own investigation. (*See id.* at 3–5.) These improvements are approved by the San Francisco Bay Regional Water Quality Control Board—the state agency delegated authority by the U.S. EPA to enforce the Clean Water Act. (*See id.* at 6; ECF No. 38-2, Exh. F.)[4]

As Travis identified and implemented his improvements, Plaintiff filed its lawsuit on September 20, 2024. Plaintiff attached its Notice of Violation to its complaint and copied those allegations in its pleading. Indeed, Plaintiff's complaint also merely alleges that manure is discharged into waters of the United States based upon "information and belief" and not evidence. (*See, e.g.*, Compl. ¶ 62 ("Plaintiff is informed and believes, and on that basis alleges, that Defendants repeatedly discharged, and continue to discharge, pollutants . . ."; ¶ 64 (reiterating the myriad substances and pollutants alleged to be in these discharges).) The complaint again identifies no specific discharge, at no specific location, on no specific date, and contained no test results showing any concentration of any contaminant in any discharge.

### C. Plaintiff's Mandatory Rule 26 Disclosures Contain No Percipient Witnesses and No Admissible Evidence of Any Violation of the Clean Water Act that Might Support Plaintiff's Purported Notice.

The parties exchanged their Rule 26 initial disclosures on April 4, 2025. These were filed with the Court as part of Travis' motion for summary judgment. (ECF No. 38-3, Exh. G.) Plaintiff produced no percipient evidence, identified no percipient witness with firsthand knowledge of a violation, shared no test results, and provided no other documentation to show injury in fact or a

---

[4] Travis requests the Court take judicial notice of the contents of the Water Board report. The facts therein can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned, making judicial notice appropriate. Fed. R. Civ. Proc. 201(b)(2); *see, e.g.*, *De La Torre v. CashCall, Inc.*, 56 F. Supp. 3d 1073, 1092 (N.D. Cal. 2014) *vacated and remanded on other grounds*, 904 F.3d 866 (9th Cir. 2018) (taking judicial notice of agency reports).

violation. Pointedly, Plaintiff provided no evidence supporting its allegations within the purported Notice of Violations. Plaintiff's only evidence was public agency documents that show no violation and its illegal drone footage taken after the purported Notice of Violations was sent.[5] (ECF No. 38 at 7; ECF No. 38-3; Exh. G; ECF No. 38-2 ¶ 11.) Plaintiff's only percipient witnesses regarding the Dairy are its drone operator and the custodians of records for the agencies. (*Id*.) Plaintiff also discloses its Executive Director as a witness likely to have discoverable information but failed to disclose the subjects of that information that Plaintiff may use to support its claims as required by Rule 26. (*Id*.)

Plaintiff's purported Notice of Violations is insufficient on its face. These additional judicially-noticeable facts show *why* Plaintiff was unable to provide a sufficient notice—Plaintiff simply never had any evidence to support a notice. Travis requests the Court review this portion of its files showing the *absence* of evidence required to be produced under Rule 26, and the preclusive effect of Rule 37(c)(2), or alternatively to take judicial notice under Federal Rule of Evidence 201 of the *absence* of this specific evidence in Plaintiff's Rule 26 disclosures. Fed R. Evid. 201 (permitting judicial notice of adjudicative facts "accurately and readily determined from sources whose accuracy cannot reasonably be questioned"); *see Cactus Corner, LLC v. U.S. Dep't of Ag.*, 346 F. Supp. 2d 1075, 1100 (E.D. Cal. 2004) ("documents are judicially noticeable . . . for the purpose of determining what statements have been made"); *see also* ECF No. 41 at 13–15 (no statement by Plaintiff of supporting evidence).

## III. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." The legal standard for Rule 12(c) is virtually identical to the standard for a motion to dismiss under Rule 12(b)(6). *See Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir.1989). For a motion

---

[5] Travis objects to this drone footage as illegally obtained by Plaintiff in violation of California Civil Code section 1708.8 and California's trespass law. The footage is inadmissible as evidence in this action. (*See* ECF No. 38-1 ¶ 9.) In lieu of Plaintiff's physical inspection request which cannot take place because of the state directive to limit farm access to essential personnel only, Travis is willing to meet and confer regarding this drone footage, which show no violations of the Clean Water Act.

under either rule, the question presented is not whether the plaintiff will prevail in the action, but whether the plaintiff is entitled to offer evidence in support of the claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir.1990). "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. Proc. 12(d).

