PETER HSIAO (Bar No. 119881)
phsiao@kslaw.com
ALEXANDER MOORE (Bar No. 340994)
amoore@kslaw.com
**KING & SPALDING LLP**
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071
Telephone:   +1 213 443 4355
Facsimile:   +1 213 443 4310

*Attorneys for Defendants*
TRAVIS MOREDA DAIRY and TRAVIS MOREDA

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIANS FOR ALTERNATIVES TO TOXICS,<br><br>Plaintiff,<br><br>vs.<br><br>TRAVIS MOREDA DAIRY and TRAVIS MOREDA,<br><br>Defendants. | Case No. 3:24-CV-06632-SI<br><br>**REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Date:     January 23, 2026<br>Time:    10:00 a.m.<br>Courtroom 1, 17th Floor<br><br>*[Filed concurrently with Declaration of Alexander Moore]*<br><br>Assigned to the Honorable Susan Illston<br><br>Complaint Filed: September 20, 2024<br>Trial Date: None set |

**TABLE OF CONTENTS**

**Page(s)**

I.    INTRODUCTION ........................................................................................................... 1

II.   **Plaintiff Specifically Provided Its Consent, and the Court Relied Upon Plaintiff's Consent to Approve the Filing of this Motion.** ............................................. 2

III.   **Plaintiff Does Not Dispute That Its Notice of Violation Does Not Have Evidentiary Support from Witnesses, Test Results, or Other Evidence.** ....................... 4

    A.    Plaintiff's Purported Notice Letter is Impermissibly Overinclusive Under Controlling Ninth Circuit Law. .............................................................................. 5

    B.    The Court Should Take Judicial Notice of Undisputed Facts Supporting this Motion. .............................................................................................................. 8

    C.    Plaintiff's Reliance on Future Discovery is Misplaced. .......................................... 9

    D.    Travis' Improvements Complied with the Clean Water Act. ............................... 12

IV.   CONCLUSION ............................................................................................................ 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cal. Sportfishing Protection All. v. Shiloh Grp., LLC*,
    268 F. Supp. 3d 1029 (N.D. Cal. 2017) .................................................................................. 9

*Center for Biological Diversity v. Marina Point Dev. Co.*,
    566 F.3d 794 (9th Cir. 2009) ......................................................................................... 2, 4, 5, 6

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
    509 U.S. 579 (1993) ............................................................................................................... 12

*In re Enovix Corp. Sec. Litig.*,
    2025 U.S. Dist. LEXIS 198865 (N.D. Cal. Oct. 7, 2025) ........................................................ 3

*Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*,
    484 U.S. 49 (1987) ................................................................................................................... 4

*Hallstrom v. Tillamook County*,
    493 U.S. 20 (1989) ................................................................................................................... 4

*Natural Res. Def. Council v. Southwest Marine, Inc.*,
    236 F.3d 985 (9th Cir. 2000) ................................................................................................... 6

*Puget Soundkeeper All. v. Port of Tacoma*,
    2024 U.S. App. LEXIS 14030 (9th Cir. June 10, 2024) .......................................................... 6

*San Francisco Baykeeper v. Tosco Corp.*,
    309 F.3d 1153 (9th Cir. 2002) .............................................................................................. 5, 6

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) ................................................................................................... 8

*WaterKeepers N. Cal. v. AG Indus. Mfg.*,
    F.3d 913 (9th Cir. 2004) .......................................................................................................... 6

**Statutes**

33 U.S.C. § 1365(b)(1) ................................................................................................................ 1, 4

**Other Authorities**

40 C.F.R. § 135.3 .................................................................................................................. *passim*

Federal Rule of Evidence 201 ........................................................................................................ 8

Federal Rule of Civil Procedure 26 ....................................................................................... *passim*

Federal Rule of Civil Procedure 37 ............................................................................................... 9

