WILLIAM VERICK (State Bar No. 140972)
Klamath Environmental Law Center
P.O. Box 1128
Arcata, CA 95518
(707) 630-5061
wverick@igc.org

DAVID WILLIAMS (State Bar No. 144479)
Law Offices of David Williams
1839 Ygnacio Valley Road, Suite 351
Walnut Creek, CA 94598
(510) 847-2356
dhwill7@gmail.com

BRIAN ACREE (State Bar No. 202505)
Law Office of Brian Acree
95 3rd Street, Second Floor
San Francisco, CA 94103-3103
(510) 517-5196
brian@brianacree.com

WILLIAM N. CARLON (State Bar No. 305739)
Law Office of William Carlon
437 Post Street
Napa, CA 94559
(530) 514-4115
william@carlonlaw.com

Attorneys for Plaintiff
CALIFORNIANS FOR ALTERNATIVES TO TOXICS

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIANS FOR ALTERNATIVES TO TOXICS,<br><br>          Plaintiff,<br>     vs.<br><br>TRAVIS MOREDA DAIRY AND TRAVIS MOREDA,<br><br>          Defendants. | Case No. 3:24-cv-06632-SI<br><br>**JOINT STATEMENT REGARDING DISCOVERY DISPUTE** |

**Plaintiff's Statement:**

 *A. Description of the Parties' Meet and Confer Efforts*

 On December 3, 2025, Plaintiff sent Defendants a letter detailing the specific concerns it had with Defendants' responses to, among other things, Plaintiff's Request for Wet Weather Inspection of Land and Property. The letter also requested that the parties meet and confer in compliance with the Court's standing order on this issue. Defendants informed Plaintiff that Mr. Moore was leaving for his honeymoon on December 4th, and would not return until December 15th. The parties met via videoconference on December 18, 2025 to discuss the issues set forth in the December 3rd letter. Though the parties made some progress in resolving parts of the dispute, it became quickly evident during the video conference that the parties were at an impasse with respect to Defendants' refusal to allow Plaintiff to conduct an inspection pursuant to Federal Rule of Civil Procedure 34 of Defendants' property. Counsel exchanged emails further discussing the issue, but the parties now need the Court's intervention to settle this dispute.

 *B. Defendants' Response to Plaintiff's Wet Weather Inspection of Land and Property Is Untimely, and Therefore Defendants' Objections Are Waived*

 A true and correct copy of the inspection request is attached hereto as **Exhibit 1**. A true and correct copy of Defendants' response to the inspection request is attached hereto as **Exhibit 2**.

 The Wet Weather Inspection Request was served on Defendants on May 27, 2025, and the deadline to respond, after several extensions were granted, was November 21, 2025. Defendants seemed to have objections prepared as early as November 14, 2025, when they improperly raised this discovery dispute at the initial case management conference, but they failed to comply with Rule 34's requirement to respond in writing. Defendants contend that they were granted an extension to respond to the request by virtue of the Court's instruction to meet and confer on how to accomplish the requested inspection. This overstates the Court's direction, which did not extend the deadline to respond to the request, but simply required the parties to try and work together to reach an agreement about how an inspection could safely proceed. There is no good cause for Defendants' failure to provide timely responses – they had the requests for nearly six months, and they were clearly prepared to make arguments about their objections at the initial case management conference. They should have

1  provided those in a formal written response as the rules require. *See e.g., EEOC v. Kovacevich "5" Farms*, 2007 U.S. Dist. LEXIS 43672, 2007 WL 1599772 ("Failure to respond to a Rule 34 request within the time permitted waives all objections . . . absent an extension of time to respond or a showing of good cause").

    C.  *Defendants' Refusal to Work with Plaintiff to Develop a Safe Protocol for a Site Inspection Is Not Reasonable.*

The Court directed Defendants to allow the inspection of the property as requested by Plaintiff. (ECF No. 56-2 at 7:19-21.) Defendants have refused to comply with that direction, even though Plaintiff has offered to work with Defendants to develop a protocol for a site inspection that addresses Defendants' biosecurity concerns. Plaintiff has proposed using new Tyvek suits, (see ECF No. 56-2 at 9:21-10:5), but Defendants have simply refused to engage in any meaningful discussion about ways to address their stated concerns. Plaintiff's proposal is consistent with guidance from CDFA for dairy regulatory inspections visiting dairy farms.[1] This guidance recognizes that "[r]egulatory inspections may take place at any dairy that is under quarantine for an animal disease or not." (*Id.*) An inspection pursuant to Rule 34 is analogous to a regulatory inspection. However, Defendants assert that they are "not permitted to allow Plaintiff to enter [the] property" due to "*an order* from the lead California agency to quarantine [the] dairy from visitors" (emphasis added). (**Exhibit 2** at 1:14-16.) But the referenced CDFA documents are not orders. (*Id.*, Exhs. A-C.) They include: An industry alert regarding HPAI detections; a press release regarding a backyard flock detection; and, a general informational update on statewide monitoring. (*Id.*) None of these documents impose a legally binding quarantine on Defendants' facility. None prohibit inspections or prohibit visitors when proper precautions are taken. And none state that a dairy under surveillance or in a county with HPAI detections must bar all third-party access. Given that the Court has already directed Defendants to allow the inspection, it is unreasonable for them to refuse to work with Plaintiff to establish a reasonable protocol to conduct the inspection. Plaintiff is willing to follow the CDFA's biosecurity

