UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIANS FOR ALTERNATIVES TO TOXICS,<br><br>Plaintiff,<br><br>v.<br><br>TRAVIS MOREDA DAIRY, et al.,<br><br>Defendants. | Case No. 24-cv-06632-SI<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Re: Dkt. No. 50 |

Before the Court is defendants' motion for judgment on the pleadings. Dkt. No. 50. Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate for resolution without a hearing and VACATED the hearing scheduled for January 30, 2026. Having considered the papers submitted, and for good cause shown, the Court hereby DENIES defendants' motion.

**BACKGROUND**

**I.      Factual Background**

Plaintiff is Californians for Alternatives to Toxics, a non-profit corporation "dedicated to defending the environment against the effects of toxic chemicals, and to preserving and protecting the wildlife and natural resources of California waters." Dkt. No. 1 ("Compl.") ¶¶ 19, 21. Defendants own and operate a dairy farm ("Travis Dairy") located at 3243 Spring Hill Road near Petaluma, California. *Id*. ¶¶ 5, 50. Travis Dairy confines at least 550 dairy cows for more than 45 days each year in areas that do not sustain any crops, vegetation, forage growth, or post-harvest residues in the normal growing season. *Id*. ¶¶ 51, 52. Accordingly, Travis Dairy is characterized

as a Medium concentrated animal feeding operation ("CAFO") under 40 C.F.R. § 122.23.[1]  *Id.* ¶¶ 46-47, 51-52.

Plaintiff alleges that since at least July 11, 2019, defendants have continuously discharged pollutant-contaminated liquid manure, wastewater, and storm water from the dairy farm into waters of the United States without a National Pollutant Discharge Elimination System ("NPDES") permit, in violation of Section 301(a) of the Clean Water Act ("CWA"), 33 U.S.C. §1311(a).  *Id.* ¶ 31, 69. Plaintiff seeks declaratory relief, injunctive relief, and civil penalties.  *Id.* ¶ 1.  The unpermitted discharges allegedly enter into downstream surface waters, including an unnamed creek which discharges to Laguna Lake, as well as directly into Laguna Lake.  *Id.* ¶¶ 5, 56.  Laguna Lake discharges to Chileno Creek, which discharges to Tomales Bay and the Pacific Ocean.  *Id.* ¶ 5.  The complaint refers to these downstream surface waters collectively as the "Impacted Waters."  *Id.*

According to the complaint, Travis Dairy flushes manure into retention basins located throughout the property.  *Id.* ¶ 53.  Travis Dairy also piles manure in open areas exposed to rain.  *Id.* ¶ 54.  From the farm, the animal waste travels to the Impacted Waters "via man-made ditches, a flushing system, and via other man-made devices such as pumps and hoses."  *Id.* ¶ 55.  Surface water also discharges into Impacted Waters after encountering confined dairy cows.  *Id.* ¶ 56. Plaintiff also alleges that defendants' manure storage ponds are too small, and that defendants proactively dispose of liquid manure from lagoons before and after storm events.  *Id.* ¶¶ 65, 66. Plaintiff anticipates that lagoons "have exceeded their storage volume in the past, and will do so

---

[1] Under the Clean Water Act, 33 U.S.C. §1251 *et seq.*, the Environmental Protection Agency ("EPA") implements the National Pollutant Discharge Elimination System ("NPDES") program, which requires permits for the discharge of pollutants from any "point source" into waters of the United States.  40 C.F.R. § 122.1.  40 C.F.R. § 122.23(a) defines concentrated animal feeding operations (CAFOs) as point sources subject to NPDES permitting requirements.  A CAFO is a large or medium animal feeding operation ("AFO").  *Id.* § 122.23(b)(2).  An AFO is a "facility (other than an aquatic animal production facility) where the following conditions are met: (i) Animals (other than aquatic animals) have been, are, or will be stabled or confined and fed or maintained for a total of 45 days or more in any 12-month period, and (ii) Crops, vegetation, forage growth, or post-harvest residues are not sustained in the normal growing season over any portion of the lot or facility."  *Id.* § 122.23 (b)(1).  An AFO is defined as a Medium CAFO if it confines 200 to 699 mature dairy cows, whether milked or dry.  *Id.* § 122.23 (b)(6)(i)(A).

again in the future," thereby discharging liquid manure into "ditches, channels, and swales that lead to the Unnamed Creek and Laguna Lake." *Id*. ¶ 67.

