WILLIAM VERICK (State Bar No. 140972)
Klamath Environmental Law Center
P.O. Box 1128
Arcata, CA 95518
(707) 630-5061
wverick@igc.org

DAVID WILLIAMS (State Bar No. 144479)
Law Offices of David Williams
1839 Ygnacio Valley Road, Suite 351
Walnut Creek, CA 94598
(510) 847-2356
dhwill7@gmail.com

BRIAN ACREE (State Bar No. 202505)
Law Office of Brian Acree
95 3rd Street, Second Floor
San Francisco, CA 94103-3103
(510) 517-5196
brian@brianacree.com

WILLIAM N. CARLON (State Bar No. 305739)
Law Office of William Carlon
437 Post Street
Napa, CA 94559
(530) 514-4115
william@carlonlaw.com

Attorneys for Plaintiff
CALIFORNIANS FOR ALTERNATIVES TO TOXICS

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIANS FOR ALTERNATIVES TO TOXICS,<br><br>               Plaintiff,<br>   vs.<br><br>TRAVIS MOREDA DAIRY AND TRAVIS MOREDA,<br><br>               Defendants. | Case No. 3:24-cv-06632-SI<br><br>**PLAINTIFF'S SUPPLEMENTAL CASE MANAGEMENT STATEMENT** |

## I.    Introduction

On April 17, 2026, the parties participated in a further case management conference. The Court admonished the parties for the lack of progress in the case and ordered the parties to meet and confer regarding any outstanding discovery issues. (Dkt. No. 66.) The Court further ordered the parties to propose a trial schedule, with a trial to occur in 2026. (*Id.*) Plaintiff respectfully requests that the Court modify that order to allow Plaintiff to propose a later trial date that would allow Plaintiff the opportunity to complete critical discovery in this case.

## II.    The Procedural History Shows that Good Caused Exists for the Extended Schedule Sought by Plaintiff.

Plaintiff has at every step conducted this case with an eye toward efficiency and settlement. The schedule Plaintiff now proposes is not the product of neglect or delay on its part; it is the product of Defendants' sustained and strategic use of extensions, stays, settlement overtures, successive dispositive motions, and discovery resistance – culminating in the loss of the 2024-2025 wet season and most of the 2025-2026 wet season. An additional wet season is necessary so that Plaintiff may complete the wet-weather inspection this Court ordered and conduct the related discovery that follows from it.

### A. Plaintiff deferred litigation to allow Defendants time to negotiate.

Plaintiff served its statutory notice of violation on July 11, 2024. (See Dkt. No. 1 ¶ 2; Dkt. No. 1-1.) Rather than rush to the courthouse, Plaintiff waited more than sixty days and continued to communicate with Defendants in the hope that the dispute could be resolved without litigation. (Declaration of William Carlon in Support of Motion to Modify Case Management Order ("Carlon Declaration") ¶ 3.)  Plaintiff filed the Complaint only after Defendants made clear that no pre-suit resolution was forthcoming. (Dkt. No. 1.) Even after filing, Plaintiff did not effect formal service; instead, Plaintiff extended Defendants a waiver of service to conserve cost and keep settlement channels open. (Carlon Declaration ¶ 4.) Defendants executed the waiver on October 25, 2024, which set their Rule 12 deadline at November 25, 2024. (Dkt. No. 7.)

### B. Defendants repeatedly sought and obtained additional time.

Defendants have secured extension after extension. On November 22, 2024, the Court granted

Defendants' motion to extend their responsive-pleading deadline to December 27, 2024, and pushed all of the Court's initial case-management deadlines by thirty days. (Dkt. Nos. 10, 11.) Defendants missed even that extended deadline, filing their Answer three days late on December 30, 2024, and obtaining a second, retroactive extension on their own unopposed motion. (Dkt. Nos. 13, 14, 15; see also Dkt. No. 44 at 1 n.1 [noting late filing].) The parties then stipulated to successive extensions of the case-management schedule to permit settlement discussions. (Dkt. Nos. 18, 19 [Feb. 5, 2025 order]; Dkt. Nos. 21, 23 [Apr. 10, 2025 order].) Shortly thereafter, on May 27, 2025, Plaintiff sought a wet weather inspection, anticipating that it would occur in the upcoming 2025-2026 wet season. However, by this point the 2024-2025 wet season had elapsed without Plaintiff having the opportunity to complete the inspection. Though Plaintiff had not conducted formal discovery at that point, due to the then-ongoing settlement discussions, Plaintiff still tried to capture evidence during the 2024-2025 wet season using drone flights of the dairy farm in February 2024. (Carlon Declaration ¶ 5.)

**C. The parties devoted substantial time to settlement, including a stipulated stay.**

At Defendants' request and with Plaintiff's cooperation, the case was referred to Magistrate Judge Kang for settlement in April 2025. (Dkt. Nos. 20, 24–26.) The parties participated in a pre-settlement planning conference on April 21, 2025 (Dkt. No. 27), and a full-day settlement conference before Judge Kang on June 23, 2025 (Dkt. No. 30). At Defendants' urging, the parties stipulated to – and the Court entered – a ninety-day stay of the entire case, including Plaintiff's then-outstanding discovery requests, through September 22, 2025, to permit further document exchange under the parties' March 18, 2025 confidentiality agreement and to give settlement every chance to succeed. (Dkt. Nos. 31–33.) Settlement discussions continued through a further status conference with Judge Kang on August 21, 2025. (Dkt. No. 37.) They did not resolve the case.

