WILLIAM VERICK (State Bar No. 140972)
Klamath Environmental Law Center
P.O. Box 1128
Arcata, CA 95518
(707) 630-5061
wverick@igc.org

[Additional Counsel for Plaintiff on p. 2]

Attorneys for Plaintiff
CALIFORNIANS FOR ALTERNATIVES TO TOXICS

PETER HSIAO (Bar No. 119881)
*phsiao@kslaw.com*
ALEXANDER MOORE (Bar No. 340994)
*amoore@kslaw.com*
**KING & SPALDING LLP**
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071
Telephone: +1 213 443 4355
Facsimile: +1 213 443 4310

*Attorneys for Defendants*
TRAVIS MOREDA DAIRY and TRAVIS MOREDA

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIANS FOR ALTERNATIVES TO TOXICS, <br><br> Plaintiff, <br> vs. <br><br> TRAVIS MOREDA DAIRY AND TRAVIS MOREDA, <br><br> Defendants. | Case No. 3:24-cv-06632-SI <br><br> **JOINT MOTION FOR ENTRY OF A PROTECTIVE ORDER** |

Joint Motion for Entry of a Protective Order        1        Case No.: 3:24-cv-06632-SI

DAVID WILLIAMS (State Bar No. 144479)
Law Offices of David Williams
1839 Ygnacio Valley Road, Suite 351
Walnut Creek, CA 94598
(510) 847-2356
dhwill7@gmail.com

BRIAN ACREE (State Bar No. 202505)
Law Office of Brian Acree
95 3rd Street, Second Floor
San Francisco, CA 94103-3103
(510) 517-5196
brian@brianacree.com

WILLIAM N. CARLON (State Bar No. 305739)
Law Office of William Carlon
437 Post Street
Napa, CA 94559
(530) 514-4115
william@carlonlaw.com

Attorneys for Plaintiff
Californians for Alternatives to Toxics

## I.     PLAINTIFF'S STATEMENT

On March 17, 2026, the Court ordered Defendants[1] to produce financial information responsive to Plaintiff's Requests for Production of Documents ("RFP") 15-21 for the years 2022 to present, subject to a protective order. (Dkt. No. 63 ("Order") at 2:28-3:2.) The Court instructed that, "[i]f after meeting and conferring the parties are still unable to agree upon the terms of a protective order, the parties should promptly file a motion with the Court." The parties have attempted to reach a mutually agreeable protective order, but have been unable to do so. Pursuant to the Court's instruction, the Parties now file the instant motion, seeking the Court's assistance in entering a protective order for this case.

On March 27, 2026, having not yet received any production pursuant to the Court's Order, Plaintiff asked Defendants when they intended to produce the documents responsive to RFPs 15-21. (Declaration of William Carlon in Support of the Joint Motion for Entry of a Protective Order ("Carlon Declaration") at ¶ 5.) Defendants responded on April 1, 2026, taking the position that they had already satisfied the Court's Order by providing financial documents during the parties' June 2025 settlement conference under a pre-litigation confidentiality agreement. (*Id.* at ¶ 6.) That position is squarely foreclosed by the Court's Order. The Court was fully aware of the settlement-conference production – Defendants described it in detail in their opposition to Plaintiff's motion to compel – and ordered production anyway. (Order at 2:28–3:2.) Defendants may not now satisfy a court order to produce litigation discovery by pointing to documents exchanged informally before any order existed, under a confidentiality arrangement entered for settlement purposes.

