PETER HSIAO (Bar No. 119881)
*phsiao@kslaw.com*
ALEXANDER MOORE (Bar No. 340994)
*amoore@kslaw.com*
**KING & SPALDING LLP**
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071
Telephone:     +1 213 443 4355
Facsimile:     +1 213 443 4310

*Attorneys for Defendants*
TRAVIS MOREDA DAIRY and TRAVIS MOREDA

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIANS FOR ALTERNATIVES TO TOXICS,<br><br>Plaintiff,<br><br>vs.<br><br>TRAVIS MOREDA DAIRY and TRAVIS MOREDA,<br><br>Defendants. | Case No.  3:24-CV-06632-SI<br><br>[Assigned for All Purposes to the Honorable Susan Illston, Department 1]<br><br>**DEFENDANTS' AMENDED RESPONSES TO PLAINTIFF'S INTERROGATORIES, SET ONE**<br><br>Complaint Filed:    September 20, 2024 |

**PROPOUNDING PARTY:**      **CALIFORNIANS FOR ALTERNATIVES TO TOXICS**

**RESPONDING PARTIES:**      **TRAVIS MOREDA DAIRY and TRAVIS MOREDA**

**SET NUMBER:**      **ONE**

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Defendants TRAVIS MOREDA DAIRY and TRAVIS MOREDA ("Travis"), hereby submit these amended objections and responses to the Interrogatories, Set One, of CALIFORNIANS FOR ALTERNATIVES TO TOXICS ("Plaintiff"), as follows:

## PRELIMINARY STATEMENT

Nothing in this response should be construed as an admission by Travis with respect to the admissibility or relevance of any fact or document, or of the truth or accuracy of any characterization or statement of any kind contained in Plaintiff's Requests for Interrogatories, Set One. Travis has not fully completed his discovery and investigation of the facts relating to this case and has not completed preparation for trial. The responses contained herein are based only upon such information and documents which are currently available, and specifically known, to Travis. Travis responds based only on those contentions and information which are presently known.

It is anticipated that further discovery, independent investigation, legal research, and analysis may supply additional facts, add meaning to known facts, and establish entirely new factual conclusions and legal contentions, all of which may lead to substantial additions to, changes in, and variations from the responses set forth herein.

The following objections and responses are given without prejudice to Travis' right to produce evidence at trial, or otherwise, regarding any subsequently discovered facts or information. Travis reserves the right to modify and amend any and all responses herein as additional facts are ascertained, as analysis and contentions are made, or as research is completed.

## RESPONSES TO INTERROGATORIES

### INTERROGATORY NO. 1:

IDENTIFY each National Pollutant Discharge Elimination System ("NPDES") permit, including general or individual coverage, held by YOU at any time since July 11, 2019, for the FACILITY, and describe the scope of coverage, effective dates, and permit numbers.

### RESPONSE TO INTERROGATORY NO. 1:

Travis incorporates his Preliminary Statement as if fully set forth herein. Travis further

1

objects to the stated time period as overbroad because it relates to a time period that is not relevant to this case. Travis further objects to the use of the terms "scope of coverage," "effective dates," and "permit numbers" as vague and ambiguous, but answers this Interrogatory by giving these terms their regular meaning as understood by Travis.

Subject to and without waiving the foregoing objections, Travis responds as follows: None. Per the requirements of the San Francisco Bay Regional Water Quality Control Board, Travis is covered by a general permit under the terms of Order No. R2-2016-0031. Travis does not discharge nor intend to discharge to surface water and therefore is not required to obtain coverage under an NPDES permit.

**INTERROGATORY NO. 2:**

State the total number of mature dairy cows, calves, and any other livestock confined at the FACILITY at any time from July 11, 2019, to the present, including the duration of confinement and whether any crops, vegetation, or forage were sustained in the areas of confinement during that time.

**RESPONSE TO INTERROGATORY NO. 2:**

Travis incorporates his Preliminary Statement as if fully set forth herein. Travis further objects to the stated time period as overbroad because it relates to a time period that is not relevant to this case. Travis further objects to this Interrogatory as compound, as it includes multiple separate inquiries that should be broken down into distinct interrogatories. Travis further objects to the use of the terms "crops," "vegetation," "forage," "sustained," and "areas of confinement" as vague and ambiguous, but answers this Interrogatory by giving these terms their regular meaning as understood by Travis.