While the Court must generally accept the allegations of the non-moving party as true for purposes of the motion, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Diaz v. Rescare Inc.*, No. 4:20-CV-01333, 2020 WL 6270934, at *1 (N.D. Cal. Oct. 26, 2020).

This tenet is also "inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Plaintiff must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 556 U.S. at 678. If the complaint fails to articulate a legally sufficient claim, the complaint should be dismissed, or judgment granted on the pleadings. *Id.* at 678–79.

IV. **ARGUMENT**

    A. **Plaintiff Failed to Comply with the Mandatory Notice of Violation Requirements of the Clean Water Act Before Filing this Lawsuit.**

The Clean Water Act requires a private plaintiff to provide a 60-day notice of its intention to file a citizen suit. 33 U.S.C. § 1365(b)(1); 40 C.F.R. § 135. The notice letter must include meaningful facts that provide, among other things, "sufficient information to permit the recipient to identify the specific standard, limitation, or order alleged to have been violated, the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, the

location of the alleged violation, the date or dates of such violation, and the full name, address, and telephone number of the person giving notice." 40 C.F.R. § 135.3(a).

The purpose of the notice letter is to allow the regulated party to implement improvements to address the alleged violations and thereby avoid the lawsuit, and this notice is a necessary prerequisite to filing a lawsuit. *See Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 59–60 (1987). The Court's judicial review depends upon whether a proper and meaningful notice is first given to tell the defendant how to avoid the lawsuit. "The notice is not just an annoying piece of paper intended as a stumbling block for people who want to sue; it is purposive in nature and the purpose is to accomplish corrections where needed without the necessity of a citizen action." *Ctr. For Biological Diversity v. Marina Point Dev. Co.*, 566 F.3d 794, 800 (9th Cir. 2009).

Lawsuits based upon notice letters that fail to sufficiently provide the requisite information are subject to dismissal. *See Hallstrom v. Tillamook County*, 493 U.S. 20, 31 (1989) (failure to comply with 60-day notice requires dismissal of RCRA citizen suit because such requirement is a "mandatory condition[] precedent to commencing suit"); *Marina Point*, 566 F.3d at 800 ("the giving of a 60–day notice is not simply a desideratum; it is a jurisdictional necessity").

The Ninth Circuit's decision in *Marina Point* underscores that "generalit[ies … are] not really compatible with the purposes of the notice requirements under the [Clean Water Act]." *Id.* at 803. There, the court considered purported notices alleging that a development project was placing "enormous amounts of fill" into a nearby lake and "piles of material were causing discharges below the ordinary high water mark of the lake [such that] the situation could be made worse should it rain." *Id*. These general statements were fatally insufficient because they provided no "true notice" of "what the [recipient] allegedly did wrong, and when." *Id.* at 801.

This is, in fact, the fatal flaw of Plaintiff's purported notice—it alleges generalities and is overinclusive by design, "aiming for breadth of coverage" and "substitut[ing] sweeping language for the particularity required by 40 C.F.R. § 135.3(a)." *Karr v. Hefner*, 475 F.3d 1192, 1201 (10th Cir. 2007). The issue is not just that the notice identified no specifics, but that it forced Travis "to play a guessing game" as to what, if anything, could be done to improve his dairy. *Marina Point*,

6

566 F.3d at 801; *see also Atwell v. KW Plastics Recycling Div.*, 173 F. Supp. 2d 1213, 1222 (M.D. Ala. 2001) (notice requires specificity so that receiving party may understand plaintiff's concern "without undertaking an extensive investigation"). Investigations have occurred, both by Travis' experts and by Water Board, and no further improvements were identified.

Plaintiff's overbroad and over-inclusive allegations—that discharges containing anything from fuel to pharmaceuticals to deceased cows occur whenever it rains via any number of "discrete conveyances"—could apply to *any* dairy, of *any* size, at *any* place, at *any* time. Plaintiff's notice of violation without specifics can apply to *all* dairies. That cannot be the law, that any family dairy can be forced to defend a lawsuit based upon the same cookie-cutter notice of violation, with no opportunity given to cure the alleged violation. But that is exactly what Plaintiff wants, to be rid of the notice of violation requirement and to file its lawsuits without a single observation by any witness. Permitting such imprecision renders it "entirely impractical for the notice provision to fulfill its purpose." *Cal. Sportfishing Protection Alliance v. City of West Sacramento*, 905 F. Supp. 792, 799 (E.D. Cal. 1995) (a notice is not "good enough" when it only "generally orients the agency or violator as to the type of violation").