## I.     INTRODUCTION

Plaintiff's Opposition ("Opp.") to this motion for judgment on the pleadings ("Motion" or "Mot.") repeated states "[t]he facts have not changed" and "[t]he facts are the same" from its prior opposition to the motion for summary judgment. (Opp. at 5:4–5; 8:12). The moving defendants agree—the record before the Court, then and now, establishes the undisputed facts that when Plaintiff sent its purported Notice of Violations on July 11, 2024, it had no witnesses, no photographs, no test results, and no other evidentiary support of a violation. Therefore, it was impossible for Plaintiff to comply with the mandatory notice requirements of 33 U.S.C. § 1365(b)(1) and 40 C.F.R. § 135.3(a) ("Section 135.3"). Creative writing does not satisfy the threshold duty "to provide factual contentions *that have evidentiary support*, with sufficient and meaningful information to permit Travis to identify the specific standard, limitation, or order alleged to have been violated, the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, the location of the alleged violation, and the date or dates of such violation, to provide Travis with a fair opportunity to address and correct the alleged violations to avoid this lawsuit." (Mot. at 1:5–11 (emphasis added); *see also* 40 C.F.R. § 135.3(a).)

The proper time to assess the legal sufficiency of the purported notice is on the date it was sent. But even today, after Travis provided sworn substantive responses to Plaintiff's discovery requests identified in its attorney's declaration, including answering all interrogatories, requests for admissions, and requests for production of documents, and producing its Rule 26 disclosures and responsive documents, the facts are the same. Plaintiff superficially says the responses are "evasive" but cannot cite any specific response in its argument. The Court can further take judicial notice of the absence of admissible evidence in Plaintiff's Rule 26 disclosures (*e.g.,* there is no evidentiary foundation for its drone photo postdating the purported notice), and the fact that the Regional Water Quality Control Board has inspected and found no violations at Travis's dairy.

A small business, such as a small family-owned dairy, is entitled to rely upon the requirement of a meaningful notice of violation before it is forced to defend a federal court lawsuit and expend its resources on attorney fees and litigation costs. Otherwise, as here, a family can be driven out of business by meritless claims without evidence, which the Clean Water Act was

expressly written to prohibit. Plaintiff could use the same overbroad notice against any other facility to skip over providing meaningful notice and proceed directly to a fishing expedition in discovery. That is what is taking place here. The Clean Water Act was never intended to be used in this way.

Perhaps recognizing the problems with its case, Plaintiff relies upon the inadmissible hearsay statements of its attorney seeking to recant its consent to the filing of this motion and threatening sanctions against Travis. (*See* Opp. at 10–11.) The transcript of the Court's Case Management Conference where Plaintiff provided its unconditional consent, and the Court's Order relying upon that concession to permit this motion, are both omitted from Plaintiff's Opposition. Travis shows how those documents in the record contradict Plaintiff's reversal to address this issue in more detail in the next section.

## II. Plaintiff Specifically Provided Its Consent, and the Court Relied Upon Plaintiff's Consent to Approve the Filing of this Motion.

The Court held its initial Case Management Conference on November 14, 2025, after denying Travis' Motion to Dismiss, or in the Alternative, for Summary Judgment on November 4, 2025 (ECF No. 44). The transcript of the Court's November 14, 2025 Case Management Conference provides a record of these proceedings that is ignored by Plaintiff's Opposition. (Declaration of Alexander Moore ("Moore Decl.") Exh. A.) At the Conference, Travis presented the facts and discussed the holding of the Ninth Circuit's decision in *Center for Biological Diversity v. Marina Point Dev. Co.*, 566 F.3d 794 (9th Cir. 2009). (*Id.*, 3:19–4:16.) This case is directly on point regarding the problems in Plaintiff's purported notice of violations under the Clean Water Act—particularly that the purported notice fails to provide the evidence-driven specificity required by Section 135.3. (*Id.*)

The Court then asked Plaintiff's counsel, Mr. Verick, about next steps:

> MR. VERICK: Well, if they have that argument, they could make that argument on a motion to dismiss. They filed a motion to dismiss – I guess it would be called a motion for judgment on the pleadings, but –
>
> THE COURT: It should have been, but it wasn't. It was called motion to dismiss.

KING & SPALDING LLP
ATTORNEYS AT LAW
LOS ANGELES

2
REPLY BRIEF IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS   CASE NO. 3:24-CV-06632-SI

> MR. VERICK: Right. But you sort of treated it the same way. And they could file a motion for judgment on the pleadings, and we can brief that issue if that's what they want to do. The notice letter is the notice letter, and there wouldn't be any need for a discovery or anything else.
>
> THE COURT: All right. Is that what you want to do then, Mr. Moore? Should we just brief that up?
>
> MR. MOORE: Well, yes, your Honor. . . .
>
> MR. VERICK: . . . [I]f they want to file a motion to dismiss based on their alleged inadequacy of the notice letter, that can go on while discovery proceeds.
>
> **THE COURT: All right. Well then if that's what Plaintiff says, then you may file that motion, Mr. Moore**.