---

[1] See https://www.google.com/url?client=internal-element-cse&cx=00177922524537274783:vw__adoufr8&q=https://www.cdfa.ca.gov/AHFSS/Animal_Health/docs/biosecurity_guidance_for_dairy_regulatory_inspections_visiting_a_dairy_farm.pdf&sa=U

1   measures which include following parking rules, wearing respiratory protection, wearing disposable
2   gloves, wearing disposable booties, wearing a Tyvek suit, and following personal protection
3   equipment disposal procedures. (See fn. 1 *supra*.)

4       D. *An In-person Inspection Is Required*

5           Defendants contend below that Plaintiff has not explained why an in-person inspection is
6   required, or why it cannot be replaced with a drone flight. In fact, Plaintiff has explained in multiple
7   forums why an in-person inspection is required. In its December 3rd letter, Plaintiff explained that
8   "drones cannot observe subsurface flow paths; cannot determine whether discharges occur during
9   active storms; cannot sample stormwater; and, therefore, in this instance, cannot replace an in-person
10  inspection." When this issue was raised in the initial case management conference, the Court agreed
11  that the in-person inspection was meaningfully different than a drone flight, for example, and counsel
12  for Defendants acknowledged that they understood. (See ECF No. 56-2 at 8:5-13.)

13  **Defendants' Statement:**

14      A. *Travis Extensively Met and Conferred Regarding an Inspection of His Dairy's Improvements*

15          Plaintiff inaccurately describes the parties' meet and confer efforts. Travis timely responded
16  to Plaintiff's inspection request shortly after this lawsuit was filed, in early December 2024, to avoid
17  unnecessary costs in litigation. Governor Newsom then declared a state of emergency on December
18  18, 2024 to address a growing number of dairy herds infected with avian flu across the State. A year
19  prior, in December 2023, the Sonoma County Board of Supervisors declared a local emergency due
20  to an outbreak near Travis's dairy that required more than one million birds to be euthanized. Travis
21  informed Plaintiff of his concerns on December 30, 2024 and understood the inspection was off.

22          Travis timely responded to Plaintiff's request for inspection in this case in November 2025.
23  Both in the parties' initial Case Management Statement, and on November 14, 2025, during the
24  Court's initial Case Management Conference, Travis presented the directives of the California
25  Department of Food and Agriculture (the "State" or "CDFA") and raised the threshold issue
26  preventing a safe on-site inspection of his dairy—the identification of another bird flu epidemic in
27  Sonoma County affecting the dairy breeds on Travis' property. (ECF Nos. 46 & 48.)

28          The Court instructed the parties to further meet and confer on how to accommodate Plaintiff's

request with the need to follow the State's biosecurity precautions, including that farm access be limited "to essential personnel only." (ECF No. 48; Exh. 2, Exh. A.) To satisfy this requirement, Travis served a response to Plaintiff's request for inspection, suggesting the parties consider alternatives due to the significant risk of an onsite inspection. (Exh. 2.)

Thereafter, on December 18, 2025, the parties met and conferred via videoconference. Plaintiff never confronted the question presented: should (or can) a court overrule a State direction supported by independent experts to require discovery disproportionate to the needs of the case? "[T]he degree to which the proposed inspection will aid in the search for truth must be balanced against the burdens and dangers created by the inspection." *Desire, LLC v. Exist, Inc.*, 2013 WL 12133640, at *5 (C.D. Cal. Dec. 3, 2013).

Plaintiff states an in-person inspection is needed to obtain test samples and "determine whether discharges occur during active storms." That is the point of the pending motion for judgment on the pleadings, where Plaintiff admits it has no evidence for its Notice of Violations. Travis provided photos and offered more photos or an approved drone flight to permit confirmation of Travis' improvements (which were never challenged by Plaintiff). Plaintiff refused to consider alternatives. Its refusal to participate in reasonable discovery is a self-inflicted limit and shows its lack of evidence.