## II.  Procedural Background

On or about July 11, 2024, plaintiff sent a Notice of Violations letter to defendants. Dkt. No. 1-1 ("Notice Letter").[2] On September 20, 2024, plaintiff filed its complaint in this action against defendants. Compl. On November 22, 2024, the Court granted defendants' motion to extend time to respond to the complaint from November 25, 2024 to December 27, 2024. Dkt. No. 11. Defendants then filed their answer three days late on December 30, 2024. Dkt. No. 13 ("Ans.").[3]

On September 26, 2025, nine months after answering the complaint, defendants filed a motion to dismiss, or in the alternative for summary judgment. Dkt. No. 38. On November 4, 2025, the Court denied the motion to dismiss as untimely and the motion for summary judgment as premature. Dkt. No. 44.

The Court held an Initial Case Management Conference on November 14, 2025. Dkt. No. 49.[4] During that meeting, the parties discussed the adequacy of the Notice Letter, and the Court granted defendants leave to file a motion for judgment on the pleadings as to the issue of subject matter jurisdiction. Dkt. No. 55 at 3:19-6:17.

The Travis Dairy defendants filed the present motion for judgment on the pleadings on December 3, 2025. Dkt. No. 50 ("Mot."). Plaintiff responded. Dkt. No. 54 ("Opp'n"). Defendants replied. Dkt. No. 56 ("Reply").

---

[2] While defendants acknowledge receipt of a letter in the form of Exhibit 1 to the complaint, defendants deny the letter provided "sufficient and required notice." Dkt. No. 13 ("Ans.") ¶¶ 2, 3. Defendants also admit that more than sixty days passed between service of the letter and plaintiff's filing of the complaint. *Id.*

[3] The Court subsequently granted defendants' unopposed second motion to extend the deadline to respond to the complaint. Dkt. Nos. 14, 15.

[4] In the case management statement filed on November 7, 2025, defendants stated that the Court does not have subject matter jurisdiction under the Clean Water Act. Dkt. No. 46 at 2, 5.

**LEGAL STANDARD**

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Judgment on the pleadings is appropriate when, even if all material facts in the pleading under attack are true, the moving party is entitled to judgment as a matter of law. *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1989). A Rule 12(c) motion for judgment on the pleadings is "functionally identical" to a Rule 12(b)(6) motion to dismiss and "the same standard of review applies to motions brought under either rule." *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011) (internal quotation marks and citations omitted). "[U]nder both rules, a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (internal quotation marks and citation omitted). To survive either a Rule 12(b)(6) motion or a Rule 12(c) motion, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation and internal quotation marks omitted).

**DISCUSSION**

I.   **Procedural Issue**

The Court first addresses the threshold argument that the present motion improperly seeks a

second bite at the apple. Plaintiff argues that defendants' motion should be denied because it improperly relitigates the same legal theories previously presented to the Court and denied in defendants' motion to dismiss. Opp'n at 8-11. Travis Dairy defendants contend that plaintiff consented to defendants' motion during the Initial Case Management Conference on November 14, 2025. Mot. at 1; Reply at 2-3.

Plaintiff suggests that the law of the case doctrine bars the present Rule 12(c) motion as duplicative of defendants' motion to dismiss. *Id.* at 9. The law of the case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983). Plaintiff argues that one sentence in the Court's order denying defendants' motion to dismiss establishes the law of the case. *Id.*; *see* Dkt. No. 44 at 2. ("Furthermore, defendants' arguments fail on the merits."); *see also Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) ("The law of the case turns on whether a court previously decided upon a rule of law . . . not on whether, or how well, it explained the decision.").

However, as plaintiff's cited authorities acknowledge, the law of the case "directs a court's discretion, it does not limit the tribunal's power." *Arizona*, 460 U.S. at 618 & n.8 (internal citation omitted); *see also In re Enovix Corp. Sec. Litig.,* 2025 WL 2841682 at *6 (N.D. Cal. Oct. 7, 2025) (internal quotations and citation omitted) ("The authority of a district judge to reconsider a previous ruling in the same litigation ... is governed by the doctrine of the law of the case, which authorizes such reconsideration if there is a compelling reason ....") (internal quotations and citation omitted). More importantly, the law of the case doctrine cannot override an attack on subject matter jurisdiction. *See Christianson*, 486 U.S. at 819 ("adherence to the law of the case will not shield an incorrect jurisdictional decision should this Court choose to grant review"); *Gonzalez v. United States Immigr. & Customs Enf't*, 97F F.3d 788, 805 n.10 (9th Cir. 2020) ("[T]he doctrine of 'law of the case' does not apply to the fundamental question of subject matter jurisdiction.") (internal quotations and citation omitted). Here, defendants' argument as to the adequacy of plaintiff's Notice Letter implicates the Court's subject matter jurisdiction. *See Washington Trout v. McCaine Foods, Inc.*, 45 F.3d 1351, 1354-55 (9th Cir. 1995).