**D. Defendants' dispositive motions further consumed the schedule.**

Once settlement discussions failed, and their discovery responses became due, Defendants filed a motion to dismiss or, in the alternative, for summary judgment on September 29, 2025 – nine months after answering the Complaint. (Dkt. No. 38.) The Court denied the motion on November 4, 2025, holding that the Rule 12(b) motion was "untimely" because it came after the Answer, that Defendants' arguments "fail[ed] on the merits," and that the alternative summary-judgment request

was "premature" because "[P]laintiff has not had a sufficient opportunity for discovery, in part because defendants have sought and obtained several extensions." (Dkt. No. 44 at 2.) Undeterred, Defendants filed a second dispositive motion – a Rule 12(c) motion for judgment on the pleadings – on December 3, 2025. (Dkt. No. 50.) The Court denied that motion as well on January 27, 2026, observing that it largely "reli[ed] [on] the same legal theories previously presented to the Court and denied in defendants' motion to dismiss." (Dkt. No. 60 at 5.) At this point, over half of the 2025-2026 wet season had elapsed without Plaintiff having an opportunity to conduct the discovery it had sought in May 2025.

### E. Plaintiff has diligently pursued discovery; Defendants have resisted.

Plaintiff has not been idle. Plaintiff served its first set of written discovery and its Wet Weather Inspection Request on May 27, 2025. (Dkt. Nos. 58-1, 62-1.) The Court has had to resolve disputes Defendants forced over that discovery on a number of occasions. First, on June 17, 2025, the Court resolved a joint dispute regarding the timing of Defendants' responses, ordering the parties to focus their attention on the settlement conference, and pushing Defendants' discovery response out to August 1, 2025. (Dkt. Nos. 28, 29.) Second, on January 27, 2026, the Court ordered Defendants to allow the requested wet weather site inspection. (Dkt. Nos. 58, 61.) Third, after meeting and conferring, Plaintiff was required to bring a further motion to compel responses to requests for production of financial documents; and, on March 17, 2026, the Court granted Plaintiff's motion in part, ordering production of financial records from 2022 forward. (Dkt. Nos. 62, 63.) The parties remain without an entered protective order, and Plaintiff's deposition of Mr. Moreda – originally anticipated in November 2025 – has not occurred because the discovery disputes have not closed. The parties have been meeting and conferring about a joint motion for entry of a protective order, and Plaintiff expects to have that filed soon. Based on Defendants' communications about their financial production, however, Plaintiff anticipates having to request the Court's assistance on that production as well, but that dispute is not yet ripe due to the delays in getting a motion for the protective order filed. (Carlon Declaration ¶ 6.)

//

//

**F. The wet-weather inspection was authorized only after the 2025-2026 wet season was over half-way done.**

The discovery dispute most consequential to the schedule concerns the wet-weather inspection – a key discovery tool in this CWA citizen suit. Plaintiff served its inspection request on May 27, 2025. (Dkt. No. 58-1.) At the Initial Case Management Conference on November 14, 2025, the Court directed that Defendants "provide inspections after two rain events." (Dkt. No. 49; Dkt. No. 61 at 1.) Defendants did not comply. They responded on December 3, 2025 refusing the inspection, citing an avian-flu advisory that this Court later found did not prohibit a reasonable, protocol-compliant inspection. (Dkt. No. 61 at 1–2.) Plaintiff was forced to file a joint discovery-dispute statement on January 23, 2026. (Dkt. No. 58.) On January 27, 2026 – well into the 2025–2026 wet season – the Court ordered the inspection, finding Defendants' "refusal to cooperate with plaintiff to develop a safe protocol for a site inspection" to be "unreasonable." (Dkt. No. 61 at 1–2.)

Since the Court's January 27, 2026 order, the rain has not cooperated. Plaintiff has prepared consultants, attorneys, and biosecurity protocols, but there have been no opportunities to complete the inspection. (Carlon Declaration ¶ 7.) Plaintiff seeks to inspect the facility during a rain event that stresses the facility's storm water management system. (*Id.* ¶ 8.) Between January 27, 2026 and the present, the forecasted rain events were not adequate to meet that goal. (*Id.* ¶ 9.) The 2025-2026 wet season is now nearly at an end, and Plaintiff will not have a meaningful opportunity to inspect under wet conditions until the next wet season. (*Id.* ¶ 10.)

**III.    Conclusion**

Given that the allegations of the Complaint focus on storm-associated discharges, a wet-weather inspection is not a luxury; it is keystone piece of discovery for Plaintiff. Moving forward on a schedule that forecloses that inspection would reward the very conduct that delayed it. Plaintiff's request is wholly justified by the issues in this case, and the actions of Defendants who have prolonged the discovery process by preventing Plaintiff from completing it in a timely manner. The record amply supports that reasonable accommodation.

//

//

Dated: April 22, 2026          Respectfully Submitted,

                                    LAW OFFICE OF WILLIAM CARLON

                               By:    /s/ William N. Carlon

                                      William N. Carlon
                                      Attorneys for Plaintiff
                                      CALIFORNIANS FOR
                                      ALTERNATIVES TO TOXICS