Defendants also provided a proposed protective order for Plaintiff's review. (Carlon Declaration at ¶ 6.) That proposal was not a standard litigation protective order. It was a lightly revised version of the pre-litigation confidentiality agreement the Parties had entered for settlement purposes – a bilateral agreement between two parties, not a court order capable of governing the full scope of discovery. (*Id.* at ¶ 7.) Defendants' proposed order contained no designation procedure, no

---

[1] The Court's order transposes "defendants" for "plaintiff," but it was Plaintiff that moved to compel Defendants to produce the financial documents, and the Parties understand the order to require Defendants, not Plaintiff to make the necessary production.

challenge procedure, no inadvertent-disclosure provision, no provision under Federal Rule of Evidence 502(d), no archival-copy protection for counsel upon final disposition, and no acknowledgment form for persons receiving protected material. It was, in short, a nondisclosure agreement, not a protective order. (*Id.*) Plaintiff rejected Defendants' proposal and countered with the Northern District's model stipulated protective order. (*Id.* at ¶ 8.) A true and correct copy of the protective order that Plaintiff requests the Court to enter is attached as **Exhibit 1** to this motion.

On April 6, 2026, Defendants rejected Plaintiff's proposal. (Carlon Declaration at ¶ 9.) On April 7, 2026, Plaintiff drafted a Joint Motion for Entry of a Protective Order and invited Defendants to include their argument and proposed protective order, and requested that Defendants meet and confer on the issue to try to narrow the issues for the Court to decide. On April 10, 2026, Defendants provided a revised version of Plaintiff's proposed protective order. The Parties met and conferred in good faith to resolve these issues, via videoconference, on April 14, 2026. Plaintiff rejected Defendants' proposed edits as unresponsive to the concerns Plaintiff had raised. The Parties are at an impasse and respectfully request the Court's assistance in resolving this dispute.

**A. THE MODEL PROTECTIVE ORDER FOR THE NORTHERN DISTRICT OF CALIFORNIA IS ADEQUATE FOR THE NEEDS OF THIS CASE**

There is no basis to depart from the Court's pre-approved model protective order. The Court's own model order is the appropriate starting point for any protective order in this District, and Defendants bear the burden of justifying a departure from it. They cannot meet that burden here.

Defendants have expressed a concern that the financial documents could be used to harass or embarrass them (Carlon Declaration at ¶¶ 7, 9.) To address that concern, Defendants have proposed adding a "HIGHLY CONFIDENTIAL" tier to the model protective order. Defendants' proposed definition triggers that designation whenever disclosure to any "owner, officer, director, employee, or other non-attorney agent of the Receiving Party" could cause "embarrassment." (Defendants' Proposed Protective Order § 2.7.) That standard is inadequate for two independent reasons. First, the risk of embarrassment is already the standard for protection under Federal Rule of Civil Procedure 26(c) and is fully addressed by the "CONFIDENTIAL" tier in the model order. Defendants' proposed "HIGHLY CONFIDENTIAL" tier therefore adds no legitimate protection that the model

order does not already provide. Second, Defendants' proposed definition expressly encompasses "financial information already produced by Defendants to Plaintiff after the written agreement by the Parties that this information would be treated as attorneys' eyes only" — an overt attempt to import the terms of the parties' pre-litigation settlement confidentiality agreement into a court-entered protective order. That agreement was entered for settlement purposes. Defendants may not convert it into judicially enforceable discovery restrictions through the back door of a protective order. The model protective order fully addresses Defendants' concerns through legitimate means. Under Section 7.1, protected material may be used only for prosecuting, defending, or attempting to settle this litigation, and for no other purpose. Designated material may be filed in the public record only with the Designating Party's written permission or a court order, and any filing under seal must comply with Civil Local Rule 79-5. These protections are precisely what the Federal Rules contemplate.

Under Defendants' revised proposal, the practical effect of the "HIGHLY CONFIDENTIAL" tier is to lock CAT's own representatives out of documents produced in their own case. Under proposed Section 7.3, documents designated "HIGHLY CONFIDENTIAL" may be shared only with outside counsel of record, their employees, retained experts, the court, and court reporters – and no one else. CAT's executive director, who must be able to evaluate the financial information in order to make informed decisions about the litigation, including decisions about settlement, would be denied access to evidence directly bearing on the case. (Carlon Declaration at ¶ 11.) A client that cannot review key evidence in its own litigation cannot meaningfully direct or participate in its own case. Defendants' suggestion that Plaintiff will misuse financial discovery to embarrass or harass them is unsupported speculation, not a basis for a protective order. Plaintiff is a nonprofit environmental organization with no financial stake in Defendants' dairy business and no competitive motive to cause them harm. The model protective order's use restriction – limiting designated material to prosecuting, defending, or settling this litigation – is precisely the safeguard the Federal Rules provide against misuse of discovery, and it is more than adequate here.