Subject to and without waiving the foregoing objections, Travis responds as follows: The total number of mature dairy cows, calves, and any other livestock confined between July 11, 2019 through present ranges from approximately 50 to 120 at a time. Duration varies based on seasonal factors, however mature cows are only confined for approximately 58% of the time, calves are only housed for approximately two months. Vegetation is sustained in areas of confinement, with the exception of on concrete fixtures, such as Travis' freestall barn.

2

**INTERROGATORY NO. 3:**

DESCRIBE all DISCHARGES of POLLUTANTS, including but not limited to STORMWATER containing POLLUTANTS, manure, process wastewater, and washwater, from the FACILITY from July 11, 2019, to the present, including the date, nature, volume, duration, and receiving waterbody of each DISCHARGE.

**RESPONSE TO INTERROGATORY NO. 3:**

Travis incorporates his Preliminary Statement as if fully set forth herein. Travis further objects to the stated time period as overbroad because it relates to a time period that is not relevant to this case.  Travis further objects to the use of the terms "process wastewater" and "washwater" as vague and ambiguous, but accords "process wastewater" the meaning defined in 40 C.F.R. section 122.2 and understands "washwater" to be water used for cleaning.

Subject to and without waiving the foregoing objections, Travis responds as follows: None. Travis does not discharge to jurisdictional waters or other water bodies outside of his existing water management and retention systems.  Water from his dairy is captured by his existing water management and retention systems and applied to land in accordance with his Nutrient Management Plan and in compliance with Order No.  R2-2016-0031.

**INTERROGATORY NO. 4:**

IDENTIFY and DESCRIBE all structures and systems at the FACILITY used to manage or store manure, process wastewater, and STORMWATER runoff, including the size, design capacity, and operational procedures for each system, and the date each system was installed.

**RESPONSE TO INTERROGATORY NO. 4:**

Travis incorporates his Preliminary Statement as if fully set forth herein. Travis further objects that documents sufficient to respond to this Interrogatory are equally available to or already in the possession, custody or control of Plaintiff, including documents already produced in this action. Travis further objects to the use of the terms "structures and systems," "design capacity," "operational procedures," and "installed" as vague and ambiguous, but answers this Interrogatory by giving these terms their regular meaning as understood by Travis.

Subject to and without waiving the foregoing objections, Travis responds as follows: See

Travis' Waste Management and Nutrient Management Plans, produced as TMD_000001–000125, which describe, among other things, Travis' waste storage design and calculations.  Travis has also implemented a number of improvements at his dairy:

1.  **Free Stall Barn Manure Containment:** Travis installed a concrete-lined reception pit below the Free Stall Barn, designed to allow Travis to scrape manure produced within the Free Stall Barn and on the walkway at the front of the Free Stall Barn into the reception pit.  Manure and related wastewater that enters the reception pit is pumped into the existing lagoon system.  Travis has backup pumps available onsite to ensure the successful transfer of manure from the reception pit to the lagoon system.

2.  **Conveyance System/Lagoon Connection to Storage System:** Travis installed five additional pumps, allowing all five wastewater lagoons to be managed as one unit.  This allows for the sufficient combined capacity referenced in Travis' Waste Management Plan.

3.  **Removal of Gray Water & Potential Runoff:** Travis installed a berm to prevent the drainage area between the Free Stall Barn and the adjacent manure lagoon from holding gray water.  Wastewater from this area is collected before the berm and pumped into the existing lagoon system.

4.  **Contain Potential Runoff from Hill Utilized by Livestock:** Travis installed a berm which captures potential runoff from the hillside where livestock have access and conveys the drainage to the existing lagoon system.

5.  **Increase Capacity of the Existing Lagoon System:** Travis increased the capacity of its existing lagoon system to provide sufficient capacity as referenced in its Waste Management Plan.

6.  **Milk Barn Gutter Cleaning & Plugging, Pipe Improvements:** Travis cleaned its milk barn gutter, plugged unnecessary drainage systems, and repaired a damaged pipe.

7.  **Corral by the Loading Chute:** Travis scraped clean and pressure-washed the corral by the loading chute.  This area will not be utilized during the rainy season and will be limited to seasonal use to prevent any water quality issues.

AMENDED RESPONSES AND OBJECTIONS TO PLAINTIFF'S INTERROGATORIES, SET ONE

8. **Dry Cow Barn Containment & Vegetative Buffer:** Travis prevents dry cows from using the dry cow barn during the rainy season.  When it is used, manure produced within this barn shall be scraped, piled, and removed prior to the rainy season, and vegetation shall be allowed to grow in this area to provide a buffer for future use during appropriate weather conditions.