Plaintiff argues its generalities were sufficient to fulfill the Clean Water Act's notice requirement. Plaintiff avoids Section 135.3(a) and its requirement that the notice state the location of violation by arguing that the address of the dairy itself suffices. (ECF No. 41 at 8–9.) To Plaintiff, it is "good enough" for it to manufacture an allegation that Travis operates a "CAFO" [Concentrated Animal Feeding Operation] and that a CAFO is a point source under the Clean Water Act. Plaintiff says no further detail is needed, no matter whether a dairy occupies one acre or 100,000 acres—this should be sufficient information to address any concerns without "undertaking an extensive investigation."

A similar argument was rejected in *Karr*, 475 F.3d at 1203, where the Tenth Circuit found that though a "well" is a "point source" under the Clean Water Act, it is not necessarily sufficient for purposes of notice to rely on such generalities. Plaintiff is similarly forced to rely upon generalities because it has no observations or witnesses to provide the necessary facts upon which to give meaningful notice of the location of the alleged violation so that it can be corrected.

Plaintiff further claims it supplied specificity in listing the alleged dates of violation: hundreds of days over the past five years. (ECF No. 41 at 9.) The courts have repeatedly rejected this attempt to avoid the requirement to provide the date of the violation. In *Cal. Sportfishing*, 905 F. Supp. at 798–99, the court held "[t]he previous five years on hundreds of occasions does not give sufficient notice of the date or dates on which the violations are alleged to have occurred." In *Nat'l Parks Conservation Ass'n v. Tenn. Valley Auth.*, 175 F. Supp. 2d 1071, 1077, the court held that a purported notice of violations "for at least the last five years" does not provide sufficient specificity to comply with the requirement for meaningful notice under the Clean Water Act. The same is true for Plaintiff's notice that blurs the date of violation to every day that there is a hard rain.

In addition, Plaintiff fails to provide meaningful notice of a violation under the Supreme Court's recent holding in *Sackett v. EPA*, 598 U.S. 651, 653 (2023). The Court held that Clean Water Act's jurisdiction is defined by its "geographical reach" to "only those relatively permanent, standing or continuously flowing bodies of water 'forming geographic[al] features' that are described in ordinary parlance as 'streams, oceans, rivers, and lakes.'" *Id*. at 653. The Court held that waters are not protected by the Clean Water Act unless they have a "continuous surface connection" to key lakes and rivers that affect interstate commerce. *Id*. at 678. Waters that have an underground connection to those lakes or rivers, or waters that are separated from the lakes or rivers by man-made barriers are not protected by the Clean Water Act. *Id*. Neither does the Clean Water Act extend to either ditches or erosional features with low volume or infrequent or short duration flow. *Id.* at 666–667.

These key facts are omitted from Plaintiff's notice, which therefore fails to identify the "specific standard, limitation, or order alleged to have been violated." 40 C.F.R. § 135.3(a). Plaintiff's notice only attempts to identity "Impacted Waters," none of which are located at Travis' dairy. The notice provides no meaningful facts to show a discharge from the dairy reached a ditch, and then reached any of those waters, much less by a "continuous surface connection." Plaintiff cannot provide these facts because it has no visual observation of the discharges to "waters of the United States within the meaning of the Clean Water Act." (Moore Decl. Exh. A at 4.) As with

the notice's other generalities, Plaintiff asks the Court to hold a conclusory statement—one that Plaintiff could apply to any water at any dairy—is sufficient to allow a citizen group's Clean Water Act claim to proceed.

Plaintiff's reading of the notice requirement eviscerates its purpose and permits it to sue any dairy at any time. Plaintiff provides no case law to support this expansive proposition. Instead, it has cited *San Francisco Baykeeper v. Tosco Corp.*, 309 F.3d 1153 (9th Cir. 2002)—a case predating *Marina Point*—for the holding that a notice letter "need not describe every detail of every violation; it need only provide enough information that the defendant can identify and correct the problem." (ECF No. 41 at 7.) Yet Plaintiff does not, and cannot, establish how its vague allegations allowed Travis to "identify" any problem. Instead, Travis utilized his experts who conducted their own investigation to identify potential improvements for the dairy. (ECF No. 38-2 ¶ 4.) Nor does Plaintiff consider that Travis has "correct[ed]" any potential issue through his improvements, which Plaintiff has never challenged as insufficient to prevent potential discharges. *Long v. KZF Dev.*, 935 F. Supp. 2d 889, 893 (N.D. Ill. 2013) (finding notice insufficient where defendant addressed all stated issues and plaintiffs "did not put Defendants on notice of any additional violation, or any violations that Defendants did not promptly address"). Given Plaintiff's purported notice describes no ongoing violations, should Plaintiff have additional concerns, the appropriate course of action would be to issue a new notice alleging any new violations. *Id.* at 896.