(*Id.*, 4:17–6:13 (emphasis added).)

Plaintiff placed no limitation or precondition on this motion, contrary to the arguments in its Opposition at page 11.

The Court then issued its Order following the Case Management Conference dated November 14, 2025, which is also omitted from the Opposition: "If Defendants are going to be filing a Motion to Dismiss it should be filed as soon as possible." (ECF No. 49.) The Court also did not limit or precondition the issues to be raised in this motion. The discussion of the *Marina Point* case was specifically raised at the Conference, when Plaintiff consented to its briefing, and the Court relied upon that consent in approving the filing of the Motion as soon as possible.

The Opposition does not address this procedural history, even though it was raised in the parties' meet and confer communications. (*See* Carlon Decl. Exh. 2.) Plaintiff instead solely relies upon the inadmissible hearsay statements of its attorney who did not attend the Case Management Conference. (*See* Opp. at 10–11.) At a minimum, Plaintiff waived its objections to this Motion. To the extent Plaintiff argues it is error for the Court to reconsider its ruling, Plaintiff invited that error. Finally, the Court's permission to file this Motion aligns with the Court's discretion to consider and reconsider its rulings, supported by Plaintiff's citation in its Opposition. (Opp. at 7 (quoting *In re Enovix Corp. Sec. Litig.*, 2025 U.S. Dist. LEXIS 198865 at *17–18 (N.D. Cal. Oct. 7, 2025)).) Here, the Court relied upon Plaintiff's consent and this Motion should be heard and determined on its merits.

### III. Plaintiff Does Not Dispute That Its Notice of Violation Does Not Have Evidentiary Support from Witnesses, Test Results, or Other Evidence.

The issue presented is whether Plaintiff's notice of violation complied with the Clean Water Act requirements under 33 U.S.C. § 1365(b)(1) and 40 C.F.R. § 135.3(a), to provide factual contentions that have evidentiary support, with sufficient and meaningful information to permit Travis to identify the specific standard, limitation, or order alleged to have been violated, the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, the location of the alleged violation, and the date or dates of such violation, to provide Travis with a fair opportunity to address and correct the alleged violations to avoid this lawsuit. The answer is no.

Plaintiff conflates the issue of the sufficiency of its purported notice letter with the notice pleading requirements for a complaint under the Federal Rules of Civil Procedure. (*See* Opp. at 6–7.) The applicable rules for the notice letter are governed by the Clean Water Act. Plaintiff misses this point, arguing instead that its lawsuit may proceed because it alleges an ongoing violation. While this is part of Plaintiff's obligation under the pleading standard of *Iqbal* and *Twombly*, as well as a mandatory prerequisite to a Clean Water Act lawsuit under *Gwaltney*, it is not the full picture. Section 135.3 requires *actual* notice regarding an alleged Clean Water Act violation prior to commencing suit. This actual notice allows a regulated party the opportunity to come into compliance before a lawsuit is filed. *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49 (1987); *Marina Point*, 566 F.3d at 800. The legislative history also confirms "an intent to strike a balance between encouraging citizen enforcement of environmental regulations and avoiding burdening the federal courts with excessive numbers of citizen suits." *Hallstrom v. Tillamook County,* 493 U.S. 20, 29 (1989).

Without meaningful, actual notice, there can be no lawsuit. And here, Plaintiff does not and cannot refute it had no witnesses nor documentation of a Clean Water Act violation when it sent its purported notice letter to Travis. Without evidence, Plaintiff's notice cannot sustain a lawsuit and permit Plaintiff expensive discovery in the hope of identifying a violation after the

fact.[1] To allow lawsuits to proceed without actual notice would impermissibly burden the courts (and businesses like Travis') with lawsuits based upon speculation, not evidence.

### A. Plaintiff's Purported Notice Letter is Impermissibly Overinclusive Under Controlling Ninth Circuit Law.

Plaintiff's Opposition further fails to confront the facts or contest the controlling law, including the facts and holding in the Ninth Circuit case *Marina Point* on this issue. On the facts, Plaintiff does not dispute it had no witnesses, no photographs, no test results, and no other evidentiary support for its alleged violations at the time it issued its purported notice.