B. *Plaintiff Does Not Address the State's Direction to Prevent the Transmission of this Disease*

The core problem is that, per the State's experts, non-essential personnel are not permitted to access the dairy. The 2024 State of Emergency Proclamation remains in effect[2] and requires all residents **"to obey the direction of emergency officials [including the CDFA] with regard to this emergency**."[3] The reasoning is clear: Avian flu is a highly pathogenic virus that peaks during winter months and can cripple exposed dairies. According to a bipartisan Senate coalition, over 1,000 dairy herds across the county have been impacted by avian flu since 2022.[4] The Centers for Disease Control and Prevention reports infection spreads easily—by touching contaminated surfaces or animal by-

---

[2] *See* https://www.caloes.ca.gov/office-of-the-director/policy-administration/legal-affairs/emergency-proclamations/.
[3] https://www.caloes.ca.gov/wp-content/uploads/Legal-Affairs/Documents/Proclamations/12.18.2024__SOE_Bird_Flu_GGN_Signed.02.pdf. (Emphasis added.)
[4] https://www.agriculture.senate.gov/newsroom/dem/press/release/klobuchar-rounds-colleagues-urge-usda-to-prioritize-hpai-poultry-vaccine-strategy.

1   products (including manure and milk) or via dust particles in the air.[5]  Once a dairy is infected, bovine-
2   to-bovine spread occurs, impacting milk production and requiring culling.[6]  The virus can spread to
3   neighboring facilities, threatening small communities reliant on agriculture.[7]

4         This concern is pronounced for Travis—his neighbor, Reinhardt Duck Farm, was exposed to
5   avian flu this winter and had to euthanize its entire flock of 57,000 birds.  If Travis were required to
6   cull his herd, the damage would be incalculable: Travis owns purebred Holsteins, a coveted genetic
7   herd descending from generations of his family's cattle.  Plaintiff asserts Travis is not subject to a
8   "legally binding quarantine," ignoring the State's determination of the devastating impact avian flu
9   could have on Travis' herd and business and its direction to limit on-site personnel.  The Court should
10  defer to the State when Travis' dairy and the livelihood of his neighbors is at stake.

11        Plaintiff contends it can accommodate the State's direction by wearing Tyvek suits before
12  entering the dairy.  But Plaintiff's counsel has no training, no certifications, and no experience in
13  biohazard inspections.  Tyvek suits may block infection of counsel but do nothing to address the risk
14  of transmission to or from the dairy from untrained persons, their equipment, or their vehicles.  Unlike
15  Plaintiff, State inspectors are professionally trained in biosecurity practices and the use of necessary
16  disinfectants and pesticides and essential to protecting public health.  Plaintiff cites general guidance,
17  not the detailed requirements utilized by inspectors to prevent transmission of biohazards between
18  locations.  The State's acceptance of conditional regulatory inspections meant to protect public health
19  does not allow untrained, uncertified, non-essential personnel dairy access.  Plaintiff has not sought
20  or obtained the State's permission for its unapproved entry to the dairy.[8]

21        The balance of equities requires the parties consider other inspection methods.  Travis remains
22  willing to meet and confer on an approved drone flight or live video walkthrough to inspect Travis'
23  improvements.  The inspection must be safe so Travis' livelihood is not exposed to hazardous risks.

---

[5] https://www.cdc.gov/bird-flu/virus-transmission/index.html#:~:text=People%20rarely%20get%20bird%20flu,United%20States%20at%20this%20time.
[6] https://www.avma.org/resources-tools/animal-health-and-welfare/animal-health/avian-influenza/avian-influenza-virus-type-h5n1-us-dairy-cattle.
[7] *Id.*
[8] Importantly, Plaintiff provides zero contrary evidence upon which the Court could substitute Plaintiff's judgment for the judgment of the State that bars such unauthorized entry.

Dated: January 23, 2026					Respectfully Submitted,

							LAW OFFICE OF WILLIAM CARLON

						By:	/s/ William N. Carlon

							William N. Carlon
							Attorneys for Plaintiff
							CALIFORNIANS FOR
							ALTERNATIVES TO TOXICS

Dated: January 23, 2026					Respectfully Submitted,

							KING & SPALDING LLP

						By:	/s/ Alexander Moore

							Alexander Moore
							Attorneys for Defendants
							TRAVIS MOREDA DAIRY and TRAVIS MOREDA

**ATTESTATION FOR E-FILING**

    I hereby attest pursuant to Civil L.R. 5-1(i)(3) that I have obtained concurrence in the filing of this document from the other signatory prior to filing.

DATED: January 23, 2026					By: /s/ William N. Carlon