5

Moreover, the Court agrees with defendants that plaintiff ignores the relevant procedural history of this motion. *See* Reply at 2-3. During the Initial Case Management Conference, plaintiff's counsel consented to defendants' motion "based on [the] alleged inadequacy of the notice letter." Dkt. No. 55 at 3:19-6:16. Plaintiff now argues that defendants were limited to raising new factual or legal issues as to the Notice Letter, but nothing in Case Management Conference transcript nor the Court's subsequent minute entry imposed that limitation. Opp'n at 10; *see* Dkt. Nos. 49, 55. Therefore, the Court finds that defendants are not barred from filing their present Rule 12(c) motion as to the issue of the Notice Letter.[5]

However, in the current motion for judgment on the pleadings defendants also re-raise two other arguments unrelated to the sufficiency of the Notice Letter, previously made in their motion to dismiss. *Compare* Dkt. No. 38 at 10-11, 12-13 *with* Mot. at 10-11. Defendants again argue that plaintiff's complaint failed to state a plausible claim and that plaintiff failed to disclose information or identify witnesses to support its Clean Water Act claims in its Rule 26 initial disclosures. Mot. at 10-11. The discussion as to defendants' intent to file a motion for judgment on the pleadings at the November 14, 2025 Case Management conference was confined to the issue of notice. Moreover, the Court again finds neither argument persuasive on the merits. *See* Dkt. No. 44.

## II. Notice as Required by the Clean Water Act

Travis Dairy defendants primarily argue that the plaintiff's suit should be dismissed for lack of subject matter jurisdiction because plaintiff's "overbroad and over-inclusive" Notice Letter failed to provide meaningful notice as required by the Clean Water Act. Mot. at 1, 7. Plaintiff counters that the Notice Letter meets the requirements set forth in the Clean Water Act. Opp'n at 11-16.

The Clean Water Act was enacted in 1972 to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). Section 505(a)(1) empowers citizens to file enforcement actions against alleged violators. *Id.* § 1365. Before a lawsuit is filed,

---

[5] Plaintiff also threatened to move for sanctions if defendants did not withdraw the present motion pursuant to Rule 11(c)(2). Dkt. No. 54 at 9 n. i,10; Dkt. No. 54-1, Ex. 1. Defendants refused to withdraw the present motion and threatened pursuing sanctions against plaintiff. Dkt. No. 54-1, Ex. 2. For the reasons discussed in this order, the Court does not find any sanctions are warranted.

6

the Clean Water Act requires a citizen plaintiff to provide the alleged violator, in addition to the Administrator and the State where the alleged violation occurred, with a 60-day notice of its intention to file suit. *Id.* § 1365(b)(1); 40 C.F.R. § 135. This sixty-day notice requirement is a "mandatory, not optional condition precedent for suit." *Hallstrom v. Tillamook County*, 493 U.S. 20, 26 (1989). Further, the notice requirement is "a jurisdictional necessity." *Ctr. For Biological Diversity v. Marina Point Dev. Co.*, 566 F.3d 794, 800 (9th Cir. 2009).

The purpose of the notice letter is to allow the alleged violator the opportunity to correct the problem and avoid the lawsuit. *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 59-60 (1987). Therefore, notice must include "sufficient information to permit the recipient to identify the specific standard, limitation, or order alleged to have been violated, the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, the location of the alleged violation, the date or dates of such violation, and the full name, address, and telephone number of the person giving notice." 40 C.F.R. § 135.3(a). The Ninth Circuit has clarified that, "as long as a notice letter is reasonably specific as to the nature and time of the alleged violations, the plaintiff has fulfilled the notice requirement. The letter does not need to describe every detail of every violation; it need only provide enough information that the defendant can identify and correct the problem." *San Francisco Baykeeper v. Tosco Corp.*, 309 F.3d 1153, 1155 (9th Cir. 2002).