The model protective order permits disclosure of protected information only to persons to whom disclosure is reasonably necessary for the litigation, each of whom must execute an

acknowledgment agreeing to be bound by the order's terms. (**Exhibit 1** at Sections 7.2, Exhibit A.) This structure is precisely calibrated to protect legitimate confidentiality interests while preserving a party's ability to prosecute its claims. The Court should enter the model protective order and direct Defendants to produce documents responsive to RFPs 15-21 without further delay.

## II.     DEFENDANTS' STATEMENT

Defendants ("Travis") followed the Court's directions in its March 17, 2026 Order (ECF No. 63) to prepare a proposed protective order that balances three factors, all of which are absent from Plaintiff's proposed order and portion of this motion:

- First, under Federal Rule of Civil Procedure ("Rule") 26(b)(1), Plaintiff may obtain discovery that is relevant and proportional to the needs of the case, considering factors including the amount in controversy and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Travis agrees and his proposed order allows Plaintiff to use his financial documents in court to show his ability to pay (or, in fact, inability to pay) a Clean Water Act civil penalty.  (*See* ECF No. 63 at 2.)

- Second, under Rule 26(c)(1), Travis may seek a protective order to obtain protection from the use of discovery that would cause annoyance, embarrassment, oppression, or undue burden and expense.  The protective order may include designating persons who may be present while the discovery is conducted (Rule 26(c)(1)(E)) and requiring that commercial information not be revealed or be revealed only in a specified way (Rule 26(c)(1)(G)).

- Third, the parties previously agreed to a confidentiality agreement dated March 17, 2025, for Travis' financial documents at issue in this motion, limiting their disclosure to Plaintiff's attorney only, consistent with the requirements of Rule 26(c).  Travis produced his financial documents in reliance upon this agreement, including a balance sheet prepared by an independent accounting firm, his federal tax returns, his mortgage statement, his bank account totals, and two sworn declarations to attest to the completeness of these responses.  Plaintiff incurred no prejudice or hardship, having received these documents more than nine months ago.  Regarding Travis' inability to pay,

the Rule 26(b)(1) proportionality test should apply to limit this disclosure of personal financial information to the needs of the case, and not allow the disproportionate disclosure to strangers, including the members of Plaintiff citizen group and its purported advisors.[2]

There is an additional requirement to this motion. The movant—in this case both parties—must certify they have in good faith conferred in an effort to resolve the dispute without court action. (Rule 26(c)(1).) This direction also appears in the Court's March 17 Order. Travis by his counsel certifies that he met and conferred in good faith with Plaintiff and provided three different versions of the proposed protective order to address Plaintiff's concerns:

(1) The first version used the same text that Plaintiff agreed to in the confidentiality agreement and added the provisions for an enforceable protective order.

(2) The second version used the model protective order proposed by Plaintiff and added the "attorney eyes only" provisions of the confidentiality agreement in a section for the designation of "HIGHLY CONFIDENTIAL" Information.

(3) After meeting and conferring with Plaintiff, Travis attempted to address further concerns by preparing a third proposed version that narrowed the definition of "HIGHLY CONFIDENTIAL" Information to incorporate the requirements of Rule 26(c)(1) and place the burden on the designating party to justify that designation. A true and correct copy of this proposed protective order is attached as **Exhibit 2** to this motion. Plaintiff ignores and does not address this version of the protective order that contains the same provisions as its own proposed order.

Plaintiff completely rejected all these proposals. It refused to change a single sentence, word, or period of its proposed protective order.[3] Plaintiff cannot certify it complied with the good faith meet and confer requirements of Rule 26(c)(1) and the Court's March 17 Order.