9. **Agronomic Application of Manure:** When applying manure to land, Travis shall use manure application mechanisms that allow for the reasonable calculation of the rate and total volume of manure applied during any given application.

10. **Composting Area Containment/Tarping:** Travis shall tarp the dried manure pile prior to the rainy season such that the pile shall not be exposed to rainfall, and Travis installed a berm below the composting area that captures any seepage from the pile and conveys any such seepage to the existing manure lagoon system.

11. **Feeders on Hilltops Containment/Seasonal Use:** Travis ceased using the feeders on the hilltop area during the rainy season.  Prior to the beginning of the rainy season, Travis shall scrape clean this area.

12. **Dried Manure Pile:** Travis shall pile manure in accordance with Travis' current Regional Board permit, as required by San Francisco Bay Regional Water Quality Control Board's Waste Discharge Requirements for Confined Animal Facilities Order No. R2-2016-0031.

13. **Silage Pile & Outdoor Commodity Piling Seasonal Use:** Travis shall not store commodities in the silage pile during the winter months where the presence of rainfall may present a threat to water quality.  Instead, Travis will store commodities in the existing roofed commodity barn.

14. **Hot Wire Addition:** Travis installed electric fencing technologies to manage livestock's access to waterways as required by the San Francisco Bay Regional Water Quality Control Board's Waste Discharge Requirements for Confined Animal Facilities Order No. R2-2016-0031.

15. **Recordkeeping:** Travis updated his Facility map to include these new improvements.

AMENDED RESPONSES AND OBJECTIONS TO PLAINTIFF'S INTERROGATORIES, SET ONE

Travis updated its wastewater generation calculations, wastewater storage calculations, and agronomic rates calculations, and has applied for an updated Nutrient Management Plan with the National Resource Conservation Service.

(ECF Nos. 38 at 3–5; 38-2 at ¶ 4, Exh. D.)

Plaintiff did not comment, criticize, or object to the site improvements, or suggest any additional improvements. (ECF No. 38-2 at ¶ 10.) Nor did Plaintiff dispute the improvements are effective to contain manure from release to surface waters and groundwater. (*Ibid*.)

**INTERROGATORY NO. 5:**

IDENTIFY all incidents since July 11, 2019, where any retention basin, lagoon, or other manure or wastewater storage structure at the FACILITY exceeded its storage capacity or DISCHARGED material to surface waters, including the date, duration, and estimated volume of any such overflow or DISCHARGE.

**RESPONSE TO INTERROGATORY NO. 5:**

Travis incorporates his Preliminary Statement as if fully set forth herein. Travis further objects to the stated time period as overbroad because it relates to a time period that is not relevant to this case. Travis further objects to the use of the terms "incidents," "wastewater storage structure," "material," and "overflow" as vague and ambiguous, but answers this Interrogatory by giving these terms their regular meaning as understood by Travis. Travis further objects that documents sufficient to respond to this Request are equally available to or already in the possession, custody or control of Plaintiff.

Subject to and without waiving the foregoing objections, Travis responds: None. Travis does not discharge to jurisdictional waters or other water bodies outside of his existing water management and retention systems, and Travis' water management and retention systems have never exceeded their storage capacity. Water from his dairy is captured by his existing water management and retention systems and applied to land in accordance with his Nutrient Management Plan.

**INTERROGATORY NO. 6:**

DESCRIBE the methods and timing used to apply liquid or solid manure to land at or near

the FACILITY since July 11, 2019, including the fields involved, the quantities applied, application rates, and whether any applications occurred within 48 hours before, during, or after a precipitation event.

**RESPONSE TO INTERROGATORY NO. 6:**

Travis incorporates his Preliminary Statement as if fully set forth herein. Travis further objects to the stated time period as overbroad because it relates to a time period that is not relevant to this case. Travis further objects that documents sufficient to respond to this Interrogatory are equally available to or already in the possession, custody or control of Plaintiff, including documents already produced in this action. Travis further objects to the use of the terms "methods and timing" as vague and ambiguous, but answers this Interrogatory by giving these terms their regular meaning as understood by Travis.

Subject to and without waiving the foregoing objections, Travis responds as follows: Travis follows and complies with the requirements and directions of the State Water Resources Control Board regarding the applicable requirements used to apply liquid or solid manure to land. See Travis' Waste Management and Nutrient Management Plans, previously produced as TMD_000001–000125, which describe, among other things, Travis' manure application planning calendar. Travis will produce any manure logs in his possession, custody or control with additional information responsive to this interrogatory.