In sum, Plaintiff's purported notice letter is "hardly more helpful than a letter telling Defendants merely that they have violated the CWA." *Karr*, 475 F.3d at 1201. There is not one molecule of evidence in the notice letter that any discharge occurred or that any discharged water contained any specific level of any contaminant. (And as shown below, Plaintiff has no such evidence and none was provided in its Rule 26 disclosures.) This Court should give meaning to the Clean Water Act's notice requirement by giving no weight to Plaintiff's vague generalities. "[T]he requirements set forth in 40 C.F.R. § 135.3(a) are not to be looked upon as mere technicalities to be accepted with cold reserve and embraced with velleity. They are to be taken seriously as a means of carrying out important public policies. Our deviations from their precise language have been minor." *Marina Point*, 566 F.3d at 802.

Plaintiff's failure to comply with the Clean Water Act's notice requirements can be determined as a matter of law on the face of the notice letter alone. No further analysis is necessary. Nevertheless, this outcome is supported by Plaintiff's failure to provide evidence of its allegations after it sent its purported Notice of Violations.

### B. Plaintiff's Complaint Likewise Establishes Plaintiff Lacks Evidence where It States No Plausible Claims.

The complaint is equally void of allegations of any specific discharge on any specific day that allegedly constitutes a violation. *See Ashcroft*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555 (while legal conclusions can provide the framework of a complaint, they must be supported by factual allegations, and the court should determine whether they plausibly give rise to an entitlement to relief).

### C. Plaintiff's Failure to Produce Evidence of a Violation Under Rule 26 Establishes Plaintiff Had No Evidence of a Violation at the Time it Sent its Purported Notice of Violation.

Rule 26 requires a plaintiff to disclose each individual and all documents in its possession, custody, or control that it may use to support its claims. If a plaintiff fails to provide information or identify a witness under Rule 26, Rule 37(c)(1) provides the plaintiff is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. Rule 37(c)(1) is a "self-executing" and "automatic" sanction designed to provide a strong inducement for disclosure. *Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817, 827 (9th Cir. 2011); *see also OEM-Tech v. Video Gaming Techs., Inc.*, No. C 10-04368 RS, 2013 WL 12173892, *7 (N.D. Cal. Jan. 8, 2013) ("a court may, *sua sponte*, exclude evidence that a party failed to disclose under Rule[] 26(a)").

Here, Plaintiff failed to produce any evidence establishing the existence of a Clean Water Act violation. (*See* ECF No. 38-3, Exh. G.) Most notably for the purposes of this Motion, Plaintiff produced no evidence supporting the allegations of its purported Notice of Violations. Plaintiff did not provide evidence of a violation occurring on February 1 or 10, 2024, or any of the other two hundred dates listed in the notice letter. Plaintiff's mandatory notice letter, its complaint, and its

Rule 26 disclosures are consistent and aligned in their failures: none identify a single specific discharge, at a specific location, on a specific date. None show any testing was performed by Plaintiff, and accordingly, there are no test results showing any concentration of any contaminant in any discharge. Plaintiff also failed to disclose any witness with percipient knowledge of a violation.

If Plaintiff had any evidence of a violation of the Clean Water Act, it was required to produce such evidence in its Rule 26 disclosures. Plaintiff is now properly precluded under Rule 37(c)(1) from submitting evidence supporting the vague allegations of its purported Notice of Violations and Complaint.

## V. CONCLUSION

In sum, this is a lawsuit looking for a problem. For the foregoing reasons, Travis respectfully requests the Court grant judgment on the pleadings in favor of Travis.

Dated: December 3, 2025

**KING & SPALDING LLP**

By: _____
Alexander Moore

*Attorneys for Defendants*
TRAVIS MOREDA DAIRY and TRAVIS MOREDA