On the law, Plaintiff cannot avoid the statutory requirements for meaningful actual notice, or the holding and reasoning of the cases interpreting those requirements. As shown in the Opening Brief, the Court in *Marina Point* addressed facts analogous to this case, finding notices generally alleging that material piles from a development project were causing discharges to a nearby lake were insufficient for failure to give "true notice." *Marina Point*, 566 F.3d at 801, 803.

Plaintiff's Opposition argues for a closer reading of *Marina Point,* to wit, to skip its holding and instead look at the cited history of prior Ninth Circuit caselaw. That is unavailing because as the Court held, "[w]e have sometimes been slightly forgiving to plaintiffs in this area, but even at our most lenient we have never abandoned the requirement that there be a true notice that tells a target precisely what it allegedly did wrong, and when. The target is not required to play a guessing game in that respect." *Marina Point*, 566 F.3d at 801. The Ninth Circuit's "deviations from [Section 135.3's] precise language have been minor" and permitted solely when a notice otherwise provides specifics allowing a defendant to identify and correct the exact alleged violation. *Id.* at 802.

Plaintiff cannot find any case allowing a lawsuit when the notice of violation is overly general and non-specific, as here. Plaintiff relies on *San Francisco Baykeeper v. Tosco Corp.*, 309 F.3d 1153 (9th Cir. 2002), for the proposition that it "need only provide enough information that

---

[1] Plaintiff incorrectly claims Travis "abandoned" his other arguments that the case should be dismissed because there is no ongoing violation and Plaintiff lacks standing to bring the lawsuit. He has not. This Motion focuses solely on the issues with Plaintiff's purported notice letter in accordance with the Court's instructions.

1  [Travis] can identify and correct the problem." (Opp. at 11, 13.) *Baykeeper* supports Travis' reading of Section 135.3, that the notice must have "reasonable specificity." *Baykeeper*, 309 F.3d at 1158; *Marina Point*, 566 F.3d at 801 (affirming *Baykeeper* because, despite Court's leniency, notice permitted defendants to readily ascertain the nature of the alleged violations "from the specifics given").

Plaintiff next argues its notice satisfies Section 135.3 because it states generalities—and not the specificity required to allow Travis to identify and correct any issues. Plaintiff alleges discharges during every "significant rain event" in the past five years without defining this phrase and relying solely on "data gathered from publicly available rain and weather data collected at stations located near [Travis'] Facility." (ECF No. 50-1, Exh. A at 6, Attachment 1.) Plaintiff states its notice provided Travis a list of over 200 dates it may have rained at his dairy. Yet it is undisputed that Plaintiff has no witness and no test result for any of those days, explaining why the face of the notice contains no details that would allow Travis to address the purported violation. There is no functional difference between alleging a dairy violated the Clean Water Act every day it rained over the past five years and preparing a list of dates it may have rained at the dairy for the past five years—neither provides any specificity allowing Travis to investigate Plaintiff's claims.

Plaintiff's other cited cases are distinguishable. *Natural Res. Def. Council v. Southwest Marine, Inc.* did not require a notice to include a date or location of violation where the only violation alleged was a failure to provide a pollution prevention plan. 236 F.3d 985, 996 (9th Cir. 2000). *Puget Soundkeeper All. v. Port of Tacoma* is limited to the proposition that a notice need not provide a specific date, but on the conditions that (a) only an ongoing violation is alleged and (b) other "sufficient information" is provided with specific facts to allow the recipient to "attempt to abate the violation." Nos. 21-35881, 21-35899, 22-35061, 2024 U.S. App. LEXIS 14030, at *6–7 (9th Cir. June 10, 2024). In *WaterKeepers N. Cal. v. AG Indus. Mfg.*, plaintiff provided a detailed list of daily rain accumulation over 0.1 inches *at* the facility. *Id.* at 375 F.3d 913, 917 (9th Cir. 2004). Here, Plaintiff did not include such detailed information. Plaintiff's "data" was also not provided in Plaintiff's Rule 26 initial disclosures, nor has Plaintiff shown how precipitation data collected at locations "near" Travis' dairy can be inferred as precipitation at the dairy.