The Court finds the Notice Letter adequate. Here, the Notice Letter contains sufficient information to alert Travis Dairy to the alleged violations and permit defendants to "identify and correct the problem." Notice Letter at 5-7; *see id.* Plaintiff describes Travis Dairy as a Medium CAFO containing "approximately 550 dairy Holsteins" and "at least eight retention basins" which hold water flushed through barns that hold the dairy cows. *Id.* at 5. The Notice Letter alleges that stacks of manure are placed in areas exposed to rain and that discharges from the dairy farm enter waters of the United States. *Id*. The Notice Letter identifies an unnamed creek running through defendants' property and the other bodies of water it connects to. *Id*. Further, it alleges that defendants apply liquid manure to its field in high quantities resulting in polluted runoff entering conveyances that connect to nearby surface waters. *Id*. at 6. Even more specifically, plaintiff alleges

1    that Travis Dairy's manure storage ponds are undersized. *Id*. Finally, the Notice Letter alleges that
2    Travis Dairy is discharging pollutants without the required permits. *Id.* at 6-7. This information
3    was sufficient to allow Travis Dairy to adequately understand the "nature" of the alleged violations
4    and implement improvements to correct the problem.[6]

5        Defendants assert that plaintiff's list of 200 "Significant Rain Events" from July 2019 to July
6    2024 is insufficient because it "blurs the date of violation to every day that there is a hard rain."
7    Mot. at 8; Notice Letter at 5, 8-9. The Court finds the list of dates plaintiff provides in the Notice
8    Letter is akin to the table of dates provided in *WaterKeepers N. Cal. v. AG Indus. Mfg.* 375 F.3d
9    913 (9th Cir. 2004). In *WaterKeepers*, plaintiff's notice letter alleged defendant discharged
10   contaminated storm water during rain events of "over 0.1 inches" and provided defendant with tables
11   listing daily rain accumulation data at various locations as support. *Id.* at 917. The Ninth Circuit
12   held that the rainfall tables provided defendant sufficient notice. *Id*. at 918 ("Regardless of whether
13   WaterKeepers is able to prove each claimed discharge, its intent-to-sue letter put AG Industrial on
14   notice as to the violations that WaterKeepers would allege in its complaint. The statute and
15   regulation require no more."). Here, too, plaintiff provided a list of specific dates when the rain
16   event was "Significant." Notice Letter at 10. Plaintiff's notice letter fails to define "Significant."
17   However, as in *WaterKeepers*, the magnitude of the rain event is an issue of fact to be determined
18   at a later stage of this proceeding. *See id.* at 918.

19       Furthermore, even if plaintiff's list of significant rain events did not provide defendants with
20   proper notice of alleged past dates of violation, plaintiff also claims that Travis Dairy is in "ongoing
21   violation…of the Clean Water Act." Notice Letter at 6. "[A] notice letter need not allege the
22   specific date of a violation when violations are ongoing." *See Puget Soundkeeper All. v. Port of*
23   *Tacoma*, 2023 WL 11807235, at *2 (9th Cir. June 10, 2024) (citing *Nat. Res. Def. Council v. Sw.*
24   *Marine, Inc.*, 236 F.3d 985, 996 (9th Cir. 2000)). In *San Francisco Baykeeper v. Tosco Corp.*,

---

[6] Defendants state that they identified and implemented improvements at the Travis Dairy in compliance with the Clean Water Act before receiving the Notice Letter, based on their own investigations. Mot. at 3. Defendants also request the Court take judicial notice of the San Francisco Bay Regional Water Quality Control Board's November 1, 2024 inspection report. *Id.*; Dkt. No. 38-2, Ex. F. The Court finds the inspection, which occurred after plaintiff filed suit, irrelevant to the adequacy Notice Letter.

plaintiff alleged that defendant's petroleum coke factory was violating the Clean Water Act because when it rained, water came into contact with uncovered coke piles and pollutants were discharged into the storm drain system. 309 F.3d 1153, 1156 (9th Circ. 2002). In its notice letter, "Baykeeper provided a list of 190 dates between 1994 and 1999 when the San Francisco Bay Area received more than one-tenth of an inch of rain." *Id.* at 1158. The Court held that "no specific dates were needed" where BayKeeper alleged an ongoing violation. *Id.*

Defendants also argue that plaintiff failed to provide meaningful notice as to the waters of the United States impacted by the alleged discharges. Mot. at 8. Under *Sackett v. EPA*, the Clean Water Act's jurisdiction extends to "only those relatively permanent, standing or continuously flowing bodies of water 'forming geographic[al] features' that are described in ordinary parlance as 'streams, oceans, rivers, and lakes.'" 598 U.S. 651, 672 (2023).