Plaintiff instead attempts to create issues where there should be none following this Court's

---

[2] As a practical matter, Travis lacks the ability or resources to identify a breach of the confidentiality agreement or of the protective order proposed by Plaintiff. A more workable solution is the protective order proposed by Travis.

[3] A true and correct copy of the parties' email correspondence regarding this topic is attached as **Exhibit 3** to this motion.

prior orders.  Plaintiff's counsel already possesses Travis' documents responsive to RFPs 15–21, as these documents were produced pursuant to a confidentiality agreement during the parties' settlement conference before Magistrate Judge Kang.  The parties agreed this sensitive financial information is highly confidential and would be viewed by attorney eyes only to prevent potential harm and embarrassment if otherwise viewed by Plaintiff's members and employees.  Plaintiff says its members will be "locked out" of participating in settlement discussions, ignoring the fact it already agreed to the attorney eyes only provision in part to discuss settlement.

Plaintiff's disagreement about its current possession of Travis' financial documents is about semantics, not substance.  Mr. Carlon states in his sworn declaration at Paragraph 2 that "As of the date of this declaration, Defendants have not produced any documents responsive to RFPs 15–21 pursuant to the Court's March 17, 2026 Order or the Rule 34 RFPs. . . ."  He then admits Travis "informally" gave the documents to Plaintiff at the settlement conference almost nine months ago in reliance upon an "attorney eyes only" confidentiality agreement.  Plaintiff's distinction of how the documents were produced is so slight as to border on misleading one to believe Travis has withheld or failed to produce his financial documents responsive to Plaintiff's discovery requests.

Travis further confirmed he is not withholding any additional responsive documents and the documents previously produced under the terms of the parties' confidentiality agreement will be produced again after the entry of an approved protective order as the Court directed.

The parties agree that, despite their sensitive nature, both parties may utilize Travis' financial documents in litigation to show Travis' ability (or inability) to pay a civil penalty under the Clean Water Act, and that these documents can be shared with experts, counsels' staff, and the Court.  In meet and confer email correspondence, Plaintiff states there are no agreements between the parties and that the parties are at an impasse.

The sole remaining issue is whether Plaintiff should be permitted to broadly share Travis' sensitive financial information among its members, employees, and purported consultants, or whether a protective order should uphold the parties' prior agreement to respect Travis' privacy and minimize the substantial risk of undue embarrassment and harassment by appropriately limiting the individuals who may view these documents to the attorneys and their experts to allow their use to

show ability or inability to pay.

Plaintiff says the model protective order is a starting point.  It has no response to the application of Rule 26 to modify the order as required, which has been approved by the courts in this District and elsewhere.  First, Plaintiff's purported impasse is solely due to its refusal to meet and confer in an effort to balance the Model Order with the needs of this case.  *See Friends of Maha'Ulepu, Inc. v. Hawai'i Dairy Farms, LLC*, 2016 U.S. Dist. LEXIS 191725, at *10 (D. Haw. Sept. 2, 2016) (discovery not permitted where it "seeks more than is necessary for the penalty analysis").  Plaintiff does not explain why permitting others to view Travis' sensitive financial information is necessary for it to litigate the issue of his ability to pay before the Court, an issue itself that in context will not be at issue unless Plaintiff can prove its case on the merits—where Plaintiff should be focusing its efforts, but has failed to do so.  (*See* Rule 26(b)(1) (limiting the scope of discovery to the needs of the case, considering, *inter alia*, the importance of the issues at stake in the litigation).)

Second, Plaintiff omits the fact that "HIGHLY CONFIDENTIAL" designations are accepted standard provisions in model protective orders for courts in the Northern District of California and other courts within the State.  *See*, *e.g.*, the Northern District of California's model protective order for cases involving highly confidential sensitive information, available at https://cand.uscourts.gov/sites/default/files/documents/ND_Cal_Patent_Highly_Sensitive_Model_Prot_Ord_Revised.pdf; the Standing Protective Orders of Hon. Andrew J. Guilford and Hon. Jacqueline Chooljian, attached hereto as **Exhibits 4** and **5**.