**INTERROGATORY NO. 7:**

DESCRIBE the FACILITY'S practices, procedures, or infrastructure for preventing surface water from coming into direct contact with confined animals, manure stockpiles, or other POLLUTANT sources.

**RESPONSE TO INTERROGATORY NO. 7:**

Travis incorporates his Preliminary Statement as if fully set forth herein. Travis further objects that documents sufficient to respond to this Interrogatory are equally available to or already in the possession, custody or control of Plaintiff, including documents already produced in this action. Travis further objects to the use of the terms "practices," "procedures," and "infrastructure," as vague and ambiguous, but answers this Interrogatory by giving these terms their regular meaning

AMENDED RESPONSES AND OBJECTIONS TO PLAINTIFF'S INTERROGATORIES, SET ONE

as understood by Travis.

Subject to and without waiving the foregoing objections, Travis responds as follows: See Travis' Waste Management and Nutrient Management Plans, previously produced as TMD_000001–000125, which describe, among other things, how Travis' waste management systems captured water at his dairy and how such water is applied to land in accordance with his Nutrient Management Plan.   Travis has also implemented a number of improvements at his dairy:

1.  **Free Stall Barn Manure Containment:** Travis installed a concrete-lined reception pit below the Free Stall Barn, designed to allow Travis to scrape manure produced within the Free Stall Barn and on the walkway at the front of the Free Stall Barn into the reception pit.  Manure and related wastewater that enters the reception pit is pumped into the existing lagoon system.  Travis has backup pumps available onsite to ensure the successful transfer of manure from the reception pit to the lagoon system.

2.  **Conveyance System/Lagoon Connection to Storage System:** Travis installed five additional pumps, allowing all five wastewater lagoons to be managed as one unit.  This allows for the sufficient combined capacity referenced in Travis' Waste Management Plan.

3.  **Removal of Gray Water & Potential Runoff:** Travis installed a berm to prevent the drainage area between the Free Stall Barn and the adjacent manure lagoon from holding gray water.  Wastewater from this area is collected before the berm and pumped into the existing lagoon system.

4.  **Contain Potential Runoff from Hill Utilized by Livestock:** Travis installed a berm which captures potential runoff from the hillside where livestock have access and conveys the drainage to the existing lagoon system.

5.  **Increase Capacity of the Existing Lagoon System:** Travis increased the capacity of its existing lagoon system to provide sufficient capacity as referenced in its Waste Management Plan.

6.  **Milk Barn Gutter Cleaning & Plugging, Pipe Improvements:** Travis cleaned its milk barn gutter, plugged unnecessary drainage systems, and repaired a damaged pipe.

8

7. **Corral by the Loading Chute:** Travis scraped clean and pressure-washed the corral by the loading chute.  This area will not be utilized during the rainy season and will be limited to seasonal use to prevent any water quality issues.

8. **Dry Cow Barn Containment & Vegetative Buffer:** Travis prevents dry cows from using the dry cow barn during the rainy season.  When it is used, manure produced within this barn shall be scraped, piled, and removed prior to the rainy season, and vegetation shall be allowed to grow in this area to provide a buffer for future use during appropriate weather conditions.

9. **Agronomic Application of Manure:** When applying manure to land, Travis shall use manure application mechanisms that allow for the reasonable calculation of the rate and total volume of manure applied during any given application.

10. **Composting Area Containment/Tarping:** Travis shall tarp the dried manure pile prior to the rainy season such that the pile shall not be exposed to rainfall, and Travis installed a berm below the composting area that captures any seepage from the pile and conveys any such seepage to the existing manure lagoon system.

11. **Feeders on Hilltops Containment/Seasonal Use:** Travis ceased using the feeders on the hilltop area during the rainy season.  Prior to the beginning of the rainy season, Travis shall scrape clean this area.

12. **Dried Manure Pile:** Travis shall pile manure in accordance with Travis' current Regional Board permit, as required by San Francisco Bay Regional Water Quality Control Board's Waste Discharge Requirements for Confined Animal Facilities Order No. R2-2016-0031.

13. **Silage Pile & Outdoor Commodity Piling Seasonal Use:** Travis shall not store commodities in the silage pile during the winter months where the presence of rainfall may present a threat to water quality.  Instead, Travis will store commodities in the existing roofed commodity barn.