Next, rather than identify any known contaminant released during a discharge, Plaintiff's broad notice listed every contaminant that could possibly be discharged from a dairy: "facility wastewater, process water, wash water, liquid and solid animal wastes, debris, sediment, chemicals, and deceased cows or parts thereof," and "fuel." (ECF No. 50-1, Exh. A at 5–6.) Plaintiff provides no test results to show that discharges of any of these contaminants occurred, and Plaintiff's list provides no information allowing Travis to determine the source of any contamination, be it from his dairy cows, equipment or machinery, storage areas, or entirely upstream of his property.

The purported notice thereafter makes no attempt to specifically identify the location from which discharges are occurring. Discharges may have occurred "via man-made ditches, a flushing system, and via other man-made devices" or "via swales, drainages, ditches, and/or other discrete conveyances." (*Id.* at 5.) Again, Plaintiff has listed every method through which a discharge could occur at any dairy. In its Opposition, Plaintiff takes the position that even this is more detail than necessary—it is sufficient that Plaintiff allege Travis' dairy is a confined animal feeding operation ("CAFO"), which is itself a "point source" under the Clean Water Act. (Opp. at 12.) But Section 135.3 does not incorporate or refer to the definition of a point source—it requires a notice to provide the "location" of an alleged violation. Reliance on Travis' entire dairy being the "location" of the alleged violations does not provide notice allowing Travis to identify and correct any issues, particularly where Travis' dairy does not meet the definition of a CAFO. (*See* Moore Decl. Exh. C at 1:20–3:8.) Under Plaintiff's argument, any dairy could be sued at the complete discretion of a citizen's group, regardless of whether the property is one acre or 100,000 acres, even though the citizen's group cannot identify any specific location where the alleged violation occurred on the property.

Plaintiff's allegation that Travis is required to obtain an NPDES permit is also incorrect as a matter of law. As Travis explained to Plaintiff, most recently in his written discovery responses, Travis does not discharge nor intend to discharge to surface water and therefore is not required to obtain coverage under an NPDES permit. Rather, per the requirements of the San Francisco Bay Regional Water Quality Control Board, Travis is covered by a general permit under the terms of Order No. R2-2016-0031. (*See, e.g.*, Moore Decl. Exh. C at 4:23–5:5.)

1    Each of Plaintiff's allegations avoid the specific requirements of Section 135.3 by broadly stating how a discharge could occur at any dairy. Plaintiff relies on this overbreadth—rather than any evidence—to support its lawsuit, notwithstanding that there can be no actual notice where Plaintiff itself has no knowledge of any actual violation. As shown by the lack of evidence in Plaintiff's Rule 26 initial disclosures, Plaintiff's purported notice letter is not supported by Plaintiff's observations or any other documentation. Plaintiff's sole alleged evidence of a violation—a still from drone footage taken months after Plaintiff's notice— was taken long after the notice of violation. It is inadmissible because it lacks foundation and is supported only by the statement of Plaintiff's attorney, who claims it shows a breach despite lacking the background, experience, and expertise to reach this conclusion. Finally, the image shows no discharge and cannot show the contents of any discharged water. Therefore, no violation can be shown by this photo.

Simply put, Plaintiff's purported notice provides no meaningful *actual* notice because, at the time the notice was sent, Plaintiff had no knowledge or evidence of any discharge of any contaminant at any time coming from Travis' dairy. The purported notice uses generalities applicable to any dairy to allow Plaintiff to bring a lawsuit. Given the breadth of Plaintiff's allegations, the only way Travis could have prevented a lawsuit would have been to shut down his dairy completely. Unfortunately, that may be the intent of this lawsuit.

### B. The Court Should Take Judicial Notice of Undisputed Facts Supporting this Motion.

Plaintiff also cannot controvert the substantive facts showing the defects in its purported Notice of Violations, or the reasons the Court should take judicial notice of these facts. (Mot. at 2:3–3:18.) As the Opening Brief demonstrated, for a motion for judgment on the pleadings, a court need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Federal Rule of Evidence 201 permits this Court to take judicial notice of any fact not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Plaintiff does not contest this rule of law.