Defendants argue that the Notice Letter omitted facts needed to show a connection between the discharge and the "Impacted Waters" by a "continuous surface connection." Mot. at 8. This Court is unpersuaded by defendants' argument. *Sackett v. EPA* narrowed the scope of the Clean Water Act by establishing the "continuous surface connection" test. 598 U.S. at 678. However, nothing in plaintiff's notice letter suggests that any of the Impacted Waters are isolated. Notice Letter at 5. ("An unnamed creek runs through TMD's Facility. The unnamed creek is a tributary to Laguna Lake, which discharges to Chileno Creek, which is a tributary to Walker Creek, which ultimately discharges to Tomales Bay and the Pacific Ocean ("Impacted Waters").") The notice letter also frequently refers to discharges as entering adjacent "surface waters." Notice Letter at 6. Further, plaintiff alleges in its complaint that the unnamed creek, Laguna Lake, and Chileno Creek are all relatively permanent. Compl. ¶¶ 59-61. The Court finds these alleged facts sufficient. Whether the "Impacted Waters" actually have a continuous connection as alleged by plaintiff is a factual dispute not suitable for resolution at this stage. For purposes of reaching a decision as to the sufficiency of the Notice Letter, the Court does not find defendants' arguments compelling. *See e.g. Inland Empire Waterkeeper v. Corona Clay Co.*, 2023 WL8125772, at *2 (C.D. Cal. Oct. 26, 2023) (Courts in this Circuit have repeatedly acknowledged that the term "jurisdiction" in the CWA context refers to statutory jurisdiction, or the bodies of water where the CWA can be enforced, not

9

1  subject-matter jurisdiction. Whether or not Temescal Creek is a [water of the United States] is an
2  element of a claim for relief under the CWA, not a threshold determination that would deprive this
3  Court of jurisdiction to hear Plaintiff's CWA claims at all.").

4  Defendants rely heavily on *Ctr. For Biological Diversity v. Marina Point Dev. Co.*, 566 F.3d
5  794, 801-02 (9th Cir. 2009) to support their contention that plaintiff's notice letter lacks the required
6  particularity for "true notice." Mot. at 6. The Court finds that *Marina Point* does not support
7  defendants' argument. In *Marina Point*, the Ninth Circuit rejected the plaintiff's notice letters for
8  lack of detail, identifying several areas where the letter fell short. *Marina Point*, 566 F.3d at 803.
9  The court explained that plaintiff did not "mention any claims under § 402 of the CWA," or "give
10 any detail whatsoever regarding just what 'wetlands' were allegedly being affected or how" and
11 "gave no other specific dates" other than the date the violation purportedly began. *Id*. at 802-03.
12 The Ninth Circuit noted that this was especially problematic because it was doubtful defendants'
13 land was wetland at all and "defendants could hardly have guessed at what [plaintiff] was speaking
14 about." *Id.* at 803, no. 11. Unlike in *Marina Point*, here plaintiff's Notice Letter is not wanting for
15 key information. As described above, the Notice Letter contains enough information to allow
16 defendants to identify the problem. It is true that some particularity is required in a notice of
17 violation letter. *See* 40 C.F.R. § 135.3(a). However, the Court disagrees with defendants' reading
18 of *Marina Point* as requiring more than what the Clean Water Act's language and case precedent
19 require. *See Baykeeper*, 309 F.3d at 1158 ("In short, the Clean Water Act's notice provisions and
20 their enforcing regulations require no more than 'reasonable specificity.'") (internal citation
21 omitted).

22 As plaintiff argues in its opposition, defendants ask for too much. The Notice Letter's claims
23 are sufficiently descriptive to alert defendants to their alleged violations. Here, the Notice Letter
24 provides adequate notice to defendants and complies with the requirements of the Clean Water Act.
25 Therefore, the Court DENIES defendants' motion for judgment on the pleadings.

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby DENIES Travis Dairy defendants' motion for judgment on the pleadings in its entirety.

**IT IS SO ORDERED**.

Dated: January 27, 2026

_____
SUSAN ILLSTON
United States District Judge