Third, Plaintiff concedes the designation of "HIGHLY CONFIDENTIAL" information is standard in other contexts and does not impact a client's ability to make informed decisions. Plaintiff itself raised a scenario in which such a designation would be appropriate: if Plaintiff were a competing dairy attempting to drive Travis out of business.  Yet Plaintiff engages in the same strategy, seeking to impose litigation costs on Travis without evidence of its Clean Water Act claims.[4]  Plaintiff makes no showing that its status as a non-profit organization somehow renders

---

[4] As described in Travis' motion for summary judgment, litigants like Plaintiff "stick and move" to target and pick off individual dairies, leading to the closure of dairies in Sonoma County.  (ECF No. 38 at 9.)

inert this same substantial risk of serious undue harm to Travis that cannot reasonably be avoided through less restrictive means. Plaintiff says it is speculation that it will misuse financial discovery to embarrass or harass Travis. That is precisely what is happening here. Plaintiff also says it is a nonprofit environmental organization with no financial stake in Defendants' dairy business and no competitive motive to cause them harm. Plaintiff does not address or deny its other motive to put Travis and his family dairy out of business by using the process of litigation as a weapon.

Fundamentally, Plaintiff ignores the point that no individual—including Plaintiff's members and employees—could expect their personal finances to become common knowledge to an entity attempting to forcibly end their way of life.

Mr. Carlon's purported declaration states at Paragraph 10 that "[a]t no point during the Parties' meet and confer did Defendants articulate any specific harm that would result from CAT's executive director reviewing financial documents under the restrictions of a court-entered protective order." Incorrect. Travis repeatedly explained how disclosure of his personal financial information is being used to embarrass and burden him and his family, and disclosure to Plaintiff, who is attempting to harm his family business, carries additional risk. Travis' adoption of federal court model orders that contain a "HIGHLY CONFIDENTIAL" designation addresses both parties' concerns in a manner proportional to the needs to the case. They permit Plaintiff to share Travis' financial information with individuals who will allow it to prosecute its case, and they ensure the burden to justify "HIGHLY CONFIDENTIAL" designations is always on the designating party, including any designation of Travis' previously-produced financial information.[5] At the same time, the revisions act as an additional legitimate protection for Travis, who could not fund litigation should a member of Plaintiff violate the protective order and exploit his tenuous financial situation, by narrowing the scope of individuals with access to his financial information.

Plaintiff's executive director, its members, and unrestricted other individuals who Plaintiff could identify as consultants do not have a proportional need to access Travis' financial information. The Court will decide the issue of ability to pay, or inability to pay, and Plaintiff's lawyers are

---

[5] Plaintiff does not explain how Travis' need to protect his sensitive financial information amounts to a seeking "judicially enforceable discovery restrictions."

capable of presenting Plaintiff's arguments without sharing the details of Travis' personal finances with those individuals.  Plaintiff provides no explanation of how other parties in other cases are completely capable of litigating financial issues without sharing "HIGHLY CONFIDENTIAL" information with their clients, or why those cases are not similar to this case.  Just as in its unsuccessful prior informal discovery conference briefing, Plaintiff submits no case law and no argument regarding the requirement of proportionality for this protective order.

For these reasons, Travis respectfully requests the Court enter his version of a protective order and decline Plaintiff's attempt to break its promises in its prior confidentiality agreement.

Dated:  April 23, 2026                    Respectfully Submitted,

                                          LAW OFFICE OF WILLIAM CARLON


                                          By:    /s/ William N. Carlon

                                          William N. Carlon
                                          Attorneys for Plaintiff
                                          CALIFORNIANS FOR
                                          ALTERNATIVES TO TOXICS



                                          KING & SPALDING LLP


                                          By:    /s/ Alexander Moore

                                          Alexander Moore
                                          Attorneys for Defendants
                                          TRAVIS MOREDA DAIRY AND TRAVIS
                                          MOREDA