14. **Hot Wire Addition:** Travis installed electric fencing technologies to manage livestock's access to waterways as required by the San Francisco Bay Regional Water

9

Quality Control Board's Waste Discharge Requirements for Confined Animal Facilities Order No. R2-2016-0031.

**15. Recordkeeping:** Travis updated his Facility map to include these new improvements. Travis updated its wastewater generation calculations, wastewater storage calculations, and agronomic rates calculations, and has applied for an updated Nutrient Management Plan with the National Resource Conservation Service.

(ECF Nos. 38 at 3–5; 38-2 at ¶ 4, Exh. D.)

Plaintiff did not comment, criticize, or object to the site improvements, or suggest any additional improvements. (ECF No. 38-2 at ¶ 10.) Nor did Plaintiff dispute the improvements are effective to contain manure from release to surface waters and groundwater. (*Ibid.*)

**INTERROGATORY NO. 8:**

State whether YOU have ever applied for coverage under the Industrial General Permit (Order No. 2014-0057-DWQ as amended), and if not, explain why.

**RESPONSE TO INTERROGATORY NO. 8:**

Travis incorporates his Preliminary Statement as if fully set forth herein. Travis objects to this Interrogatory as compound and consisting of two interrogatories. Travis further objects to this Interrogatory as compound, as it includes multiple separate inquiries that should be broken down into distinct Interrogatories.

Subject to and without waiving the foregoing objections, Travis responds as follows: Travis has never applied for coverage (nor is he required to apply for coverage) under the Industrial General Permit because Travis does not operate a CAFO or any other industrial facility that may be covered by the Industrial General Permit. Per the requirements of the San Francisco Bay Regional Water Quality Control Board, Travis filed a Notice of Intent for Re-opening of Dormant Confined Animal Facilities to comply with the terms of Order No. R2-2016-0031. The Industrial General Permit does not cover dairies generally and is not required for dairy operations.

//

//

//

10

AMENDED RESPONSES AND OBJECTIONS TO PLAINTIFF'S INTERROGATORIES, SET ONE

**INTERROGATORY NO. 9:**

DESCRIBE all STORMWATER or wastewater sampling, monitoring, or testing conducted at or in connection with the FACILITY from July 11, 2019, to the present, including the dates, parameters tested, sampling locations, and test results.

**RESPONSE TO INTERROGATORY NO. 9:**

Travis incorporates his Preliminary Statement as if fully set forth herein.  Travis further objects that documents sufficient to respond to this Interrogatory are equally available to or already in the possession, custody or control of Plaintiff.  Travis further objects to the stated time period as overbroad because it relates to a time period that is not relevant to this case.  Travis further objects to the use of the terms "sampling," "monitoring," "testing," and "parameters tested" as vague and ambiguous, but answers this Interrogatory by giving these terms their regular meaning as understood by Travis.

Subject to and without waiving the foregoing objections, Travis responds as follows: Travis' dairy is monitored by a third party in compliance with the Regional Water Board's Order R2-2016-0031.  Results are reported directly to the Regional Water Board as part of its verification of Travis' compliance with the Clean Water Act.  Travis will produce the results of this third-party monitoring in his possession, custody, or control.

**INTERROGATORY NO. 10:**

IDENTIFY all documents, that constitute, summarize, DESCRIBE, relate to or refer to reports of laboratory analysis of STORMWATER or wastewater samples collected at or in connection with the FACILITY from July 11, 2019 to the present.

**RESPONSE TO INTERROGATORY NO. 10:**

Travis incorporates his Preliminary Statement as if fully set forth herein.  Travis further objects that documents sufficient to respond to this Interrogatory are equally available to or already in the possession, custody or control of Plaintiff.  Travis further objects to the stated time period as overbroad because it relates to a time period that is not relevant to this case.  Travis further objects to the use of the terms "reports" and "laboratory analysis" as vague and ambiguous, but answers this Interrogatory by giving these terms their regular meaning as understood by Travis.

11

AMENDED RESPONSES AND OBJECTIONS TO PLAINTIFF'S INTERROGATORIES, SET ONE

Subject to and without waiving the foregoing objections, Travis responds as follows: Travis' dairy is monitored by a third party in compliance with the Regional Water Board's Order R2-2016-0031. Results are reported directly to the Regional Water Board as part of its verification of Travis' compliance with the Clean Water Act. Travis will produce the results of this third-party monitoring in his possession, custody, or control.