Here, the Court may take judicial notice that Plaintiff, in its Opposition and prior briefing, does not dispute the fact that its Rule 26 initial disclosures identify no percipient witnesses, test results, or any other admissible evidence supporting the allegations in its purported Notice of Violations.[2] Rule 26 required Plaintiff to identify its witnesses and produce the documents it may use to support its claims.[3] Plaintiff's notice letter claimed over 200 past violations of the Clean Water Act—if Plaintiff had any evidence of these claims, it was required to disclose this evidence with its initial disclosures. Plaintiff did not because it has no evidence. In its Opposition, Plaintiff does not challenge the Court's authority to take judicial notice of Plaintiff's lack of evidence in its Rule 26 disclosures.

The Court may also take judicial notice of the Regional Water Board inspection and report finding no violations of the Clean Water Act at Travis' dairy. (Mot. at 3.) The Opposition argues judicial notice of the inspection report is inappropriate. But its own cite case law holds the opposite. (Opp. at 18 (quoting *Cal. Sportfishing Protection All. v. Shiloh Grp., LLC*, 268 F. Supp. 3d 1029, 1038–1039 (N.D. Cal. 2017) ("[W]hen courts take judicial notice of administrative records, only the existence of the documents themselves *including the findings therein* are judicially noticeable") (emphasis added)).)

### C. Plaintiff's Reliance on Future Discovery is Misplaced.

The proper time to assess the sufficiency of the Notice of Violation is at the time it was issued by Plaintiff. However, for completeness, the record shows that from the time the Notice was issued to today, Plaintiff still cannot support its overbroad allegations with any witness, test results, or other admissible evidence. No amount of discovery can cure Plaintiff's notice defect—it could not provide actual notice when it had no evidence or knowledge of any violation at Travis' dairy

---

[2] Plaintiff relies upon its citations to the allegations of its Complaint, presumably because these allegations are to be taken as true if the inquiry were limited to whether the Complaint is sufficiently pleaded to state a cause of action. However, that is not the inquiry here: these allegations are not to be taken as true when inquiring about the sufficiency of the notice letter, sent months before the Complaint was filed.

[3] Failure to disclose known witnesses or documents in one's possession may result in exclusion under Rule 37(c)(1). Plaintiff contends that Travis' case law on this point is inapplicable (Opp. at 19:5–27), but these cases stand for the undisputed propositions that Rule 37 is self-executing and a court may exclude evidence *sua sponte*.

when it sent its letter. Plaintiff claimed, in July 2024, that Travis had violated the Clean Water Act over 200 times, and used these past violations to support a claim that Travis in engaged in ongoing violations. It made these claims with zero evidence and thus afforded Travis no notice nor opportunity to correct any issues.

Travis has fully cooperated with Plaintiff's discovery requests. He heard the Court directions and complied by providing timely, comprehensive, and complete answers to Plaintiff's written discovery requests. Plaintiff alleges Travis has provided "evasive and nonresponsive" answers in discovery. (Opp. at 20, n. 2.) But Plaintiff does not identify a single evasive response. Travis' responses are clear and responsive. *See, e.g.*, Moore Decl. Exh. B at 3:1–4:14:

> INTERROGATORY NO. 5: IDENTIFY all incidents since July 11, 2019, where any retention basin, lagoon, or other manure or wastewater storage structure at the FACILITY exceeded its storage capacity or DISCHARGED material to surface waters, including the date, duration, and estimated volume of any such overflow or DISCHARGE.
>
> RESPONSE TO INTERROGATORY NO. 5: [Objections Omitted] Subject to and without waiving the foregoing objections, Travis responds as follows: Travis does not discharge to jurisdictional waters. Water from his dairy is captured by his existing water management and retention systems and applied to land in accordance with his Nutrient Management Plan.

*See also id.*, Exh. C at 4:23–5:5:

> REQUEST NO. 5: Admit that, during the RELEVANT TIME PERIOD, YOU did not possess coverage under any individual NPDES permit for the FACILITY.
>
> RESPONSE TO REQUEST FOR ADMISSION NO. 5: Subject to and without waiving the foregoing objections, Travis responds as follows: Admitted. Travis did not need an individual NPDES permit for his dairy. Per the requirements of the San Francisco Bay Regional Water Quality Control Board, Travis is covered by the appropriate permit under the terms of Order No. R2-2016-0031. Travis does not discharge nor intend to discharge to a jurisdictional water and therefore is not required to obtain coverage under an NPDES permit.