**INTERROGATORY NO. 11:**

IDENTIFY each person with knowledge of the FACILITY'S manure management, STORMWATER management, or wastewater handling practices from July 11, 2019, to the present, and state the nature of their knowledge.

**RESPONSE TO INTERROGATORY NO. 11:**

Travis incorporates his Preliminary Statement as if fully set forth herein. Travis further objects to the stated time period as overbroad because it relates to a time period that is not relevant to this case. Travis further objects to the extent this Request seeks premature expert discovery, testimony or opinion. Travis further objects to this Interrogatory as compound, as it includes multiple separate inquiries that should be broken down into distinct Interrogatories. Travis further objects to the use of the term "wastewater handling practices" as vague and ambiguous, but answers this Interrogatory by giving the term its regular meaning as understood by Travis.

Subject to and without waiving the foregoing objections, Travis Moreda responds that he is the principal individual with personal knowledge of his dairy's manure management, stormwater management, and wastewater handling practices. Stephanie Moreda-Arend has knowledge of Plaintiff's lawsuit against Travis. Additional persons include Travis' experts, who will be disclosed at the appropriate time during the expert discovery phase of this action, and his legal counsel.

**INTERROGATORY NO. 12:**

IDENTIFY each water body located on or downstream of the FACILITY that DEFENDANTS contend is not a "water of the United States" within the meaning of the CLEAN WATER ACT, including the basis for that contention and any evidence supporting it.

//

12

**RESPONSE TO INTERROGATORY NO. 12:**

Travis incorporates his Preliminary Statement as if fully set forth herein. Travis further objects to this Interrogatory as compound, as it includes multiple separate inquiries that should be broken down into distinct Interrogatories.

Subject to and without waiving the foregoing objections, Travis responds as follows: Travis does not discharge to jurisdictional waters of the United States as defined by law, including but not limited to the ruling of *Sackett v. Environmental Protection Agency*, 581 U.S. 651 (2023) and EPA and USACE's proposed rule redefining "waters of the United States" following this ruling. Travis contends that the "unnamed creek" (a manmade ditch) is not a water of the United States. Travis has insufficient information to determine whether "Laguna Lake" (a lagoon/seasonal water basin adjacent to his dairy with a manmade levy), Chileno Creek, or Walker Creek are waters of the United States.

**INTERROGATORY NO. 13:**

DESCRIBE all efforts undertaken by DEFENDANTS since July 11, 2019, to determine whether the FACILITY is required to obtain NPDES permit coverage, including any communications with the STATE BOARD, REGIONAL BOARD, or EPA.

**RESPONSE TO INTERROGATORY NO. 13:**

Travis incorporates his Preliminary Statement as if fully set forth herein. Travis further objects to the stated time period as overbroad because it relates to a time period that is not relevant to this case.

Subject to and without waiving the foregoing objections, Travis responds as follows: Travis has reviewed the applicable requirements and obtained advice from experts and counsel. Per the requirements of the San Francisco Bay Regional Water Quality Control Board, Travis is covered by a general permit under the terms of Order No. R2-2016-0031. Travis does not discharge nor intend to discharge to surface water and therefore is not required to obtain coverage under an NPDES permit.

//

//

13

AMENDED RESPONSES AND OBJECTIONS TO PLAINTIFF'S INTERROGATORIES, SET ONE

**INTERROGATORY NO. 14:**

IDENTIFY and DESCRIBE with specificity all modifications made to the FACILITY's liquid waste storage or conveyance system during the RELEVANT TIME PERIOD, including but not limited to any modifications to increase the capacity of lagoons, retention basins, or other liquid waste containment structures, or to alter the means by which liquid waste is transported between areas where it is generated and where it is stored. For each such modification, state:

a. The date construction commenced and the date it was completed;

b. The nature and purpose of the modification;

c. The identity of the PERSON(S) or ENTITY(IES) who designed, constructed, or oversaw the modification;

d. The engineering basis or design standard for the modification (e.g., 25-year, 24-hour storm event capacity); and

e. Whether any such modification was submitted to, reviewed, or approved by any governmental agency, and if so, identify the agency and the date and nature of such submission, review, or approval.

**RESPONSE TO INTERROGATORY NO. 14:**

Travis incorporates his Preliminary Statement as if fully set forth herein.  Travis further objects to this Request as overbroad because it is not limited in time.  As such, Travis limits his response to improvements made as described to Plaintiff in prior correspondence and court filings. Travis objects to the subparts of this Interrogatory and treats these as separate Interrogatories. Travis further objects that this Interrogatory seeks confidential information, including trade secrets, in the absence of a protective order.  Travis further objects to this Interrogatory as compound, as it includes multiple separate inquiries that should be broken down into distinct Interrogatories. Travis further objects to the use of the terms "modification," "liquid waste containment structures," and "engineering basis or design standard" as vague and ambiguous, but answers this Interrogatory by giving these terms their regular meaning as understood by Travis.