*See also id.*, Exh. D at 4:16–7:2:

> REQUEST NO. 6: All DOCUMENTS that IDENTIFY any actual or potential DISCHARGE of manure, wastewater, STORM WATER, or other POLLUTANTS from the FACILITY, including those occurring on or around February 1, 2024, February 10, 2024, or any SIGNIFICANT RAIN EVENT

as listed in Exhibit 1 to the Complaint.

RESPONSE TO REQUEST FOR PRODUCTION NO. 6: [Objections omitted] Subject to and without waiving the foregoing objections, Travis responds as follows: Travis has performed a reasonable inquiry and diligent search and has identified no documents responsive to this Request. Discovery is ongoing and Travis reserves the right to amend or supplement this response.

In addition, Travis offered to appear for his deposition on four different days, and all were refused by Plaintiff. Travis first offered December 10, 2025—a date initially suggested by Plaintiff—which Plaintiff refused on the pretext that Travis had not produced enough documents. (*Id.* ¶ 4, Exh. F.) Travis then offered January 5, 6, and 9, 2026, to which Plaintiff never responded. (*Id.* ¶ 5, Exh. F.)

Finally, Travis attempted to meet and confer with Plaintiff regarding an inspection of his dairy, explaining "Travis is not permitted to allow Plaintiff to enter his property for a physical inspection because of a directive from the lead California agency to quarantine his dairy from visitors to protect agriculture and public health. The California Department of Food and Agriculture ("CDFA") has issued this order based upon an outbreak of dangerous avian flu at farms and dairies in Sonoma County, where Travis' dairy is located." (*Id.*, Exh. E at 1:14–18; *see also id.* ¶ 6, Exh. F.) Meet and confer efforts did not result in a safe solution to this directive.

As a practical matter, further discovery cannot save a defective notice of violation. As Plaintiff has stated: "The legal issues are the same. The facts are the same." (Opp. at 8:12.) The alternative—what Plaintiff requests of the Court—is to permit this case to move forward through expensive discovery, with the first opportunity to meaningfully challenge Plaintiff's notice occurring through a summary judgment motion. This would remove any meaning from Section 135.3. Under Plaintiff's interpretation, a citizen's group could issue boilerplate notices to every dairy in California today, alleging any number of contaminants are discharged any day it rains via any number of conveyances or by the dairies' very nature of being a CAFO. In 60 days, this group could file suit against any dairy that had not settled, and so long as the group rehashed the same allegations in its complaints, the lawsuits would be immunized from dismissal at the pleading stage regardless of the group's lack of evidence *or any knowledge of the dairies beyond their addresses and owners*. Only after extensive discovery could any dairy hope to win judgment on the ground

that the group's notice was not founded in fact, and by then, many dairies' resources would be depleted. The Court's gatekeeping function, paired with the Section 135.3 notice requirement, is meant to prevent such cases. Allowing Clean Water Act cases to proceed when it is evident notice was predicated on unsupported generalities runs contrary to Section 135.3 regardless of the stage of litigation.

**D.     Travis' Improvements Complied with the Clean Water Act.**

The legislative intent of the notice requirement is undisputed. A defendant must be given a fair opportunity to cure the alleged violation to avoid a lawsuit. That is especially true for a small family-owned dairy. Even with no meaningful actual notice, Travis spent all of his resources to implement site improvements with the assistance of expert consultants and satisfied the Regional Water Board regarding his compliance with law. Plaintiff's Rule 26 disclosures, its response to the record on summary judgment, and its Opposition, do not dispute the effectiveness of the improvements and the cure of any alleged violations. (*See* ECF No. 38 at 12:23–13:2, ECF No. 43 at 4:3–5:20; *see generally* Opp.) Travis' only option was to do nothing and get sued. Plaintiff sued anyway, compounding litigation expense on top of the compliance costs.

**IV.     CONCLUSION**

In several contexts, a statute or rule establishes the trial judge's crucial gatekeeper function to screen out frivolous or unsupported claims and allow only cases that satisfy a threshold requirement to proceed. *See, e.g.*, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). Under the Clean Water Act, the Court should exercise its gatekeeper role where the record establishes the absence of meaningful actual notice, with evidentiary support, of any statutory violation. For the foregoing reasons, Travis respectfully requests the Court grant this motion for judgment on the pleadings.

Dated: January 9, 2026

**KING & SPALDING LLP**

By: _____
     Alexander Moore

*Attorneys for Defendants*
TRAVIS MOREDA DAIRY and TRAVIS MOREDA