Subject to and without waiving the foregoing objections, Travis responds as follows:  On the basis of Travis' overbreadth objection, Travis limits his response to improvements made as

14

described to Plaintiff in prior correspondence and court filings.  See the documents already produced in this action, including Travis' list and photographs of improvements (TMD_000126; TMD_000145) and the Confined Animal Facility Compliance Inspection Report by the San Francisco Bay Regional Water Quality Control Board dated November 1, 2024 (TMD_000129). See also Travis' motion to dismiss and supporting exhibits. (ECF Nos. 38 through 38-3.) Travis implemented a number of improvements at his dairy:

1. **Free Stall Barn Manure Containment:** Travis installed a concrete-lined reception pit below the Free Stall Barn, designed to allow Travis to scrape manure produced within the Free Stall Barn and on the walkway at the front of the Free Stall Barn into the reception pit.  Manure and related wastewater that enters the reception pit is pumped into the existing lagoon system.  Travis has backup pumps available onsite to ensure the successful transfer of manure from the reception pit to the lagoon system.

2. **Conveyance System/Lagoon Connection to Storage System:** Travis installed five additional pumps, allowing all five wastewater lagoons to be managed as one unit.  This allows for the sufficient combined capacity referenced in Travis' Waste Management Plan.

3. **Removal of Gray Water & Potential Runoff:** Travis installed a berm to prevent the drainage area between the Free Stall Barn and the adjacent manure lagoon from holding gray water.  Wastewater from this area is collected before the berm and pumped into the existing lagoon system.

4. **Contain Potential Runoff from Hill Utilized by Livestock:** Travis installed a berm which captures potential runoff from the hillside where livestock have access and conveys the drainage to the existing lagoon system.

5. **Increase Capacity of the Existing Lagoon System:** Travis increased the capacity of its existing lagoon system to provide sufficient capacity as referenced in its Waste Management Plan.

6. **Milk Barn Gutter Cleaning & Plugging, Pipe Improvements:** Travis cleaned its milk barn gutter, plugged unnecessary drainage systems, and repaired a damaged pipe.

AMENDED RESPONSES AND OBJECTIONS TO PLAINTIFF'S INTERROGATORIES, SET ONE

7. **Corral by the Loading Chute:** Travis scraped clean and pressure-washed the corral by the loading chute.  This area will not be utilized during the rainy season and will be limited to seasonal use to prevent any water quality issues.

8. **Dry Cow Barn Containment & Vegetative Buffer:** Travis prevents dry cows from using the dry cow barn during the rainy season.  When it is used, manure produced within this barn shall be scraped, piled, and removed prior to the rainy season, and vegetation shall be allowed to grow in this area to provide a buffer for future use during appropriate weather conditions.

9. **Agronomic Application of Manure:** When applying manure to land, Travis shall use manure application mechanisms that allow for the reasonable calculation of the rate and total volume of manure applied during any given application.

10. **Composting Area Containment/Tarping:** Travis shall tarp the dried manure pile prior to the rainy season such that the pile shall not be exposed to rainfall, and Travis installed a berm below the composting area that captures any seepage from the pile and conveys any such seepage to the existing manure lagoon system.

11. **Feeders on Hilltops Containment/Seasonal Use:** Travis ceased using the feeders on the hilltop area during the rainy season.  Prior to the beginning of the rainy season, Travis shall scrape clean this area.

12. **Dried Manure Pile:** Travis shall pile manure in accordance with Travis' current Regional Board permit, as required by San Francisco Bay Regional Water Quality Control Board's Waste Discharge Requirements for Confined Animal Facilities Order No. R2-2016-0031.

13. **Silage Pile & Outdoor Commodity Piling Seasonal Use:** Travis shall not store commodities in the silage pile during the winter months where the presence of rainfall may present a threat to water quality.  Instead, Travis will store commodities in the existing roofed commodity barn.

14. **Hot Wire Addition:** Travis installed electric fencing technologies to manage livestock's access to waterways as required by the San Francisco Bay Regional Water

16

Quality Control Board's Waste Discharge Requirements for Confined Animal Facilities Order No. R2-2016-0031.

**15. Recordkeeping:** Travis updated his Facility map to include these new improvements. Travis updated its wastewater generation calculations, wastewater storage calculations, and agronomic rates calculations, and has applied for an updated Nutrient Management Plan with the National Resource Conservation Service.

(ECF Nos. 38 at 3–5; 38-2 at ¶ 4, Exh. D.)

Plaintiff did not comment, criticize, or object to the site improvements, or suggest any additional improvements. (ECF No. 38-2 at ¶ 10.) Nor did Plaintiff dispute the improvements are effective to contain manure from release to surface waters and groundwater. (*Ibid*.) These improvements were overseen by Travis to enhance the dairy's waste management system, and were reviewed by the Regional Water Board on November 1, 2024. Travis continuously implements improvements at his Dairy in compliance with the Water Act, both before and after Plaintiff's purported Notice of Violations.

**INTERROGATORY NO. 15:**

IDENTIFY the person most knowledgeable about any modifications made to the FACILITY's liquid waste storage or conveyance system during the RELEVANT TIME PERIOD, including but not limited to any modifications to increase the capacity of lagoons, retention basins, or other liquid waste containment structures, or to alter the means by which liquid waste is transported between areas where it is generated and where it is stored.

**RESPONSE TO INTERROGATORY NO. 15:**

Travis incorporates his Preliminary Statement as if fully set forth herein. Travis further objects to this Request as overbroad because it is not limited in time. Travis further objects to this Interrogatory as compound, as it includes multiple separate inquiries that should be broken down into distinct Interrogatories. Travis further objects to the use of the undefined terms "RELEVANT TIME PERIOD," "modification," and "liquid waste containment structures" as vague and ambiguous but answers this Interrogatory by giving the term "RELEVANT TIME PERIOD" the meaning "July 11, 2019 to present" and the remaining terms their regular meaning as understood

17

AMENDED RESPONSES AND OBJECTIONS TO PLAINTIFF'S INTERROGATORIES, SET ONE

by Travis.

Subject to and without waiving the foregoing general and specific objections, Travis responds as follows: Travis Moreda.

Dated: February 9, 2026                                     **KING & SPALDING LLP**

By: _____
                   Alexander Moore
                   *Attorneys for Defendants*
                   *Travis Moreda Dairy and Travis Moreda*

AMENDED RESPONSES AND OBJECTIONS TO PLAINTIFF'S INTERROGATORIES, SET ONE

# VERIFICATION

I, Travis Moreda, declare as follows:

I am a defendant in this action and the sole proprietor of Travis Moreda Dairy. I have read Defendants' Amended Responses to Plaintiff's Interrogatories, Set One, and am informed and believe that the facts and matters stated therein are true, and on that ground, allege those facts and matters are true and correct.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 9th day of February 2026 in Petaluma, California.

By: _____

Travis Moreda

19

AMENDED RESPONSES AND OBJECTIONS TO PLAINTIFF'S INTERROGATORIES, SET ONE

## PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I, the undersigned, declare.  I am a citizen of the United States, over 18 years of age and not a party to the within action.  I am employed in the County of Los Angeles, State of California; my business address is 633 W. Fifth Street, Suite 1600, Los Angeles, CA 90071.

On the date specified below, I served a copy of the foregoing document(s) described as:

**DEFENDANTS' AMENDED RESPONSES TO PLAINTIFF'S INTERROGATORIES, SET ONE**

on the parties in this proceeding, as addressed below, by causing true copies thereof to be distributed as follows:

Law Office of William Carlon
437 Post Street
Napa, CA 94559
Email: william@carlonlaw.com
       wverick@igc.org
       brian@brianacree.com
       dhwill7@gmail.com

[X]  **BY MAIL**: I am readily familiar with the business practice for the collection and processing of correspondence for mailing with the United States Postal Service and the fact that the correspondence would be deposited with the United States Postal Service that same day in the ordinary course of business; on this date, the above-referenced correspondence was placed for deposit at Los Angeles, California, and placed for collection and mailing following ordinary business practices.

[X]  **BY ELECTRONIC MAIL**:  by transmitting the above-mentioned document by electronic mail transmission with attachment to the parties at the electronic mail transmission address set forth on the attached service list.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.  Executed on February 9, 2026, at Los Angeles, California.

_____
Kathryn Bell-Taylor

AMENDED RESPONSES AND OBJECTIONS TO PLAINTIFF'S INTERROGATORIES, SET ONE